IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE INTEL CORP. DERIVATIVE LITIGATION | : : : : : : : | C.A. No. 1:09-cv-867-JJF |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

OF COUNSEL:

**GIBSON, DUNN & CRUTCHER LLP**
Jonathan C. Dickey
Marshall R. King
200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000
jdickey@gibsondunn.com
mking@gibsondunn.com

**POTTER ANDERSON & CORROON LLP**
Donald J. Wolfe, Jr. (#285)
Stephen C. Norman (#2686)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
dwolfe@potteranderson.com
snorman@potteranderson.com

*Attorneys for Nominal Defendant Intel
Corporation and Defendants Otellini, Barrett,
Pottruck, Shaw, Yoffie, Barshefsky, Plummer,
Decker, Bartz, Donahoe, and Yeary*

OF COUNSEL:

Kim David Staskus
LAW OFFICES OF
KIM DAVID STASKUS, P.C.
1631 Willow Street Suite 100
San Jose, CA 95125
(408) 264-0155
kimstaskus@mgle-law.com

**CONNOLLY, BOVE, LODGE & HUTZ LLP**
Collins J. Seitz, Jr. (#2237)
Bradley R. Aronstam (#5129)
1007 North Orange Street, 8th Floor
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
baronstam@cblh.com

*Attorneys for Defendant, D. James Guzy, Sr.*

March 12, 2010
956803

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

STATEMENT OF RELEVANT FACTS .....................................................................5

    I.    The Alleged Anticompetitive Conduct At Intel......................................................5

    II.   Background on Plaintiffs' Demands, And The Intel Board's Deferral Of Final
        Action On The Demands .....................................................................................6

          A.    Purported Intel Shareholder Villari Makes A Demand On Intel ................6

          B.    This Court Grants Intel's Motion To Dismiss The Smilow "Demand
              Futility" Complaint .......................................................................................8

          C.    Villari "Renews" The Original Demand, Which Gilman Later "Joins"......9

          D.    The LMPERS Demand And Complaint ....................................................11

          E.    Plaintiffs File A Consolidated Complaint.................................................12

ARGUMENT.............................................................................................................14

    I.    Plaintiffs Lack Standing Because They Have Failed To Allege Particularized
        Facts Showing That Intel's Decision to Defer Action On The Demand Is Not
        Protected By The Business Judgment Rule .........................................................14

          A.    Rule 23.1 Of The Federal Rules Of Civil Procedure Imposes A
              Heightened Standard For Pleading That Demand Was Wrongly
               Refused .......................................................................................................14

          B.    Plaintiffs Have Failed To Plead Particularized Facts That, If True,
              Would Overcome The Business Judgment Rule Presumption That
              Directors Are Faithful To Their Fiduciary Duties ...................................15

              1.    Plaintiffs Fail To Plead Particularized Facts Rebutting The
                   Presumption That The Board Acted In Good Faith And On An
                   Informed Basis ............................................................................17

              2.    Plaintiffs' Conclusory Allegation That The Board Lacked
                   Independence Is Not Cognizable And Lacks The Particularized
                   Facts Required To Overcome The Protection Of The Business
                   Judgment Rule ............................................................................26

**TABLE OF CONTENTS**
**[Continued]**

Page

3.    If the Board Later Elects To Comply With The Demand,
      Plaintiffs' Claims Would Not Be Barred By Any Statute Of
      Limitations Because The Claims Will Relate Back To A
      Previously-Filed Derivative Suit On Behalf Of Intel ....................28

CONCLUSION..........................................................................................................32

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984) ......................................................................... 14, 16, 17

*Baron v. Siff,*
   1997 WL 666973 (Del. Ch.) .......................................................................... 18, 22

*Beam v. Stewart,*
   845 A.2d 1040 (Del. 2004) ................................................................................ 17

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................... 2

*Blasband v. Rales,*
   971 F.2d 1034  (3d Cir. 1992)............................................................................. 14

*Boeing Co. v. Shrontz,*
   1994 WL 30542 (Del. Ch.) ................................................................................. 22

*Brambles USA, Inc. v. Blocker,*
   731 F. Supp. 643 (D. Del. 1990)......................................................................... 11

*FLI Deep Marine LLC v. McKim,*
   2009 WL 1204363 (Del. Ch.) ............................................................................. 27
*Furman v. Walton,*
   2007 WL 1455904 (N.D. Cal.), *aff'd,*
   320 Fed. Appx. 638 (9th Cir. 2009)...................................................... 19, 20, 24, 27

*Furman v. Walton,*
   320 Fed. Appx. 638 (9th Cir. 2009)................................................................... 4, 20

*General Motors Corp. v. Super. Ct. of Los Angeles County,*
   48 Cal. App. 4th 580 (Cal. App. 2. Dist. 1996) ...................................................... 30

*Grimes v. Donald,*
   673 A.2d 1207 (Del. 1996) ............................................................................ 16, 26

*Grobow v. Perot,*
   526 A.2d 914 (Del. Ch. 1987), *aff'd,*
   539 A.2d 1980 (Del. 1988) ................................................................................ 26

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.,*
  615 F. Supp. 2d 1018 (N.D. Cal. 2009) ............................................................. 29

*In re Consumer Powers Co. Derivative Litig.,*
  132 F.R.D. 455 (E.D. Mich. 1990) ..................................................................... 23

*In re E.F. Hutton Banking Practices Litig.,*
  634 F. Supp. 265 (S.D.N.Y. 1986) ..................................................................... 21

*In re infoUSA S'holders Litig.,*
  953 A.2d 963 (Del. Ch. 2007) ............................................................................ 19

*In re Intel Corp. Derivative Litig.,*
  621 F. Supp. 2d 165 (D. Del. 2009) ........................................................ 8, 9, 14, 25

*In re VistaCare, Inc. Derivative Litig.,*
  2007 WL 2460610 (D. Ariz.) ............................................................................. 19

*In re Walt Disney Co. Derivative Litig.,*
  906 A.2d 27 (Del. 2006) .................................................................................... 16

*Jean Alexander Cosmetics v. L'Oreal USA, Inc.,*
  458 F.3d 244 (3d Cir. 2006) ......................................................................... 24, 29

*Kamen v. Kemper Fin. Servs., Inc.,*
  500 U.S. 90 (1991) ........................................................................................... 14

*Kanter v. Barella,*
  489 F.3d 170 (3d Cir. 2007) .............................................................................. 14

*King v. Baldino,*
  648 F. Supp. 2d 609 (D. Del. 2009) ................................................................ 2, 10

*Levine v. Smith,*
  1989 WL 150784 (Del. Ch.), *aff'd,*
  591 A.2d 194 (Del. 1991) .................................................................................. 16

*Levine v. Smith,*
  591 A.2d 194 (Del. 1991) ............................................................... 15, 16, 17, 22

*McOwen v. Grossman,*
  153 Cal. App. 4th 937 (Cal. App. 2. Dist. 2007) ................................................ 30

*Norfolk County Retirement Syst. v. Jos. A. Bank Clothiers, Inc.,*
  2009 WL 353746 (Del. Ch.) ............................................................................. 27

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
  998 F.2d 1192 (3d Cir. 1993) ............................................................................ 10

*Piven v. Ryan,*
    2006 WL 756043 (N.D. Ill.) ............................................................... 20

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) ............................................................... 16

*Reading Co. v. Trailer Train Co.,*
    1984 WL 8212 (Del. Ch.) ............................................................... 26

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,*
    81 F.3d 355 (3d Cir. 1996).............................................................. 21

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.,*
    181 F.3d 410 (3d Cir. 1999)............................................................ 29

*Scattered Corp. v. Chicago Stock Exch., Inc.,*
    701 A.2d 70 (Del. 1997) ............................................................... 17

*Smeltzley v. Nicholson Mfg. Co.,*
    559 P.2d 624 (Cal. 1977) ............................................................... 29

*Spiegel v. Buntrock,*
    571 A.2d 767 (Del. 1990) ......................................................... 16, 17

*Telxon Corp. v. Bogomolny,*
    792 A.2d 964 (Del. Ch. 2001).......................................................... 30

*Unocal v. Mesa Petroleum Co.,*
    493 A.2d 946 (Del. 1985) ............................................................... 16

*Walker v. News Journal,*
    2008 WL 766788 (D. Del.) ............................................................. 21

*White v. Panic,*
    783 A.2d 543 (Del. 2001) ............................................................... 14

*Wilson v. Tully,*
    676 N.Y.S.2d 531 (N.Y. App. Div. 1998) ......................................... 20

*Woo v. Super. Ct. of San Diego County,*
    75 Cal. App. 4th 169 (Cal. App. 4. Dist. 1999) .................................. 30

*Zapata Corp. v. Maldonado,*
    430 A.2d 779 (Del. 1981) ............................................................... 19

## Other Authorities

R. Franklin Balotti & Jesse A. Finkelstein, THE DELAWARE LAW OF CORPORATIONS &
    BUSINESS ORGANIZATIONS § 13.15 (3d ed. Supp. 2009) .......................... 20

## Rules

FED. R. CIV. P. 12(b)(6) ................................................................................................ 12

FED. R. CIV. P. 23.1 ............................................................................................... passim

FED. R. CIV. P. 23.1(b)(3) ................................................................................................ 15

## INTRODUCTION

Nominal Defendant Intel Corporation ("Intel" or the "Company") and Individual Defendants Paul S. Otellini, Craig R. Barrett, David S. Pottruck, Jane E. Shaw, David B. Yoffie, Charlene Barshefsky, James D. Plummer, Susan L. Decker, Carol Bartz, John J. Donahoe, Frank D. Yeary, and D. James Guzy, Sr. respectfully submit this memorandum of law in support of their motion to dismiss the Shareholders' Demand-Made Consolidated Derivative Complaint filed on February 12, 2010 (the "Complaint"), for failure to comply with the standing and pleading requirements of Federal Rule of Civil Procedure 23.1 and Delaware law.

This is a consolidated shareholder derivative action brought by alleged Intel stockholders Charles A. Gilman and the Louisiana Municipal Police Employees' Retirement System ("LMPERS") (collectively "Plaintiffs") against many current members, and several former members, of Intel's Board of Directors (collectively the "Individual Defendants").[1]  Gilman joined a demand made on Intel's Board in June 2008 to "investigate certain claims, initiate appropriate legal action, and take necessary and appropriate remedial measures to ensure that the Corporation is protected from further harm" in connection with supposed anticompetitive business practices alleged in other, already-existing actions brought against Intel by other private plaintiffs (e.g., AMD) and regulators (e.g., the European Commission).  But after due consideration, Intel's Board,

---

[1] The current Board members named as defendants are: Paul S. Otellini, David S. Pottruck, Jane E. Shaw, David B. Yoffie, Charlene Barshefsky, James D. Plummer, Susan L. Decker, John J. Donahoe, and Frank D. Yeary.  The former Board members named as defendants are: Craig R. Barrett, D. James Guzy, Sr., and Carol Bartz.  *See* Compl. ¶¶ 23-35.

on the recommendation of its Audit Committee and after consulting with counsel retained

by the Audit Committee to advise it with respect to Gilman's demand, exercised its

informed business judgment and decided to *defer* taking action on the demand. The

Board reasoned that it was not in the best interest of the Company or its shareholders to

take action on the demand at that time because, among other things, the issues raised in

the demand were legally and factually intertwined with the existing litigation and

regulatory actions involving Intel – meaning that any action by the Company could

unnecessarily expose it to liability. *See* Compl. ¶ 125; Declaration of Marshall R. King

("King Decl."), Ex. A.[2]

    In response to the Board's decision, Gilman filed suit in November 2009.

LMPERS filed a virtually identical suit in December 2009 (without waiting for the

Board's response to its demand) and the matters were subsequently consolidated. The

consolidated Complaint now alleges that the Individual Defendants failed to prevent the

Company from engaging in allegedly anticompetitive business practices, failed to

cooperate with regulatory authorities or to negotiate a reasonable settlement with the

European Commission, failed to remedy misconduct allegedly directed at Intel

competitor AMD, and failed to take appropriate remedial actions against those

individuals whom Plaintiffs claim engaged in anticompetitive business practices. All of

---

[2] On a motion to dismiss, a court may consider documents referenced in, though not
attached as exhibits to, a complaint. *See King v. Baldino*, 648 F. Supp. 2d 609, 616
(D. Del. 2009) (on motion to dismiss, court may consider "matters incorporated by
reference" in complaint); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568
n.13 (2007) (court may consider full document identified in, though not attached to,
complaint). Thus, the correspondence and other materials referenced in, but not
attached to, the Complaint may, though need not be, considered on this motion to
dismiss.

the allegations of anticompetitive conduct by Intel personnel are taken entirely from the other, already-existing actions brought against Intel by private plaintiffs and regulators, and Plaintiffs assert that by virtue of Intel contesting those allegations in the other litigation,[3] the Board has, in effect, wrongfully rejected their demands.  Compl. ¶ 120.

It is a well-settled principle of Delaware law that a board's decision on whether to comply with a shareholder demand is protected by the business judgment rule, which presumes that the directors acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.  Because of the protections afforded by the business judgment rule, plaintiffs must overcome a high standard in order to establish a wrongful rejection.  Only when a plaintiff makes factually-specific allegations that raise a reasonable doubt that the board acted in good faith and in an informed manner when considering the demand will a court allow a shareholder to assert a derivative claim on the corporation's behalf.  Here, the Complaint is entirely lacking in any particularized factual allegations demonstrating that the Board acted in bad faith or failed to reasonably evaluate the demands in light of the outstanding litigation.  In fact, this precise course of action by a board of directors, in virtually identical circumstances, was recently held by the United States District Court for the

---

[3]   Intel has not been subject to any final, non-appealable determination in any action that it violated either the U.S. antitrust laws or any competition laws of any foreign jurisdiction.

Northern District of California and the Ninth Circuit Court of Appeals to fall within the protection of Delaware's business judgment rule.[4]

Plaintiffs' attempt to overcome the presumption of the business judgment rule by asserting that the Board was "biased" and "lacking in independence" (Compl. ¶ 120) is also misplaced. Those allegations are nothing more than unsupported conclusions without any of the requisite factual detail. And, more fundamentally, Plaintiffs have conceded the Board's independence as a matter of law by virtue of making their demands.

Plaintiffs similarly cannot escape the business judgment rule with their argument that the Board's decision to defer its determination will have the effect of time-barring claims. As the Audit Committee concluded when considering Gilman's demand, if the Board elects to bring claims identified in Gilman's demands at a later time, those claims would "relate back," for statute of limitations purposes, to an earlier-filed derivative action that has been pending in California since July 2008. *See* King Decl., Ex. B. Thus, none of the conclusory allegations in the Complaint comes close to the factual particularity that is required before a court will permit a shareholder to usurp a board's authority to manage the corporation – including its power to determine whether, when, and how to commence and pursue or defend litigation.

---

[4] *See Furman v. Walton*, 320 Fed. Appx. 638, 639-40 (9th Cir. 2009) (affirming dismissal of a derivative complaint for failure to comply with the demand requirement where "the board asserted that bringing suit as per [plaintiff's] demand might have constituted a harmful admission in litigation pending against Wal-Mart," which was a "compelling business purpose" that plaintiff could not refute) (applying Delaware law).

## STATEMENT OF RELEVANT FACTS

### I.     The Alleged Anticompetitive Conduct At Intel

Plaintiffs' allegations concerning Intel's alleged anticompetitive conduct are "virtually the same" (Compl. ¶ 138) as allegations made against Intel in four lawsuits or regulatory actions: (i) private litigation between AMD and Intel entitled *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717-JFF (D. Del.) (the "AMD Litigation") (Compl. ¶¶ 93-99); (ii) "findings" issued against Intel by the European Commission ("EC") in May 2009 (Compl. ¶ 89);[5] (iii) a complaint filed against Intel by the New York Attorney General in November 2009 (the "NYAG Litigation") (Compl. ¶¶ 100-06); and (iv) a complaint filed by the Federal Trade Commission against Intel in December 2009, which includes allegations of anticompetitive conduct involving the market for graphics processing units ("GPUs") (the "FTC Litigation"). Compl. ¶¶ 107-15. Parroting allegations made in these actions, Plaintiffs allege that Intel engaged in anticompetitive conduct by (a) offering rebate payments to Original Equipment Manufacturers ("OEMs") that purchased Intel's microprocessors, which allegedly had the effect of limiting the market share of AMD, Intel's largest competitor, and (b) engaging in anticompetitive conduct intended to monopolize the GPU market. *See* Compl. ¶¶ 33-80.

––––––––––––––––––––––––

[5] Intel vigorously disputes the notion that the EC "findings" are entitled to the same weight as adjudicative facts in a court ruling made after a full trial, after full discovery, and accompanied by a right of cross-examination and to confront witnesses. As Intel has publicly said, none of those indicia of a fair trial were present in connection with the EC decision. The outcome of the current motion, however, does not depend on the weight to be accorded the EC decision.

Without further factual basis, Plaintiffs leap to the conclusion that the Individual Defendants are liable for failing "in bad faith to rein in, ameliorate or countermand" this alleged misconduct, which allegedly occurred from 2001 to the present, and for "consciously decid[ing] to turn a blind eye" to the alleged wrongdoing.  Compl. ¶¶ 36(a), 80.  Plaintiffs also allege – again, without articulation of any facts – that the Individual Defendants failed to ensure that Intel provided full and complete cooperation to the European Commission, and failed adequately to resolve the EC's investigation or prevent the EC from levying a large fine against Intel.  Compl. ¶ 36(b).  Similarly, Plaintiffs allege that the Individual Defendants failed to "ameliorate or countermand" misconduct that would have reduced or eliminated the amount paid by Intel to resolve the AMD Litigation.  Compl. ¶ 36(c).  Finally, Plaintiffs allege that the Individual Defendants breached a fiduciary duty by "consciously and in bad faith refusing to thoroughly investigate and address executive wrongdoing" and refusing to bring the "legitimate claims" identified in Plaintiffs' demands.  Compl. ¶ 36(d).

## II.   Background on Plaintiffs' Demands, And The Intel Board's Deferral Of Final Action On The Demands

### A.   Purported Intel Shareholder Villari Makes A Demand On Intel

On June 12, 2008, the law firm representing Plaintiff Gilman in this action sent a letter to Intel's Board on behalf of Annette Villari, "a long-time Intel shareholder" who is not a plaintiff in this action, recounting Intel's alleged antitrust misdeeds and demanding that the Board "investigate certain claims, initiate appropriate legal action, and take necessary and appropriate remedial measures to ensure that the corporation is protected from further harm."  Compl. ¶ 121 & n.32 (referring to letter attached as Exhibit A to the complaint in the *Gilman* action (also attached, for the Court's convenience, as Exhibit C

6

to the King Decl.)).  In response, the Board referred the demand to Intel's Audit

Committee for consideration.  Compl. ¶ 123.  On September 25, 2008 and November 3,

2008, counsel for the Audit Committee sent letters to counsel for Ms. Villari requesting a

meeting and any information that Ms. Villari felt should be brought to the Audit

Committee's attention concerning the alleged "anticompetitive practices."  Compl. ¶ 124,

King Decl., Exs. D & E.  Counsel for Ms. Villari did not respond to these requests.

On January 29, 2009, counsel for the Audit Committee sent a letter to counsel for

Ms. Villari stating, among other things, that:

- The Board had authorized the Audit Committee to evaluate the demand;

- The Audit Committee had retained the law firm Orrick, Herrington & Sutcliffe
  LLP to assist with review of the demand;

- After deliberation, the Audit Committee "recommended that the full Board defer
  any determination regarding the demand" based on the following factors, among
  others:

   "That the issues raised in the underlying matters (including those of which
   you mention in your demand letter), which the Company has denied and is
   vigorously contesting, are legally and factually complex and the Company
   would benefit from the judicial resolution of those questions;

   "The factual records in the underlying matters are not yet fully developed, and
   the Company would benefit from a more fully developed factual record;

   "The issues raised in the demand are legally and factually intertwined with
   those of the underlying matters and any action by the Company at this time
   could unnecessarily expose the Company to liability, including potential
   liability in the underlying matters;

   "Any further action on Ms. Villari's demand at this time could have an
   adverse effect on the Company's business; and

   "Any action against the Company's directors and officers would require the
   Company to indemnify such directors and officers for the substantial costs and
   expenses (including attorney's fees) they would incur in defending the actions
   which the Company does not believe is appropriate at this time."

- The Board considered those factors, deliberated, and concluded that "it is not currently in the best interest of the Company to make any determination regarding the merits of Ms. Villari's demand" and that it would "continue to monitor the underlying matters."

Compl. ¶ 125; King Decl., Ex. A.

### B. This Court Grants Intel's Motion To Dismiss The *Smilow* "Demand Futility" Complaint

At the time of Ms. Villari's demand, a separate derivative lawsuit filed by another Intel stockholder, Martin Smilow, was pending before this Court. Compl. ¶ 101. The factual allegations in the *Smilow* complaint, like the Complaint in this action, were taken primarily from allegations of anticompetitive conduct made in the separate antitrust litigation against Intel. Specifically, Smilow asserted that the alleged misconduct identified in the AMD Litigation and various regulatory proceedings constituted "red flags" that the Intel Board members had ignored in violation of their fiduciary duty to Intel. *See In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 169-72 (D. Del. 2009). Smilow also alleged that making a demand on the Board would be futile because the Board faced a "substantial likelihood of liability" in light of the ongoing litigation. *Id.* at 171-73.

On June 4, 2009, this Court granted Intel's motion to dismiss the *Smilow* derivative complaint for failure adequately to plead demand futility. *Id.* at 179. This Court ruled that in order to comply with Federal Rule of Civil Procedure 23.1, Smilow was required to plead "particularized facts establishing a reason to doubt that 'the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'" *Id.* at 170 (quoting *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008)) (citing *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). In granting

the motion to dismiss, this Court concluded that, "setting aside Plaintiff's failure to allege facts suggesting that Defendants knew they were not discharging their duties, the Court is unable to conclude that the alleged 'red flags' are so compelling that the Defendants now face a 'substantial likelihood' of liability" for their alleged failure of oversight. *In re Intel Derivative Litig.*, 621 F. Supp. 2d at 175.

### C.    Villari "Renews" The Original Demand, Which Gilman Later "Joins"

After failing to respond to the Intel Board for over four months, on June 8, 2009 – four days after this Court dismissed the *Smilow* derivative action – counsel for Villari "renewed" the original demand, purportedly in light of a fine that had been imposed on Intel by the European Commission the previous month. Compl. ¶ 130; Gilman Compl. Ex. B (attached as Exhibit F to the King Decl.). While the Audit Committee was reviewing the renewed demand, on July 29, 2009, counsel for Villari requested that the Board obtain tolling agreements from "all Board members and all senior members of management during the relevant period so that all potential claims may be preserved." Compl. ¶ 131; King Decl., Ex. G.

Counsel for the Audit Committee and counsel for Villari met on August 27, 2009 to discuss the demand. Compl. ¶ 133. On October 14, 2009, counsel for Villari informed counsel for the Audit Committee that another purported Intel stockholder, Charles A. Gilman, would be "join[ing] in Ms. Villari's demand, and that Mr. Gilman adopted all previous demands and other communications sent on Ms. Villari's behalf." Compl.

9

¶ 122; Gilman Compl., Ex. C (attached as Ex. H to the King Decl.).[6] Before the Intel

Board had responded to the Gilman/Villari demand, on November 13, 2009, Plaintiff

Gilman filed the first derivative lawsuit in this consolidated action.

On November 30, 2009, counsel for the Audit Committee informed counsel for

Villari/Gilman that the Board, on the Audit Committee's recommendation, had again

concluded that it was in the best interest of Intel and its shareholders to defer a decision

on the demand based on the factors identified in the January 29, 2009 letter, among

others. *See* King Decl., Ex. I.[7] The letter also noted that a separate shareholder

derivative action had been pending in the Superior Court of Santa Clara County,

California, since June 27, 2008. *Id.* That lawsuit named as defendants many of the same

individuals from whom counsel for Villari/Gilman sought tolling agreements, as well as

"Doe" defendants, and contained similar allegations of misconduct as those set forth in

Villari's and Gilman's demand letter. The Board thus concluded that it was unnecessary

---

[6] Gilman's purported "adoption" of the Villari demand was improper. That Gilman still has not made his own demand on the Intel Board is a separate reason why he lacks standing to bring the derivative claims at issue in this motion.

[7] When an indisputably authentic document is "integral" to a plaintiff's claim, but not attached to or referenced in plaintiff's complaint, a court may take the document into consideration on a motion to dismiss. *See Baldino*, 648 F. Supp. 2d at 616 (court may consider on motion to dismiss document not attached to or incorporated by reference in a complaint, but which is "integral to [plaintiff's] claim"); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court may consider on motion to dismiss documents that are "undisputedly authentic" if "the plaintiff's claims are based on the document"). Because there can be no dispute that the November 30, 2009 letter is authentic, and because it addresses the central issues raised in the Complaint and Intel's motion to dismiss – namely, Plaintiffs' compliance with the demand requirement and the Board's decision to defer action on the demand – the Court may consider the November 30, 2009 letter on this motion to dismiss.

to secure tolling agreements, and that it would continue to monitor the underlying antitrust matters. *Id.*

### D.   The LMPERS Demand And Complaint

On November 12, 2009, the day before Gilman filed his complaint, counsel for Plaintiff LMPERS sent a letter to the Intel Board demanding that it bring suit based on allegations of anticompetitive conduct that were "substantially the same as the facts described in" the Gilman/Villari demand letters. Compl. ¶ 134; King Decl., Ex. J. Although LMPERS was advised that the Board would consider the demand at the next regularly-scheduled Board meeting in January 2010, LMPERS filed a derivative complaint on December 23, 2009 without awaiting the Board's consideration. Compl. ¶ 136; King Decl., Exs. K, L, M, and N.

The LMPERS complaint contained virtually identical factual allegations and claims as the Gilman complaint, and also adopted allegations of anticompetitive conduct made in the FTC Complaint filed on December 16, 2009. *See* LMPERS Compl. ¶ 101. These included alleged anticompetitive conduct by Intel in the market for GPUs – allegations that had not been made in any other private litigation or regulatory action against Intel. *See, e.g.,* Compl. ¶ 114.[8]

---

[8] Plaintiff LMPERS is alleged to have held Intel shares since 2004. Compl. ¶ 21. The alleged anticompetitive conduct identified in the Complaint is alleged to have commenced in 2001. *See* Compl. ¶ 36(a) (active misconduct claims "pertain to the period 2001 through the present . . ."). A derivative plaintiff must hold shares during the period in which the underlying misconduct in the lawsuit is alleged to have occurred. *See Brambles USA, Inc. v. Blocker*, 731 F. Supp. 643, 648 (D. Del. 1990) (Rule 23.1 "require[s], *inter alia*, that a derivative plaintiff be a shareholder of the corporation at the time of the transaction of which he complains."). LMPERS thus

[Footnote continued on next page]

### E.    Plaintiffs File A Consolidated Complaint

On January 15, 2010, this Court entered a stipulated order consolidating the Gilman and LMPERS actions and setting a schedule for Plaintiffs to file a consolidated complaint and for Intel and the Individual Defendants to respond.[9]  Plaintiffs filed a consolidated complaint on February 12, 2010.  The Complaint contains substantially similar allegations of misconduct as the Gilman and LMPERS complaints – allegations taken directly from the AMD Litigation, the European Commission investigation and findings, the NYAG Litigation, and the FTC Litigation.  The Complaint asserts four breach of fiduciary duty claims: (i) an "active misconduct" claim against Intel executives and Board members who, from 2001 to the present, allegedly violated antitrust laws; (ii) a claim against Intel Board members who allegedly failed to fully cooperate with the European Commission, or to take remedial measures, that (according to Plaintiffs) may have reduced or eliminated the EC fine; (iii) a claim against Intel Board members who allegedly failed to "rein in, ameliorate or countermand" the misconduct alleged in the AMD Litigation "in a manner that would have reduced or possibly eliminated the need for the settlement payment altogether;" and (iv) a claim against Intel Board members for failing to take appropriate remedial actions against the allegedly responsible corporate officials, per Plaintiffs' demands. *See* Compl. ¶¶ 152-167.

---

[Footnote continued from previous page]
lacks standing to bring this derivative action for this reason, as well as the others set forth herein.

[9]  Under this Court's order, the motion to dismiss briefing was bifurcated, with the motion to dismiss pursuant to Rule 23.1 coming first. *See* Order ¶ 7 (King Decl., Ex. O).  This brief, therefore, addresses only that issue.  Only if issues remained after this Court's decision on standing under Rule 23.1 would any Individual Defendant then file a motion to dismiss under Rule 12(b)(6). *Id.*

Plaintiffs also assert in the Complaint that the Board gathered information relating to the underlying misconduct alleged in the Gilman/Villari and LMPERS demands, "performed an evaluation of the merits" of the alleged misconduct, and, in separate litigation, consistently asserted that claims in the underlying litigation lacked merit. Compl. ¶ 120.  Plaintiffs also allege that Intel "most assuredly" will be harmed by the NYAG Litigation, the FTC Litigation, and consumer class actions that remain pending against Intel, and that the FTC Litigation "potentially poses a more serious threat than any proceeding to date," because "if successful, the FTC Action greatly inhibits Intel's immediate profitability and may even endanger the Company's long-term survival." Compl. ¶¶ 7, 14.  Nonetheless, according to Plaintiffs, the Board's decision to defer action on the demands in light of this ongoing litigation was a *de facto* wrongful refusal. *Id.*  Despite having made the demands on the Board, moreover, Plaintiffs further assert that the Board was "so biased and lacking in independence" that it could not have fairly responded to the demands. *Id.*

13

# ARGUMENT

I.  **Plaintiffs Lack Standing Because They Have Failed To Allege Particularized Facts Showing That Intel's Decision to Defer Action On The Demand Is Not Protected By The Business Judgment Rule**

A.  **Rule 23.1 Of The Federal Rules Of Civil Procedure Imposes A Heightened Standard For Pleading That Demand Was Wrongly Refused**

It is "[a] cardinal precept . . . that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).[10]  Accordingly, directors are responsible for deciding whether a corporation should bring claims asserted in the name of the corporation. *White v. Panic*, 783 A.2d 543, 550 n.18 (Del. 2001) (citing *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991)).[11] Thus, a shareholder seeking to pursue a corporation's claims derivatively must "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members;

---

[10]  Intel is a Delaware corporation.  Compl. ¶ 23.  Therefore, Delaware law governs the question of whether the Board acted improperly in refusing to act on Plaintiffs' demand. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991) (courts must apply the law of the state of incorporation to question of whether demand requirement met); *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007) ("[F]ederal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate" that demand is excused or was wrongly refused); *In re Intel Derivative Litig.*, 621 F. Supp. 2d at 170 ("[T]he substantive requirements of demand are a matter of state law") (quoting *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992)).

[11]  "[T]he demand requirement implements 'the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders." *Kamen*, 500 U.S. at 101 (quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530 (1984)).

and (B) the reasons for not obtaining the action or not making the effort." FED. R. CIV. P. 23.1(b)(3).  The demand requirement is not simply a technical pleading rule or a "'mere formalit[y] of litigation,' but rather an important 'stricture[] of substantive law.'" *Levine*, 591 A.2d at 207 (citation omitted); *see also id.* at 210-11.

The need for strict compliance with the demand requirement is particularly acute where, as here, the corporation in question is subject to contemporaneous litigation over the same allegations identified in the demand.  As Plaintiffs themselves allege, Intel has for many years been vigorously defending itself in high-stakes regulatory and private litigation relating to the same alleged anticompetitive conduct that forms the basis for the Complaint.  Rather than allow the Board to determine whether pursuing litigation is in the best interest of Intel's shareholders, however, Plaintiffs have injected themselves in the midst of this outstanding litigation by adopting the disputed allegations of anticompetitive conduct as the central premise for their allegations of breach of a fiduciary duty.  Rule 23.1 and substantive Delaware law require far more than is pled here before the ordinary corporate governance procedures – which require that directors, not individual shareholders, manage the affairs of the corporation – can be so dramatically overturned.

**B.     Plaintiffs Have Failed To Plead Particularized Facts That, If True, Would Overcome The Business Judgment Rule Presumption That Directors Are Faithful To Their Fiduciary Duties**

Before Plaintiffs may usurp the Board's authority to make decisions on behalf of Intel, Plaintiffs must state with factual particularity, as required under Rule 23.1, that the Board's decision to defer on the demand was an improper exercise of the Board's business judgment.  The business judgment rule "presumes that 'in making a business

decision the directors . . . acted on an informed basis, in good faith, and in the honest

belief that the action taken was in the best interests of the company.'" *In re Walt Disney*

*Co. Derivative Litig.*, 906 A.2d 27, 52 (Del. 2006) (quoting *Aronson*, 473 A.2d at 812).

"A hallmark of the business judgment rule is that a court will not substitute its judgment

for that of the board if the latter's decision can be 'attributed to any rational business

purpose.'" *Unocal v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985) (quoting

*Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)).[12]

      Delaware law is clear that a board's decision not to accept a shareholder demand

is subject to "the powerful presumption[] of the business judgment rule." *Rales*, 634

A.2d at 933; *see also Aronson*, 473 A.2d at 813 ("where demand on a board has been

made and refused, we apply the business judgment rule in reviewing the board's refusal

to act pursuant to a stockholder's demand."); *Spiegel v. Buntrock*, 571 A.2d 767, 775-76

(Del. 1990) (same); *Levine*, 591 A.2d at 212 (same). Thus, "[i]f a demand is made and

rejected, the board rejecting the demand is entitled to the presumption of the business

judgment rule unless the stockholder can allege facts with particularity creating a

reasonable doubt that the board is entitled to the benefit of the presumption." *Grimes v.*

*Donald*, 673 A.2d 1207, 1219 (Del. 1996). "[T]he burden is upon the plaintiff in a

---

[12] A motion to dismiss based on a failure to plead facts establishing wrongful refusal to
act on a demand "is not intended to test the legal sufficiency of the plaintiff's
substantive claim. Rather, its purpose is to determine who is entitled, as between the
corporation and its shareholders, to assert the plaintiff's underlying substantive claim
on the corporation's behalf." *Levine v. Smith*, 1989 WL 150784, at *5 (Del. Ch.),
*aff'd*, 591 A.2d 194 (Del. 1991). As noted earlier, the parties have stipulated, and the
Court has agreed, to bifurcate motion to dismiss briefing such that the sufficiency of
Plaintiffs' claims will be addressed if and only if Plaintiffs have satisfied the
requirements of Rule 23.1. A compendium of unreported decisions is being filed
simultaneously herewith.

derivative action to overcome th[e] presumption" that directors are "faithful to their fiduciary duties," *Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004), which "must be determined on the basis of the well-pleaded allegations of the complaint." *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 77 (Del. 1997).

In the demand-refused context, the presumption of the business judgment rule can be rebutted only if the party alleging wrongful refusal of the demand alleges *specific facts* creating a reasonable doubt that the board acted in good faith and on an informed basis in considering a plaintiff's demand. *Levine*, 591 A.2d at 212-13; *Spiegel*, 571 A.2d at 777-78. In order to succeed, plaintiffs must meet the heightened pleading standard required by Rule 23.1. *Levine*, 591 A.2d at 210-11. Absent specific allegations overcoming the presumption that the directors' decision was made in good faith and on an informed basis, the plaintiff lacks standing, and accordingly, "the ... managerial power to continue the derivative action." *Aronson*, 473 A.2d at 813.

### 1.    Plaintiffs Fail To Plead Particularized Facts Rebutting The Presumption That The Board Acted In Good Faith And On An Informed Basis

Plaintiffs allege that the Intel Board "consciously and in bad faith refus[ed] to thoroughly investigate and address executive wrongdoing" by failing to comply with Plaintiffs' demands. Compl. ¶ 36(d). But the Complaint contains no facts, let alone particularized ones, that would satisfy the heightened pleading standard by demonstrating that the Board's decision to defer decision on Plaintiffs' demands in light of, among other things, the pendency of litigation against Intel raising many of the same legal and factual issues as the demands, amounted to bad faith or a lack of informed consideration by the

Board.[13]  Indeed, it should be noted that there has been no rejection of Plaintiffs'

demands.  Instead, the Board merely decided, in the exercise of its business judgment,

that it would be in the best interests of the corporation to defer decision on the demands

for the time being.

The Complaint and documents referenced therein make clear that the Intel Board

referred the initial demand to the Audit Committee; that the Audit Committee retained

counsel to assist the Committee in evaluating the demand; and that after due

consideration and in consultation with counsel, the Board elected to follow the Audit

Committee's recommendation to defer a determination on the demand in light of the

following factors, among others: (i) that Intel would benefit from judicial resolution of

the complex legal and factual issues raised in the demand; (ii) that Intel would benefit

from a more fully-developed factual record relating to the issues in the demand and in the

contemporaneous litigation; (iii) that the issues raised in the demand were "legally and

factually intertwined" with separate litigation against Intel, which, if affirmatively

pursued by the Company, "could unnecessarily expose the Company to liability"; (iv)

---

[13]  Plaintiffs' fourth cause of action is for breach of fiduciary duty against the current
Intel Board members who allegedly are "consciously and in bad faith refusing to
thoroughly investigate and address executive wrongdoing; are attempting to stymie
and defeat legitimate claims against directors and officers through efforts to cause
such claims to lapse by dint of the statute of limitations; and who have failed in bad
faith to enact necessary therapeutic and remedial measures." Compl. ¶ 164.  In effect,
this claim asserts that the current Board members breached their fiduciary duties by
failing to accede to Plaintiffs' demand.  Plaintiffs made no demand on the Board that
the Company bring this cause of action.  *See* King Decl., Exs. C & J.  Nor do
Plaintiffs allege that making such a demand would be futile.  Thus, the fourth cause
of action should be dismissed because Plaintiffs have made no attempt to comply
with the Rule 23.1 demand requirement with respect to that claim.  The claim also is
improper on its face because "[w]rongful refusal is not an independent cause of
action." *Baron v. Siff*, 1997 WL 666973, at *1 n.4 (Del. Ch.).

that complying with the demand could adversely affect Intel's business; and (v) that any such litigation would result in substantial indemnification costs and expenses. *See* Compl. ¶ 125, King Decl., Ex. A.[14]

Indeed, courts applying Delaware law have held that a board's decision to defer demand in light of the pendency of outstanding litigation raising issues similar to those identified in a shareholder demand is protected under the business judgment rule.  For example, in *Furman v. Walton*, 2007 WL 1455904 (N.D. Cal.), *aff'd*, 320 Fed. Appx. 638 (9th Cir. 2009), a shareholder plaintiff brought a derivative action on behalf of Wal-Mart against certain members of Wal-Mart's board of directors and senior officers, alleging that these defendants breached their fiduciary duties by authorizing and encouraging violations of labor and employment laws through alleged unlawful discrimination against Wal-Mart's female employees. *Id.* at *1.  After considering the plaintiff's demand, the Wal-Mart board concluded, on the recommendation of its Audit Committee, that pursuit of the litigation would not serve the best interests of Wal-Mart and its shareholders, and that it would defer final action on the plaintiff's demand until resolution of the *Dukes*

---

14 Even if the Board were to have concluded that the allegations identified in Plaintiffs' demand letters had merit, the Board could reasonably conclude that it was not in the best interest of Intel's shareholders to bring the claims demanded, and that decision *still* would be protected by the business judgment rule. *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 785 (Del. 1981) ("If the board determines that a suit would be detrimental to the company, the board's determination prevails."); *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007) ("It is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests."); *In re VistaCare, Inc. Derivative Litig.*, 2007 WL 2460610, at *2 (D. Ariz.) ("[E]ven if meritorious claims are made in a demand . . . a board may forego litigation if, in exercising its business judgment, the board decides that it is best for the company not to do so.") (applying Delaware law).

case – a major class action employment discrimination case then pending against Wal-Mart. *Id.*  Plaintiff argued that the board's decision to defer the demand constituted a wrongful rejection.  Applying Delaware law, the district court granted Wal-Mart's motion to dismiss for failure to establish wrongful rejection by alleging particularized facts that would overcome the protection of the business judgment rule.  *Id.* at *5.  The Ninth Circuit Court of Appeals affirmed the district court's decision, concluding that, under Delaware law, a board of directors had a "compelling business purpose" to defer a decision on a shareholder demand when compliance with the demand "might have constituted a harmful admission in litigation pending against Wal-Mart."[15]  *Furman*, 320 Fed. Appx. at 639-40; *see also Piven v. Ryan*, 2006 WL 756043, at *4 (N.D. Ill.) (board's decision to postpone a response to a demand was "reasonable given that it is currently litigating related issues in state court") (applying Delaware law); R. Franklin Balotti & Jesse A. Finkelstein, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 13.15 (3d ed. Supp. 2009), at 13-72 (board may consider in evaluating a demand "[t]he possible detriment to the company from the assertion of any claims, as well as the indirect costs, such as the effect upon other potential litigation to which the company is a party . . .").[16]  Here, similarly, if Intel were to base affirmative claims

---

[15]  The district court in the *Furman* case credited the Wal-Mart board's argument that "pursuing legal action against [Wal-Mart's] directors for failing to abide by employment and labor laws would in effect be an admission in the *Dukes* case and in other actions.  This would expose Wal-Mart to substantial liabilities for damages in those cases and would not be in the best interests of the corporation." *Furman*, 2007 WL 1455904, at *5.

[16]  *See also Wilson v. Tully*, 676 N.Y.S.2d 531, 537 (N.Y. App. Div. 1998) ("As a practical matter, where, as plaintiffs allege, Merrill Lynch is named as a defendant in .

[Footnote continued on next page]

against officers or directors on the allegation that those individuals had engaged in

conduct prohibited by the antitrust laws, it might be deemed an admission in the

underlying antitrust proceedings that would disadvantage Intel's defense of those

actions.[17]

It is also clear, under Delaware law, that Plaintiffs have failed to allege

particularized facts raising a reasonable doubt that the Board acted in an informed

manner when considering the demand.[18]  In *Levine v. Smith*, for example, the Delaware

---

[Footnote continued from previous page]
. . class actions, its board of directors . . . could reasonably conclude, on the advice of
counsel, that it is in the best interests of Merrill Lynch and its stockholders to
vigorously defend or even settle those suits, rather than pursuing this diametrically
opposed derivative suit") (applying Delaware law); *In re E.F. Hutton Banking
Practices Litig.*, 634 F. Supp. 265, 269-70 (S.D.N.Y. 1986) ("It seems obvious that
the directors whom plaintiffs wish to sue would be important witnesses for the
Corporation in . . . existing and threatened litigation, and that a disinterested board
might well . . . conclude it to be unwise to subject them to further litigation clearly
calculated to undercut their veracity and general effectiveness as witnesses.")
(applying Delaware law).

[17] If the Board complied with Plaintiffs' demands and brought the claims asserted in the
Complaint – thereby taking the position that the Individual Defendants breached a
fiduciary duty by participating in or failing to prevent the underlying misconduct
alleged in the separate antitrust litigation – Intel might be judicially estopped from
reversing positions, and contesting liability, in the ongoing antitrust litigation. *See
Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.
1996) ("Judicial estoppel, sometimes called the 'doctrine against the assertion of
inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from
asserting a position inconsistent with one that she has previously asserted in the same
or in a previous proceeding."); *Walker v. News Journal*, 2008 WL 766788, at *4 (D.
Del.) ("Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from
asserting a position inconsistent with the one that she has previously asserted in the
same or in a previous proceeding.").

[18] Plaintiffs make wholly contradictory allegations with respect to the Board's
consideration of the demands.  On the one hand, Plaintiffs assert that the Board's
evaluation of the demands was wrongful because the Board "refused outright to
***perform any investigation at all***." Compl. ¶ 9, 123 (emphasis in original).  On the

[Footnote continued on next page]

Supreme Court concluded that a board's decision, reached at a regularly-scheduled meeting, to reject a demand less than one month after receiving it was protected under the business judgment rule. 591 A.2d at 214. Despite a response to the demand indicating simply that pursuing the litigation "is not in the best interests of the Corporation," the Court concluded that "[t]he only reasonable inference to be drawn from this document is that the [] directors did act in an informed manner in addressing Levine's demand." *Id.*; *see also Siff*, 1997 WL 666973, at *3 (holding that letter from corporate counsel rejecting demand nine days after board received demand and "the mere allegation that a board did not investigate a demand is insufficient to rebut the presumption of the business judgment rule").[19]

Here, the factual record, and Plaintiffs' own allegations, make clear that the Board carefully considered the Villari/Gilman demands, "performed an evaluation of the merits of the various antitrust allegations alleged herein," and made a decision based on various factors, including the risks associated with ongoing litigation. Compl. ¶ 120. In other words, the Complaint comes nowhere close to establishing a reasonable doubt that the Board acted in an informed manner when considering the demands.

---

[Footnote continued from previous page]
other hand, Plaintiffs assert that the Board "performed an evaluation of the merits of the various allegations alleged herein." Compl. ¶ 120. Plaintiffs' inability to set forth a coherent theory as to why demand was wrongfully refused demonstrates the fallacy of this claim. In any event, the record is clear that the Board's consideration of the demand falls well within the protection of the business judgment rule.

[19] *See also Boeing Co. v. Shrontz*, 1994 WL 30542, at *2-3 (Del. Ch.) (noting that "there is 'no prescribed procedure that [a board] must follow'" when evaluating a demand, and granting directors' motion to dismiss when "[t]here is nothing about this process that suggests the absence of due care or bad faith") (quoting *Levine*, 591 A.2d at 214).

For example, Plaintiffs purport to attack the propriety of the Board's decision by asserting that the Board should have complied with the demand because doing so "can only *decrease* Intel's liability" by holding "contingently liable parties" responsible for their alleged wrongdoing. Compl. ¶ 127(C). This argument makes no sense, particularly when the supposed "contingently liable parties" are Intel's directors and officers, whose liability may constitute an admission or have an adverse impact on Intel in the separate, underlying antitrust litigation. *See In re Consumer Powers Co. Derivative Litig.*, 132 F.R.D. 455, 478 (E.D. Mich. 1990) (board decision to reject demand protected by business judgment rule; "[i]t comes as little surprise – and can hardly be said to be a product infected by bias – to say that Consumers would be harmed in the *Dow* litigation by doing a complete about-face in pursuing a claim of fraud and mismanagement against its officers and directors").

Plaintiffs also take issue with the other reasons proffered by the Board for deferring a determination on the demands, none of which even remotely suggests that the Board's decision was made in bad faith or lacked informed analysis. For example, Plaintiffs assert that the record has been fully developed and closed with respect to the European Commission investigation and the AMD Litigation, and thus, there is no need for further factual development to inform the Board's decision on the demands. Compl. ¶ 127(B).[20] But Plaintiffs fail to mention that the FTC Litigation includes allegations of anticompetitive conduct by Intel that had not previously been raised in any other

---

[20] Intel and AMD reached a settlement in the AMD Litigation before any trial had occurred. Thus, there is no basis to conclude that Intel engaged in misconduct based on the allegations in the AMD Litigation, because that litigation did not result in any adjudicative facts concerning Intel's business practices.

regulatory proceeding or private litigation. Thus, further factual development of these issues would plainly be beneficial to the Board. Plaintiffs also ignore that the "findings" issued by the European Commission in May 2009, which did *not* result from any trial or similar adjudicative proceeding, are on appeal. Compl. ¶ 80.[21] Indeed, the district court in the Wal-Mart case rejected a similar argument – that the "reason for the deferral" no longer existed in light of a decision in the underlying lawsuit against Wal-Mart from which the derivative allegations were taken. *Furman*, 2007 WL 1455904, at *5. The *Furman* court noted that the decision in question was not final, and, in any event, there were other reasons for the board's decision to defer on the demand. *Id.*

Plaintiffs also ignore their own allegations that Intel is defending itself in several other lawsuits making similar antitrust allegations, including the NYAG Litigation, the FTC Litigation, and other consumer class actions – which, according to Plaintiffs, "almost assuredly will result in harm to the Company." Compl. ¶ 14. The most serious risk, Plaintiffs allege, is the FTC Litigation, which poses a "substantial threat to Intel's ability to build market share in the burgeoning graphics processing unit market," (Compl. ¶ 14), and which "may even endanger the Company's long-term survival." Compl. ¶ 7. Thus, rather than alleging facts that cast doubt on the good faith and reasonableness of the Board's decision, Plaintiffs' own allegations make clear that the Board's decision to

---

[21] *See* King Decl., Ex. P. *See also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 257 n.5 (3d Cir. 2006) (court may consider public document not attached to complaint on motion to dismiss).

defer pursuing claims based on the underlying antitrust litigation was eminently reasonable.[22]

Plaintiffs also assert that the Board's desire for a fuller factual record and to avoid substantial costs associated with indemnifying Intel's directors and officers in a derivative suit were improper reasons for failing to initiate a lawsuit because, according to Plaintiffs, these reasons "can be invoked in response to any demand for shareholder action." Compl. ¶ 127(E). That the board of directors of a different company may make a similar argument is irrelevant to whether *Intel's* conclusion is a reasonable one under the circumstances – and unarguably it is a reasonable one in this case. Indeed, it is undisputed that the LMPERS December complaint, based in part on allegations in the FTC Litigation, relates to underlying antitrust claims that were filed for the first time just days before the LMPERS suit – strongly underscoring why the Board might benefit from a fuller factual record before taking up the LMPERS demand. In short, Plaintiffs fail to allege a single fact suggesting that the Board's consideration of these issues was somehow an act of bad faith, and the facts support precisely the opposite conclusion.

---

[22] Plaintiffs also claim that the Board is somehow precluded from deferring a decision on the basis of the outstanding claims against Intel because Intel and its Board asserted a statute of limitations defense in the *Smilow* derivative action – even though this Court, in *Smilow*, did not reach the limitations issue. *See In re Intel Derivative Litig.*, 621 F. Supp. 2d at 172 n.1; Compl. ¶ 127(A). Plaintiffs ignore that, unlike this case, the *Smilow* action involved allegations of misconduct dating from 1987 – allegations that had statute of limitations implications not applicable in this case. *See* Smilow Compl. ¶¶ 26, attached as Ex. Q to King Decl. In any event, as explained in Section I(B)(3) *infra*, because of a previously-filed derivative complaint brought on behalf of Intel, the statute of limitations would not expire on the claims asserted by Plaintiffs in the event that Intel later decides to bring such claims.

At most, Plaintiffs allege that they disagree with the Board's decision not to comply with the demands, which clearly is not enough to confer standing on a shareholder to prosecute a derivative lawsuit.[23]   What Plaintiffs do not – and cannot – do is plead with the requisite specificity *any* facts suggesting that the Board's decision to defer determination of the demand was made in bad faith or was not the result of an informed judgment, which is fatal to the derivative claim.

> **2.      Plaintiffs' Conclusory Allegation That The Board Lacked Independence Is Not Cognizable And Lacks The Particularized Facts Required To Overcome The Protection Of The Business Judgment Rule**

Plaintiffs are required under Rule 23.1 to plead with factual particularity why the Board's decision on the demand is not protected by the business judgment rule.  Rather than setting forth specific factual allegations that would rebut the presumption of the business judgment rule, however, Plaintiffs make the conclusory and wholly unsupported

---

[23]   *See Grimes*, 673 A.2d at 1220 (granting motion to dismiss in demand refusal context where complaint "recites the Board's rejection of Grimes' demand and proceeds to assert why Grimes disagrees with the Board's conclusion," "generally asserts that the refusal could not have been the result of an adequate, good faith investigation since the Board decided not to act on the demand," but "fails to include particularized allegations which would raise a reasonable doubt that the Board's decision to reject the demand was the product of a valid business judgment"); *Grobow v. Perot*, 526 A.2d 914, 928 (Del. Ch. 1987) ("However controversial, unpopular, or even wrong such a decision might turn out to be, it is precisely the kind of business judgment that the rule is intended to enable an independent, disinterested board of directors to make. I understand that plaintiffs view this matter quite differently, but for their view to prevail on a Rule 23.1 motion to dismiss, it must be supported by particularized, pleaded facts."), *aff'd*, 539 A.2d 1980 (Del. 1988); *Reading Co. v. Trailer Train Co.*, 1984 WL 8212, at *4 (Del. Ch.) ("The business judgment rule allows for the possibility that other people might disagree with a board's decision.  Indeed, it is acknowledged that a board's decision, otherwise properly based, could be wrong and still withstand attack.").

assertion that the Board's decision on their demands was wrongful because the Individual

Defendants are "hostile, biased, and have demonstrated a lack of independence." Compl.

¶ 133. This argument is misplaced because it is bedrock Delaware law that Plaintiffs

conceded the independence of the Board by making the demands. *See Levine*, 591 A.2d

at 212 (shareholder plaintiff, by making a demand upon a board before filing suit "'tacitly

concedes the independence of a majority of the board to respond. Therefore, when a

board refuses a demand, the only issues to be examined are the good faith and

reasonableness of its investigation.'") (quoting *Spiegel*, 571 A.2d at 777); *FLI Deep

Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch.) (because plaintiffs made

demand on board, "they have conclusively conceded the independence of the Board, and

are precluded from now arguing that demand should be excused because the directors are

conflicted").[24]

Even if Plaintiffs had not conceded the Board's independence, however, their

assertion that the Board lacked independence is unsupported by any facts alleged in the

Complaint. For example, Plaintiffs assert that the Board referred the Villari demand to

the Audit Committee, but that Committee "was never granted the power . . . to act

independently of the entire Board (including CEO Otellini)" (Compl. ¶ 148), and "[t]he

Board knew that the Audit Committee was not independent, and would render no

---

[24] *See also Norfolk County Retirement Syst. v. Jos. A. Bank Clothiers, Inc.*, 2009 WL
353746, at *7 n.51 (Del. Ch.) ("Demonstrating wrongful refusal is more daunting
than demonstrating demand futility. The Delaware Supreme Court has explained that
once a plaintiff has made a demand on the board the plaintiff effectively has conceded
the board had the requisite independence and disinterest to objectively evaluate the
demand") (citing *Levine*, 591 A.2d at 211-13); *Furman*, 2007 WL 1455904, at *2 ("A
shareholder who makes a demand concedes the disinterestedness and independence of
a majority of the board to respond to the demand . . . .").

independent recommendations." *Id.* But there are no particularized facts alleged that would suggest that the Audit Committee was somehow disabled from making an independent recommendation to the Board regarding the demand. Moreover, Plaintiffs cite no case holding that where, as here, demand is made and the independence of the Board is thus conceded, a committee of the same Board is interested, but the Board is not interested. Such a scenario makes no sense given Plaintiffs' admission that the Board is independent and fully capable of responding to the demand and the fact that it will be the entire Board that will ultimately act with respect to the demand.

Similarly, Plaintiffs allege that, with respect to the Audit Committee recommendation to defer decision on the demand, "it is abundantly evident that the 'outside' directors were taking direction from senior management as to how they should view the propriety of their actions." Compl. ¶ 151. Again, Plaintiffs offer not a single fact that would suggest that the Audit Committee's recommendation on the demand was dictated by senior management. These allegations fall well short of the factual specificity that is required before a board's decision not to comply with a demand is deemed to fall outside the protection of the business judgment rule.

> ### 3.   If the Board Later Elects To Comply With The Demand, Plaintiffs' Claims Would Not Be Barred By Any Statute Of Limitations Because The Claims Will Relate Back To A Previously-Filed Derivative Suit On Behalf Of Intel

Plaintiffs' allegation that, to the extent that Intel has any viable claims, they might be precluded by the statute of limitations prior to the Board making a final decision on the demand, is nothing but a red herring, which Plaintiffs hope will sidetrack the Court

28

from the dispositive issue in this motion – their failure to plead any facts that would

overcome the protection of the business judgment rule.

If the Board, upon further factual development in the ongoing litigation, elects to

assert the breach of fiduciary duty claims identified in Plaintiffs' demands, Intel would be

able to step in as the true party in interest in a derivative lawsuit currently pending in the

Superior Court of California, Santa Clara County,[25] which asserts a breach of fiduciary

duty claim based on the same essential allegations of anticompetitive conduct identified

in the Complaint. *Compare Del Gaizo* Complaint ¶¶ 47-99 to Compl. ¶¶ 37-80. The

plaintiff in the Del Gaizo Action and Plaintiffs in this case allege the same "general set of

facts." *See Smeltzley v. Nicholson Mfg. Co.*, 559 P.2d 624, 629 (Cal. 1977) (amended

complaint relates back to filing of original complaint when two complaints "relate to the

same general set of facts," even if they rest upon a different legal theories and state

different causes of action). Thus, the Audit Committee, in consultation with counsel,

concluded that any breach of fiduciary duty claim filed by Intel would, for statute of

limitations purposes, "relate back" to June 27, 2008 – the date on which the Del Gaizo

Action was filed. *See* King Decl., Ex. B; *see also In re Brocade Commc'ns Sys., Inc.*

*Derivative Litig.*, 615 F. Supp. 2d 1018, 1038 (N.D. Cal. 2009) (amended complaint

brought by company in compliance with shareholder demand was "not construed as a

---

[25] A court may take judicial notice of public records, including documents filed in
separate court proceedings. *See Jean Alexander Cosmetics*, 458 F.3d at 257; *S. Cross*
*Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d
Cir. 1999). Thus, on Defendants' motion to dismiss, this Court may consider the
complaint filed in *Del Gaizo v. Otellini, et al.*, Case No. 108cv116137 in the Superior
Court of Santa Clara County (the "Del Gaizo Action"). The Del Gaizo Complaint is
attached as Exhibit B to the King Decl.

second filing but rather as a continuation of the original federal court action. . . .
Accordingly, relation back principles apply because the SAC flows from a preserved and
timely original derivative complaint.").[26]

Nor is there likely to be any statute of limitations defense for any individuals
whom Intel later learns may be responsible for anticompetitive conduct, but who were not
named as defendants in the Complaints or in the Del Gaizo Action.  As the Audit
Committee communicated to counsel for Plaintiff Gilman, the Del Gaizo complaint
names "Doe" defendants.  Del Gaizo Compl., ¶ 32; King Decl., Ex. B.  Under section 474
of the California Code of Civil Procedure, which courts liberally construe (*see General
Motors Corp. v. Super. Ct. of Los Angeles County*, 48 Cal. App. 4th 580, 593 (Cal. App.
2. Dist. 1996)), a plaintiff may name fictitious defendants and then substitute the name of
the real defendant when that defendant becomes known.  Naming Doe defendants is
proper not only when the plaintiff is ignorant of the defendant's identity, but also where
the plaintiff "'lacks knowledge of that person's connection with the case or with his
injuries.'"  *McOwen v. Grossman*, 153 Cal. App. 4th 937, 942 (Cal. App. 2. Dist. 2007)
(quoting *General Motors*, 48 Cal. App. 4th at 593-94).  Any amendments to the
complaint to replace a Doe defendant with a real defendant will relate back to the date of
the original filing for statute of limitations purposes.  *See Woo v. Super. Ct. of San Diego
County*, 75 Cal. App. 4th 169, 176 (Cal. App. 4. Dist. 1999).

---

[26]  *See also Telxon Corp. v. Bogomolny,* 792 A.2d 964, 973 (Del. Ch. 2001)
(corporation's direct amended complaint related back to the original derivative
complaint, as corporation was the party in interest in the derivative complaint and
both complaints related to the same transaction).

Plaintiffs, therefore, cannot hide behind inapplicable statute of limitations arguments to evade their failure to comply with the strict demand requirement.

\* \* \* \* \*

For these reasons, Plaintiffs have failed to plead with the requisite specificity any facts that would allow this Court to find that the Board's decision to defer demand was not protected under the business judgment rule.  Plaintiffs thus lack standing to proceed with this action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety, without leave to amend.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: ___/s/ Stephen C. Norman_____

Jonathan C. Dickey
Marshall R. King
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000
jdickey@gibsondunn.com
mking@gibsondunn.com

Donald J. Wolfe, Jr. (#285)
Stephen C. Norman (#2686)
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
dwolfe@potteranderson.com
snorman@potteranderson.com

*Attorneys for Nominal Defendant Intel
Corporation and Defendants Otellini, Barrett,
Pottruck, Shaw, Yoffie, Barshefsky, Plummer,
Decker, Bartz, Donahoe and Yeary*

**CONNOLLY, BOVE, LODGE & HUTZ LLP**

OF COUNSEL:

By: ___/s/ Bradley R. Aronstam_____

Kim David Staskus
LAW OFFICES OF
KIM DAVID STASKUS, P.C.
1631 Willow Street Suite 100
San Jose, CA 95125
(408) 264-0155
kimstaskus@mgle-law.com

Collins J. Seitz, Jr. (#2237)
Bradley R. Aronstam (#5129)
1007 North Orange Street, 8th Floor
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
baronstam@cblh.com

*Attorneys for Defendant, D. James Guzy, Sr.*

Dated: March 12, 2010
956803

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I do hereby certify that, on March 12, 2010, the within document was filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following, and that the document is available for viewing and downloading from CM/ECF:

> Robert D. Goldberg, Esquire
> BIGGS & BATTAGLIA
> 921 North Orange Street
> Wilmington, Delaware  19801

/s/ Stephen C. Norman
Stephen C. Norman (#2686)
Potter Anderson & Corroon LLP
Hercules Plaza – 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, Delaware  19899
(302) 984-6000
snorman@potteranderson.com
