IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE INTEL CORP. DERIVATIVE LITIGATION | C.A. No. 1:09-cv-867-JJF |

# DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

**POTTER ANDERSON & CORROON LLP**
Donald J. Wolfe, Jr. (#285)
Stephen C. Norman (#2686)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
dwolfe@potteranderson.com
snorman@potteranderson.com

*Attorneys for Nominal Defendant Intel Corporation and Defendants Otellini, Barrett, Pottruck, Shaw, Yoffie, Barshefsky, Plummer, Decker, Bartz, Donahoe, and Yeary*

OF COUNSEL:

**GIBSON, DUNN & CRUTCHER LLP**
Jonathan C. Dickey (admitted *pro hac vice*)
Marshall R. King (admitted *pro hac vice*)
200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000
jdickey@gibsondunn.com
mking@gibsondunn.com

**CONNOLLY, BOVE, LODGE & HUTZ LLP**
Collins J. Seitz, Jr. (#2237)
Bradley R. Aronstam (#5129)
1007 North Orange Street, 8th Floor
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
baronstam@cblh.com

*Attorneys for Defendant D. James Guzy, Sr.*

OF COUNSEL:

Kim David Staskus
LAW OFFICES OF
KIM DAVID STASKUS, P.C.
1631 Willow Street, Suite 100
San Jose, CA 95125
(408) 264-0155
kimstaskus@mgle-law.com

May 10, 2010

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ...................................................................................................1

ARGUMENT ......................................................................................................5

I.    The Board's Decision To Defer Action On The Gilman Demand Is
Protected By The Business Judgment Rule, Which Cannot Be Overcome
By Conclusory Allegations That The Board Pre-Judged Plaintiffs'
Demands .............................................................................................................5

    A.    The Opposition Incorrectly Contends that Plaintiffs Need Not
Plead Facts With Particularity to Overcome the Presumption of the
Business Judgment Rule ...........................................................................5

    B.    This Case Is Indistinguishable From *Furman v. Walton* ...........................6

    C.    Plaintiffs' Attempt to Raise A Reasonable Doubt As To the
Board's Independence is Unavailing ........................................................8

    D.    The Board Has Not Failed to Respond to Plaintiffs' Demands...............14

II.    Plaintiffs Tacitly Concede That The *Del Gaizo* Action Tolls The Statute
Of Limitations On Intel's Potential Claims..........................................................16

III.    LMPERS Lacks Standing To Bring This Action For The Additional
Reason That It Did Not Hold Intel Shares At The Time Of The Directors'
Alleged Wrongdoing ...........................................................................................17

CONCLUSION .....................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Affiliated Computer Servs., Inc. S'holders Litig.,*
  2009 WL 296078 (Del. Ch.) ................................................................................16

*Allison v. General Motors Corp.,*
  604 F.Supp. 1106 (D. Del. 1985) .......................................................................5

*In re Bank of N.Y. Derivative Litig.,*
  2000 WL 1708173 (S.D.N.Y.) ...........................................................................13

*Biondi v. Scrushy,*
  820 A.2d 1148 (Del. Ch. 2003) ....................................................................12, 13

*In re Caremark Int'l Inc. Deriv. Litig.,*
  698 A.2d 959 (Del. Ch. 1996) ..........................................................................15

*In re E.F. Hutton Banking Practices Litig.,*
  634 F.Supp. 265 (S.D.N.Y. 1986) ......................................................................6

*Furman v. Walton,*
  2007 WL 1455904 (N.D. Cal.), *aff'd,* 320 F. App'x 638
  (9th Cir. 2009) ...................................................................................*passim*

*In re General Motors Class E Stock Buyout Sec. Litig.,*
  790 F.Supp. 77 (D. Del. 1992) ..........................................................................5

*Grafman v. Century Broad. Corp.,*
  743 F.Supp. 544 (N.D. Ill. 1990) .....................................................................16

*Grossman v. Johnson,*
  674 F.2d 115 (1st Cir. 1982) ...........................................................................16

*In re Intel Corp. Derivative Litig.,*
  621 F.Supp.2d 165 (D. Del. 2009) .............................................................3, 7, 11

*Kanter v. Barella,*
  489 F.3d 170 (3d Cir. 2007) ...........................................................................5, 6

*Kaplan v. Peat, Marwick, Mitchell & Co.,*
  540 A.2d 726 (Del. 1987) ................................................................................14

**Table of Authorities**
**(Continued)**

Page(s)

*Knopf v. Semel,*
    2010 WL 965308 (N.D. Cal.) ......................................................................8

*Levine v. Smith,*
    591 A.2d 194 (Del. 1991) ............................................................................8

*Lewis v. Sporck,*
    646 F.Supp. 574 (N.D. Cal. 1986) .............................................................16

*Mills v. Esmark, Inc.,*
    91 F.R.D. 70 (N.D. Ill. 1981) .....................................................................16

*Pfeiffer v. Toll,*
    989 A.2d 683 (Del. Ch. 2010) ...........................................................7, 8, 11

*Piven v. Ryan,*
    2006 WL 756043 (N.D. Ill.) ........................................................................6

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) ............................................................................8

*Scattered Corp. v. Chicago Stock Exchange, Inc.,*
    701 A.2d 70 (Del. 1997) ..............................................................................9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    130 S. Ct. 1431 (2010) .................................................................................6

Stepak v. Addison,
    20 F.3d 398 (11th Cir. 1994) ....................................................................5, 6

*In re Tower Air, Inc.,*
    416 F.3d 229 (3d Cir. 2005) ........................................................................6

*Unocal Corp. v. Mesa Petroleum Co.,*
    493 A.2d 946 (Del. 1985) .............................................................................4

*Wilson v. Tully,*
    676 N.Y.S.2d 531 (N.Y. App. Div. 1998) ..................................................6

**Table of Authorities**
**(Continued)**

Page(s)

**Rules**

Fed. R. Civ. P. 23.1............................................................................................1, 4, 5, 6, 9

Nominal Defendant Intel Corporation and Individual Defendants Paul S. Otellini, Craig R. Barrett, David S. Pottruck, Jane E. Shaw, David B. Yoffie, Charlene Barshefsky, James D. Plummer, Susan L. Decker, Carol Bartz, John J. Donahoe, Frank D. Yeary, and D. James Guzy, Sr. respectfully submit this reply memorandum of law in support of their motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 23.1 and Delaware law.[1]

## INTRODUCTION

In this derivative action, two Intel stockholders seek to usurp the Board's authority by initiating breach of fiduciary duty claims against directors and officers of the Company even as various underlying antitrust actions against the Company, upon which such breach of fiduciary duty claims are premised, are still pending. Plaintiff Gilman demanded in October 2009 that Intel's Board initiate such litigation but, after due consideration, the Board, upon the recommendation of its Audit Committee, decided to defer taking action. The Board reasoned that it was not in the best interest of the Company or its shareholders to do so at that time because, among other things, the issues raised in the demand were legally and factually intertwined with the existing litigation and regulatory actions involving Intel – meaning that any action by the Company would unnecessarily increase its exposure to liability.[2] Plaintiff LMPERS made a similar demand in November 2009, which Intel's Board will address at its regularly-scheduled meeting on May 18, 2010.

Plaintiffs' Opposition Brief never crystallizes the theory on which it urges this Court to overturn the Intel Board's decision to defer taking action on the Gilman demand, or to preempt

---

[1] This brief adopts the definitions used in Defendants' opening brief ("Def. Br."). References to Plaintiffs' opposition brief are denoted "Opp. at ___." All references to "King Decl." are to the Declaration of Marshall R. King accompanying Defendants' opening brief.

[2] *See* Compl. ¶ 125; King Decl., Exs. A & I.

1

the Board's yet-to-be-determined response to the LMPERS demand. In fact, there is no reason the Court should do so. Given the ongoing proceedings in the underlying antitrust actions, including fact discovery, the Board's actions to date are eminently reasonable, and protected against second-guessing by the business judgment rule. Indeed, as discussed in Defendants' opening brief, this case is on all fours with *Furman v. Walton*,[3] a case in which the District Court dismissed, and the Court of Appeals affirmed the dismissal of, a virtually identical shareholder derivative suit.

Plaintiffs' Opposition all but concedes that a board can reasonably defer initiation of litigation against its officers or directors in light of the pendency of substantially-related litigation – particularly where, as here, such litigation would likely prejudice the company's defenses in related litigation.[4]

But rather than simply conceding that litigation is premature, Plaintiffs grasp at straws, arguing that, although Plaintiffs opted to make demands on the Board, the Board in fact was not independent and disinterested, and that it "pre-judged" the Plaintiffs' demands. In support of this argument, Plaintiffs point to the fact that Intel denied liability in one or more of the underlying antitrust actions. This argument, however, is palpably flawed. As a general matter in a demand refused case, the making of a demand by a shareholder is a concession that a demand is required and that a majority of the corporation's directors are disinterested and independent with respect to the subject matter of the demand. While there is some authority for the proposition that a board that appears independent and disinterested at the time a demand is made may thereafter engage in conduct raising a reasonable doubt as to whether it is acting with independence and

---

[3]   2007 WL 1455904 (N.D. Cal.), *aff'd*, 320 F. App'x 638 (9th Cir. 2009).
[4]   Opp. at 27-28.

disinterestedness, that very rare factual circumstance is neither present nor pleaded here. Intel's denials of liability in the underlying antitrust matters occurred well before Plaintiffs made their demands on the Board. Plaintiffs nonetheless issued their demands, thereby conceding the Board's objectivity for this purpose. Moreover, the denials of liability on which Plaintiffs would rely related to the underlying antitrust litigation against Intel, and not to the breach of fiduciary duty claims Plaintiffs now wish to assert against Intel's directors and officers.[5] In fact, the Board's decision to await the outcome of the underlying antitrust cases before determining whether to bring any breach of fiduciary duty claims shows that, despite the Company's position that it has valid defenses in the antitrust litigation, the Board has exercised independent business judgment to allow development of the record in the underlying cases before deciding whether to pursue breach of fiduciary duty claims. Finally, Plaintiffs entirely ignore the record before this Court, which demonstrates that the Board's decision to defer initiation of any litigation was the product of good process and independent business judgment:

- the Intel Board authorized its Audit Committee to conduct a review of the situation and evaluate the Gilman demand;

- the Audit Committee retained counsel to assist with its review of the demand;

- counsel for the Audit Committee sought and ultimately received input, materials and analysis from Gilman's counsel, which the Audit Committee reviewed and considered; and

- on the Audit Committee's recommendation, the Board considered various factors in making a determination on the demand, including that the issues

---

[5] Insofar as Plaintiffs also complain about the Board's defense of the demand futility derivative action that was previously before this Court, this Court in fact held that the Board members were independent as they did not face any substantial likelihood of personal liability based on the allegations in that case. *See In re Intel Corp. Derivative Litig.*, 621 F.Supp.2d 165, 176 (D. Del. 2009).

in the demand were legally and factually intertwined with issues in the pending antitrust litigation against Intel, and that taking action on the demand might expose Intel to liability in that litigation.

In sum, despite Plaintiffs' attempts to obfuscate the issues, the sole and dispositive question on this motion remains whether Plaintiffs have satisfied the requirement under Rule 23.1 that they plead *particularized facts* raising a reasonable doubt that the strong protection afforded to business decisions of boards of directors under Delaware law should apply in this case. As the Delaware courts have made clear, "a court will not substitute its judgment for that of the board if the latter's decision can be attributed to any rational business purpose."[6]

Here, the Board concluded that it was not in Intel's interest to make a final determination regarding the demanded claims, but that when the circumstances changed and, among other things, Intel was no longer exposed to adverse repercussions in the underlying antitrust matters, the Board would revisit the issue with the benefit of the results of those matters. Were the Court to accept Plaintiffs' strained arguments, it would follow that every corporation that is defending itself in litigation will be exposed as a matter of law to parallel shareholder derivative litigation if it refuses simultaneously to sue its own directors and officers. Nothing under Delaware law supports this construction of the business judgment rule and, accordingly, the Complaint should be dismissed.

---

[6] *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985) (internal quotations and citation omitted).

## ARGUMENT

I.   **The Board's Decision To Defer Action On The Gilman Demand Is Protected By The Business Judgment Rule, Which Cannot Be Overcome By Conclusory Allegations That The Board Pre-Judged Plaintiffs' Demands**

    A.   **The Opposition Incorrectly Contends that Plaintiffs Need Not Plead Facts With Particularity to Overcome the Presumption of the Business Judgment Rule**

Plaintiffs concede, as they must, that Rule 23.1 requires that derivative plaintiffs plead *with particularity* both their efforts to obtain the desired action from the corporation's board and the reasons for not obtaining the action.[7] But Plaintiffs argue nonetheless that they are not required to plead a wrongful refusal of their demands with the same particularity.[8] This argument turns the plain language of Rule 23.1 and the case law interpreting it on its head, and should be rejected by the Court.[9] Indeed, one of the cases on which Plaintiffs rely with respect to the applicable Rule 23.1 pleading standard, *Stepak v. Addison*, makes clear that a "demand refused" derivative complaint can withstand a motion to dismiss only if it alleges "*with particularity* facts that create a reasonable doubt that the board's refusal was in fact made on an

---

[7]   *See* Opp. at 12.

[8]   *See* Opp. at 12 n.10.

[9]   *See Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007) (plaintiffs must plead particularized facts showing "why the[] efforts were unsuccessful"); *see also In re General Motors Class E Stock Buyout Sec. Litig.*, 790 F Supp. 77, 80 n.4 (D. Del. 1992) ("[Rule] 23.1 requires, in a derivative action brought by a shareholder claiming that corporate directors wrongfully refused the shareholder's demand to sue wrongdoing insiders on behalf of the corporation, that 'the complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action . . . .'"); *Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1121-22 (D. Del. 1985).

informed basis, in good faith, and with the corporation's best interests in mind."[10]  Plaintiffs'

half-hearted effort to write the particularity requirement out of Rule 23.1 is simply contrary to

established law and common sense.

**B.    This Case Is Indistinguishable From *Furman v. Walton***

In *Furman v. Walton*, and numerous other cases, the courts have held that a board's

decision not to pursue certain litigation because of its potential negative effect on the company's

position in separate litigation is entirely proper, and a board's decision to defer determination on

a demand to initiate such litigation on that basis is protected by the business judgment rule.[11]

Plaintiffs attempt to distinguish *Furman* (but none of the other cases cited by Defendants) by

arguing that, in that case, the District Court's decision distilled the complaint down to three

paragraphs, whereas the Complaint in this case supposedly contains more specific allegations to

---

[10]  20 F.3d 398, 403 (11th Cir. 1994) (citing *Levine v. Smith*, 591 A.2d 194, 211 (Del. 1991)) (internal quotations omitted; emphasis added)).  Neither *In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005), nor *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), on which Plaintiffs also rely, suggests that a lower standard applies for pleading wrongful refusal.  Neither case addresses the pleading requirement in the demand context. Instead, those cases discuss when to apply federal or state pleading requirements, an issue that is not in dispute here.  *See Kanter*, 489 F.3d at 176 ("[F]ederal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate" that demand is excused or was wrongly refused).  Here, all parties agree that federal pleading standards apply – and federal law plainly requires Plaintiffs to plead particularized facts showing that the Board's refusal was made in bad faith or without due care.

[11]  *See Furman*, 2007 WL 1455904, at *5; *see also Piven v. Ryan*, 2006 WL 756043, at *4 (N.D. Ill.) (applying Delaware law); *Wilson v. Tully*, 676 N.Y.S.2d 531, 537 (N.Y. App. Div. 1998) (applying Delaware law); *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 269-70 (S.D.N.Y. 1986) (applying Delaware law).

overcome the business judgment rule.[12]  But Plaintiffs' effort to distinguish *Furman* based on the supposed heft of the allegations in this Complaint as compared to those in *Furman* is unavailing.  As in *Furman*, Plaintiffs here complain of no conduct after demand was made on the Board, other than the Board's deferral of the demand.  Indeed, while Plaintiffs make the conclusory allegation that the Board pre-judged Gilman's demand, no *facts* are pled in support of that allegation.  This case is thus on all fours with *Furman*, and the Complaint should be dismissed in this case as it was in *Furman*.

Plaintiffs' Opposition places great weight on *Pfeiffer v. Toll*[13] in an effort to avoid the reach of *Furman*, but *Pfeiffer* is readily distinguishable inasmuch as it does not even address so-called wrongful rejection, and even supports Defendants' position.  In *Pfeiffer*, the Delaware Chancery Court recognized that pursuing derivative claims may have an adverse effect on the defense of separate litigation, but concluded that the board in that case lacked the requisite independence to consider plaintiff's demand because the board members were themselves defendants in the related litigation and the court in the related litigation had concluded, in denying a motion to dismiss, that the same conduct alleged in the shareholder derivative case raised a "powerful and cogent inference of *scienter*" by the board members.[14]  In this case, unlike *Pfeiffer*, the board members are not defendants in the underlying litigation and, as this Court concluded in the *Intel* derivative matter, do not face any substantial likelihood of liability for any of the conduct alleged in the underlying actions.[15]  Moreover, as previously noted,

---

[12]  Opp. at 27-28.
[13]  989 A.2d 683 (Del. Ch. 2010).
[14]  *Id.* at 690.
[15]  *Intel*, 621 F Supp.2d at 176.

Plaintiffs here have conceded the objectivity of the Board to pass upon the demands, and thus have rendered irrelevant the very finding deemed dispositive in *Pfeiffer* on the issue of futility.

In sum, Plaintiffs here cannot avoid the well-established principle that a board's election to defer final decision on a demand to initiate litigation, in light of, among other things, pending litigation raising similar issues as the demand, falls well within the protection of the business judgment rule.

### C.     Plaintiffs' Attempt to Raise A Reasonable Doubt As To the Board's Independence is Unavailing

Under Delaware law, a shareholder who makes a demand on a board of directors to initiate litigation on the corporation's behalf concedes as a matter of law that a majority of the corporation's directors are capable of an independent and disinterested review at the time of the demand.[16] Thus, when Gilman and LMPERS made their demands on the Intel Board, they waived any argument that, as of that time, the Board was incapable of objectively reviewing their demands. Indeed, Plaintiffs' own words underscore this conclusion: At the outset of their Opposition, Plaintiffs admit that Intel's Board *"appeared independent at the time Plaintiffs made their demands."*[17]

---

[16] *See Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) (a derivative plaintiff making a demand "tacitly concedes the independence of a majority of the board to respond") (internal quotations omitted), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253-54 & n.13 (Del. 2000); *Rales v. Blasband*, 634 A.2d 927, 935 n.12 (Del. 1993) ("Where a demand has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond"); *Knopf v. Semel*, 2010 WL 965308, at *7 (N.D. Cal.) ("[U]nder Delaware law, a shareholder who makes a formal demand concedes that a majority of the board is sufficiently disinterested and independent . . . .").

[17] Opp. at 2 (emphasis added).

Plaintiffs now seek to avoid the effect of their pre-suit demands by arguing that the Board in fact lacked independence because Intel had previously denied liability in one or more of the underlying antitrust actions, and because it opposed the "demand futility" arguments made by the plaintiff in the previous *Intel* derivative action.  But that argument fails for several reasons. *First,* the conduct that supposedly demonstrates the Board's lack of independence – *i.e.,* Intel's denials of liability and the Board's opposition in the earlier derivative action – occurred *before* Gilman and LMPERS made their October and November 2009 demands on Intel's Board. Plaintiffs themselves make this point: "[I]t is clear that Defendants' position in antitrust litigation concerning the same underlying facts *and a fortiori in the prior shareholder's derivative suit* – that those allegations have absolutely no merit – *had been staked out long before demand was made here,* and then reiterated afterwards."[18]  In *Scattered Corp. v. Chicago Stock Exchange, Inc.,* the Delaware Supreme Court made clear that by making demands on a board despite the existence of allegedly disabling facts, plaintiffs "waived any claim they might otherwise have had that the board cannot independently act on the demand."[19]  Here, as in *Scattered,* Plaintiffs simply have no basis to claim that the Board failed to act independently when the supposedly disqualifying conduct occurred well before the demands in question were even presented to the Board.

*Second,* even if pre-demand conduct were an appropriate consideration in evaluating the Board's independence, Plaintiffs' argument that the Board pre-judged their demands is not based on any particularized facts, as required under Rule 23.1.  To begin with, the syllogism underlying Plaintiffs' theory that the Board pre-judged the merits of their claims does not withstand

---

[18]  Opp. at 14 (second emphasis added).
[19]  701 A.2d 70, 74 (Del. 1997).

9

scrutiny. Their argument goes as follows:  1) Intel has denied liability in one or more pending

antitrust cases; 2) the Board has elected to defer its decision as to whether to pursue the claims

urged in Plaintiffs' demands against directors and officers based on the merits of the as-yet-

unresolved antitrust cases; and therefore, 3) the Board will never decide to pursue those claims.

Plaintiffs ask the Court to assume that the mere act of Intel defending itself in the pending

antitrust proceedings necessarily means that there is no circumstance under which the

concededly independent and disinterested Board would ever opt to pursue claims for breach of

fiduciary duty.  That argument is both illogical and inconsistent with the line of cases explicitly

holding that a board's decision to decline to act on a demand in light of pending and related

litigation against the company is protected by the business judgment rule.[20]

Moreover, Plaintiffs' argument improperly confuses and conflates the antitrust litigation

against Intel and the breach of fiduciary duty claims against Intel directors and officers that

Plaintiffs have demanded Intel pursue.  Plaintiffs argue that the antitrust litigation and regulatory

proceedings against Intel raise the "same underlying facts" and contain "the same core

allegations as Plaintiffs' demands," and that by electing not to pursue the demands, Defendants

were in "keeping with the Board's position in every similar litigation."[21]  But these assertions

are simply not true.  In the various antitrust suits mentioned in the Complaint, Intel itself is

alleged to have engaged in anticompetitive conduct.[22]  This derivative litigation, in contrast,

alleges that Intel's directors breached fiduciary duties by failing to negotiate favorable

settlements, failing to rein in misconduct, and failing to comply with demands to institute

---

[20] *See, e.g., Furman*, 2007 WL 1455904.

[21] Opp. at 14, 15, 17.

[22] *See, e.g.,* Compl. ¶¶ 93-106.

remedial measures.[23]  Those are two entirely different sets of claims, as evidenced by the fact

that the demands in this case did not ask the Board to investigate whether *Intel* had engaged in

anticompetitive conduct, but, rather, asked the Board to investigate, *on Intel's behalf,* whether

Intel officers and directors breached their fiduciary duties to Intel in failing to prevent or limit

such conduct.  Once again, if Intel should ultimately prove to be wrong in the underlying

litigation, nothing in its defense of those antitrust claims casts any doubt on the ability of the

Board to independently and disinterestedly consider bringing the fiduciary duty claims at issue

here.

 Furthermore, Plaintiffs' repeated insistence that *Defendants themselves* took positions in

the various antitrust actions is not accurate.[24]  While it is true that *Intel* has asserted in litigation

filings and public statements that the Company did not violate any antitrust laws, the Board

members who are Defendants here have taken no position in those actions, since the Board

members are not parties to the separate litigation against Intel.  In that regard, this case is in

marked contrast to *Pfeiffer v. Toll,* where the court concluded that demand was excused when the

director defendants who would evaluate the demand were *themselves* defendants in a companion

securities fraud action that had survived a motion to dismiss.[25]  Here, since none of the

---

23 *See* Compl. ¶¶ 36(a)-(d).  Plaintiffs do not contest in their Opposition Brief that their claim
for failure to accede to a demand cannot give rise to a derivative claim.  *See* Def. Br. at 17
n.13; King Decl., Exs. C & J.  On this basis alone, Count IV fails.  In addition, while Count
IV also asserts a breach of fiduciary duty claim against the Individual Defendants for failure
to institute remedial measures (Opp. at 33), this aspect of the claim merely duplicates
Count I.

24 *See* Opp. at 14 (discussing "Defendants' position in antitrust litigation" against Intel); *id.* at
17 (describing the "Board's position in every similar litigation" against Intel); *id.* at 24
(discussing "Defendants' position" in litigation against Intel); *id.* at 26 (describing
"Defendants' . . . argument" in the FTC Action against Intel).

25 *Pfeiffer,* 989 A.2d at 690.

11

Individual Defendants are parties to the separate antitrust litigation against Intel, Plaintiffs'

argument that the Board suffers from "the exact impediment that disabled the Board in [*Pfeiffer

v.*] *Toll*"[26] is grossly inaccurate.

Plaintiffs' assertion that the Court must assume that the Board pre-judged their demands

since it opposed the demand futility claims advanced in the earlier *Intel* derivative litigation[27] is

equally unpersuasive. The Board's defense of its general authority and independence to act in

that case is a wholly different issue from the question of whether and when to initiate litigation in

the exercise of that authority. Indeed, in choosing to make their demands, Plaintiffs effectively

endorsed the very position that the Board put forward in *Intel* and which they now attack:

namely, that the question whether and when to pursue litigation is one properly vested with the

independent and disinterested Board. If Plaintiffs' new-found view were adopted, this Court

would create a circular problem for corporate boards everywhere: whenever a company

challenges "demand futility" allegations in a shareholder derivative lawsuit – in this case,

*successfully* – it potentially exposes itself to the charge that its board cannot act independently if

demand is then actually made. Such a result defies logic and finds no support in the law.

Finally, *Biondi v. Scrushy*,[28] on which Plaintiffs rely in their challenge to the Board's

independence, is easily distinguishable from the facts of this case. In that case, the Delaware

Chancery Court found that "[t]he case presents an odd confluence of unusual and highly

troubling facts."[29] While noting that a stay normally would be appropriate to give a Special

Litigation Committee ("SLC") a reasonable amount of time carry out its function, the court

---

[26]  Opp. at 6.
[27]  *See* Opp. at 25-26.
[28]  820 A.2d 1148 (Del. Ch. 2003).
[29]  *Id.* at 1165.

refused to grant the stay because it was clear that the recommendation of the SLC could never be accepted by the court because of the overwhelming evidence of the SLC's lack of independence.[30]  Most significantly, even before the SLC had investigated the former CEO's conduct, the SLC's chairman publicly announced that a prior inquiry had "vindicated" the former CEO.[31]  This, coupled with conflicts of interest on the SLC, the company's law firm distancing itself from an opinion that had exonerated the former CEO, and the resignation of a member of the SLC who also had stated that the former CEO did nothing wrong, led the court to conclude that the SLC could not render an impartial recommendation.[32]  Here, Plaintiffs have not alleged any facts raising a reasonable doubt as to the Board's independence, much less anything close to the egregious facts at issue in *Biondi*.  Moreover, any judicial evaluation of an SLC determination, a process that arises only where there is an *interested* majority of directors, places the burden of proof upon the SLC to establish not only its independence but the validity of its process and the reasonableness of its recommendation.  Here, as noted above, the presumption in the context of a wrongful refusal action is that the board is both independent and entitled to the protection of the business judgment rule in rejecting or deferring decision on a shareholder's demand, a conclusion that the shareholder himself endorses in making the demand itself.

For all these reasons, Plaintiffs' argument that the Board had an improper predilection against their demands is baseless, and Plaintiffs have not met their burden to overcome the protection of the business judgment rule.

---

[30]  *Id.* at 1150, 1165-66.

[31]  *Id.* at 1166.

[32]  *Id.* at 1165-66.  *Biondi* also arose in the demand futility context – where the independence of a board or SLC is a relevant and critical inquiry – rather than the demand refused context, where independence is conceded.  *In re Bank of N.Y. Derivative Litig.*, 2000 WL 1708173 (S.D.N.Y.), arose in the same context.

**D.    The Board Has Not Failed to Respond to Plaintiffs' Demands**

Plaintiffs argue that the Board is "undoubtedly taking an excessive time to reply to Plaintiffs' repeated demands," and thus, should be deemed to have constructively refused the demands.[33] But there has been no rejection. Rather, as to the Gilman demand, the Board concluded that it was not in the best interests of Intel to take final action on the demanded claims at that time, but that it instead would preserve its ability to further investigate and monitor ongoing proceedings and, if appropriate, bring claims if the facts that emerge in the underlying antitrust litigation indicate that doing so is in the best interests of Intel.[34]  And the Board will respond to LMPERS's demand following its May 18, 2010 meeting.[35]

---

[33] Opp. at 14. It is undisputed, however, that the total time between Gilman's demand and the Board's response was a mere six weeks, far less than the time taken by the board in *Furman*. Plaintiffs suggest that they should be allowed to proceed with this action under *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726 (Del. 1987), where the court permitted a derivative lawsuit against the corporation's auditors to go forward where the board "fail[ed] to object to a suit brought on its behalf," which, the court concluded, "must be viewed as an approval for the shareholders' capacity to sue derivatively." *Id.* at 731. *Kaplan* is easily distinguishable from the facts of this case.  In *Kaplan*, the board took a neutral position with respect to the demand.  Here, unlike *Kaplan*, there is no question that the Board has not remained neutral, but has taken the position that it does *not* approve of Plaintiffs' proceeding with this suit at this time.

[34] *See* King Decl., Ex. A. It is true that, in *Furman*, 2007 WL 1455904, at *2 n.1, the Court opted to treat the board's decision to defer action on a demand in light of pending litigation as a rejection for purposes of its analysis. Even if the Court were to engage in the same analysis here, as explained above, the Board's decision still falls well within the protection of the business judgment rule and, as the *Furman* decision confirms, such rejection was not *wrongful.*

[35] Plaintiffs' argument that the Board "brushed off MPERS' demand" is particularly disingenuous. Opp. at 16. LMPERS's demand letter requested a response from the Board within 60 days (King Decl., Ex. J), but LMPERS then filed suit only 40 days later – before the Board could even consider the demand.  In any event, following an evaluation and recommendation of the LMPERS demand by the newly-formed Compliance Committee of the Intel Board, the full Board is scheduled to act upon the LMPERS demand at the upcoming Intel Board meeting, on May 18, 2010.

Nor are Plaintiffs correct in contending that the Board has refused to investigate the issues raised in the demands or to institute remedial measures.[36] Indeed, Plaintiffs contend that Defendants have enough information about Plaintiffs' demands to make an informed decision,[37] and the Board's response to Mr. Gilman's demand explained, among other things, that the Board would "continue to monitor the underlying antitrust matters" and would "benefit from a more fully developed factual record" in those proceedings.[38] The Board thereby evinced its intent to await the development of further facts relevant to the possible claims that Intel might investigate. Similarly, nothing in the Complaint suggests – and certainly no particularized facts are alleged – that the Board is utterly forsaking its duty to "attempt to assure a reasonable information and reporting system exists."[39] On the contrary, Plaintiffs concede that the Board obtained information from Intel's internal reporting system,[40] thus contradicting the suggestion that Intel lacked a reasonable information and reporting system. Although Plaintiffs contend that Intel must "enhance" and "strengthen" its compliance system,[41] such allegations hardly demonstrate that there has been a "sustained or systematic failure of the board to exercise oversight."[42]

---

[36] *See* Opp. at 6, 33.

[37] Opp. at 14; *see also id.* at 15 ("there can be no doubt that Defendants here were well informed regarding the underlying facts supporting Plaintiffs' demands").

[38] King Decl., Ex. I. By way of example, on December 16, 2009 – after the Board responded to the Gilman demand, the Federal Trade Commission instituted an administrative proceeding against Intel alleging anticompetitive conduct that had not been alleged in any of the previous antitrust proceedings. The Compliance Committee is evaluating those new allegations and will take them into account in making its recommendation to the Board regarding the LMPERS demand.

[39] *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).

[40] Opp. at 15.

[41] Compl. ¶ 165.

[42] *Caremark*, 698 A.2d at 971.

None of the case law on which Plaintiffs rely suggests that a board's deferring a final determination on a demand pending developments in related litigation constitutes an unreasonable delay.[43]   Such a decision is by its very nature neither an abandonment of board discretion nor a determination that the demand is without merit.[44]

## II.   Plaintiffs Tacitly Concede That The *Del Gaizo* Action Tolls The Statute Of Limitations On Intel's Potential Claims

Plaintiffs do not contest that the *Del Gaizo* derivative action pending in California state court tolls the statute of limitations on Intel's potential claims.  Rather, Plaintiffs' assert that it is "highly speculative" that the *Del Gaizo* action will continue because Defendants might move to

---

[43]   The issue of whether a board unreasonably delayed responding to a demand did not even arise in *Grossman v. Johnson*, 674 F.2d 115, 122 (1st Cir. 1982).  In *Mills v. Esmark, Inc.*, 91 F.R.D. 70, 73 (N.D. Ill. 1981), the court dismissed a derivative complaint when the plaintiff – as here – failed to provide the board sufficient time to review a demand.  The court in *In re Affiliated Computer Servs., Inc. S'holders Litig.*, 2009 WL 296078, at *10 n.43 (Del. Ch.), noted that if, as plaintiff asserted, the board would have ignored the demand had one been made, the plaintiff would have had a claim for wrongful refusal, but since plaintiff made no demand and failed to adequately allege that that the board lacked independence or disinterestedness, the suit was dismissed.  In *Grafman v. Century Broad. Corp.*, 743 F.Supp. 544 (N.D. Ill. 1990), moreover, the defendants moved for a stay on the ground that a special litigation committee had been appointed, but had not made a recommendation with respect to the derivative litigation.  Because the parties had not addressed the work of the special litigation committee in their briefing, the court postponed a decision on defendants' motion for a stay.  *Id.* at 548.

[44]   Plaintiffs' reliance on *Lewis v. Sporck*, 646 F.Supp. 574, 578 (N.D. Cal. 1986), a 20-plus-year-old case from the Northern District of California in which demand was deemed "constructively denied" when the board failed to respond to a demand for 3½ years, is misplaced.  It is undisputed that the Intel Board did timely respond, so there can be no constructive denial.  Moreover, to the extent that *Lewis* suggests that a board cannot defer decision where, as here, an underlying legal proceeding has been brought, it clearly is no longer good law in light of *Furman v. Walton*, 230 F. App'x 638, where the Ninth Circuit concluded that the Wal-Mart board had a "compelling business purpose" to defer a decision on a shareholder demand when compliance with the demand "might have constituted a harmful admission in litigation pending against Wal-Mart."  *Id.* at 639-40.

dismiss that action in light of this Court's dismissal of the previous demand futility action.[45] Significantly, Defendants have *not* moved to dismiss the *Del Gaizo* action, but rather have stipulated that the action be stayed – thereby preserving claims that may be asserted by the Company if additional facts, as developed in the ongoing antitrust litigation, suggest that bringing such claims is in the best interest of Intel.  If anything, this demonstrates that Defendants are proceeding in good faith.  Again, Plaintiffs cannot overcome the protections of the business judgment rule based on the speculative and unsubstantiated concern that Defendants *might* reverse course and move to dismiss the *Del Gaizo* complaint on the heels of a dismissal of this action.

III.  **LMPERS Lacks Standing To Bring This Action For The Additional Reason That It Did Not Hold Intel Shares At The Time Of The Directors' Alleged Wrongdoing**

Plaintiffs concede in their Opposition that a derivative plaintiff lacks standing to bring claims against a corporation's directors if the shareholder did not hold the shares at the time of the directors' alleged wrongdoing.[46]  Although Plaintiffs argue that all of the alleged misconduct by the Board occurred in 2005 or after, when LMPERS held Intel shares,[47] this simply ignores the allegations of their own Complaint, which describes the so-called "active misconduct" claim as follows:

> These claims are brought against those persons who were officers and/or directors during the period in which it has been alleged that Intel's executives engaged in

---

[45]  *See* Opp. at 32-33.  Plaintiffs continue to trumpet that Defendants raised a statute of limitations defense in the *Intel* action (*see* Opp. at 31), but omit to mention that the period of alleged misconduct in the earlier *Intel* case commenced *14 years* before the alleged misconduct in this action.  *See* Def. Br. at 25 n.22.

[46]  Opp. at 36-37.

[47]  Opp. at 37-38.

active violations of the European, Japanese, South Korean and United States antitrust laws, and the Board of Directors who failed in bad faith to rein in, ameliorate or countermand such misconduct, or to ensure cooperation with regulatory authorities. *Such claims, which pertain to the period 2001 through the present,* are brought against defendants Otellini, Barrett, Guzy, Pottruck, Shaw, Yoffie, Barshefsky, Plummer, and Decker.[48]

Plaintiffs thus are forced to resort to mischaracterizing their own claim in an attempt to preserve LMPERS' standing.[49] That effort must fail. Because LMPERS did not own shares between 2001 and 2004, when the directors are alleged to have engaged in misconduct, it lacks standing to bring this derivative suit.

---

[48] Compl. ¶ 36(a) (emphasis added).
[49] Opp. at 36, paragraph (a).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' opening papers,

Defendants respectfully request that this Court dismiss the Complaint in its entirety, without

leave to amend.

**POTTER ANDERSON & CORROON LLP**

By:_____ /s/ Stephen C. Norman_____
    Donald J. Wolfe, Jr. (#285)
    Stephen C. Norman (#2686)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, Delaware  19899-0951
    (302) 984-6000
    dwolfe@potteranderson.com
    snorman@potteranderson.com

**OF COUNSEL:**

Jonathan C. Dickey (admitted *pro hac vice*)
Marshall R. King (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue, 47th Floor
New York, New York  10166
(212) 351-4000
jdickey@gibsondunn.com
mking@gibsondunn.com

*Attorneys for Nominal Defendant Intel*
*Corporation and Defendants Otellini,*
*Barrett, Pottruck, Shaw, Yoffie, Barshefsky,*
*Plummer, Decker, Bartz, Donahoe, and*
*Yeary*

**CONNOLLY, BOVE, LODGE & HUTZ LLP**

**OF COUNSEL:**

By:_____ /s/ Collins J. Seitz, Jr._____

Kim David Staskus
**LAW OFFICES OF**
**KIM DAVID STASKUS, P.C.**
1631 Willow Street, Suite 100
San Jose, CA 95125
(408) 264-0155
kimstaskus@mgle-law.com

Collins J. Seitz, Jr. (#2237)
Bradley R. Aronstam (#5129)
1007 North Orange Street, 8th Floor
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
baronstam@cblh.com

May 10, 2010
965506

*Attorneys for Defendant D. James Guzy, Sr.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I do hereby certify that, on May 10, 2010, the within document was filed with the

Clerk of Court using CM/ECF which will send notification of such filing to the

following, and that the document is available for viewing and downloading from

CM/ECF:

      Robert D. Goldberg, Esquire
      BIGGS & BATTAGLIA
      921 North Orange Street
      Wilmington, Delaware  19801

                              /s/ Stephen C. Norman
                              Stephen C. Norman (#2686)
                              Potter Anderson & Corroon LLP
                              Hercules Plaza – 6th Floor
                              1313 North Market Street
                              P. O. Box 951
                              Wilmington, Delaware  19899
                              (302) 984-6000
                              snorman@potteranderson.com