IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE INTEL CORP. DERIVATIVE LITIGATION | : : : : : : : |

C.A. No. 1:09-cv-867-JJF

## STIPULATION OF SETTLEMENT

The parties to the consolidated shareholder derivative litigation currently pending in the United States District Court for the District of Delaware (the "Court"), captioned *In re Intel Corp. Derivative Litigation*, C.A. No. 1:09-cv-867-JJF (the "Delaware Action"), by and through their attorneys, have entered into the following Stipulation of Settlement ("Settlement"), subject to the approval of the Court:

## RECITALS

WHEREAS:

A.        On June 12, 2008, Annette Villari, a stockholder of Intel Corporation ("Intel" or the "Company"), acting through her counsel, sent a letter to Intel's Board of Directors (the "Board") demanding that the Board investigate alleged anticompetitive business practices that are or were the subject of various proceedings, initiate appropriate legal action against any Intel Board members or employees responsible for such alleged practices, and take necessary and appropriate remedial measures to ensure that Intel is protected from further harm (the "Villari Demand");

B.        On January 29, 2009, counsel for the Board sent a letter to Ms. Villari's counsel advising that the Board had deliberated and, for reasons set forth in the letter,

concluded that it currently was in the best interest of Intel to defer taking action on the Villari Demand;

C.      On June 8, 2009, counsel for Ms. Villari renewed the Villari Demand, and set forth certain additional facts related thereto;

D.      On August 27, 2009, counsel for Ms. Villari met with counsel for the Board to discuss additional matters relating to the Villari Demand;

E.      On October 14, 2009, counsel for Ms. Villari informed Intel's Board that Charles A. Gilman, another Intel stockholder, was joining the Villari Demand (the "Gilman Demand");

F.      On November 12, 2009, the Louisiana Municipal Police Employees' Retirement System ("MPERS"), an Intel stockholder, acting through its counsel, sent a letter to Intel's Board demanding that the Board investigate alleged anticompetitive business practices that are or were the subject of various proceedings, initiate appropriate legal action against any Intel Board members or employees responsible for such alleged practices, and take necessary and appropriate remedial measures to ensure that Intel is protected from further harm (the "MPERS Demand");

G.      On November 13, 2009, Mr. Gilman commenced a shareholder derivative action in this Court (the "Gilman Action") on behalf of Intel against defendants Craig R. Barrett, Carol Bartz, Charlene Barshefsky, Susan L. Decker, John J. Donahoe, D. James Guzy, Sr., Paul S. Otellini, David S. Pottruck, James D. Plummer, Jane E. Shaw, David B. Yoffie, and Frank D. Yeary (collectively, the "Individual Defendants") and nominal defendant Intel (together with the Individual Defendants, the "Defendants");

2

H.      On November 30, 2009, counsel for the Board sent a letter to counsel for Ms. Villari and Mr. Gilman advising him that the Board had deliberated and, for reasons set forth in the letter, concluded that it currently was in the best interest of Intel to defer taking action on the renewed Villari Demand and the Gilman Demand;

I.      On December 23, 2009, MPERS commenced a shareholder derivative action in this Court on behalf of Intel against the Individual Defendants and nominal defendant Intel (the "MPERS Action");

J.      On January 15, 2010, this Court entered an order consolidating the Gilman Action and the MPERS Action into the Delaware Action, appointing Mr. Gilman and MPERS as lead plaintiffs (the "Delaware Plaintiffs"), and appointing Paskowitz & Associates and Berman DeValerio to be Co-Lead Counsel (together "Delaware Plaintiffs' Counsel");

K.      On February 12, 2010, the Delaware Plaintiffs filed a Shareholders' Demand-Made Consolidated Derivative Complaint (the "Delaware Complaint"), alleging, *inter alia*, that Intel has, for a number of years, engaged in conduct which violates U.S. and foreign competition laws, resulting in civil suits and regulatory investigations and proceedings against Intel (together the "Antitrust Proceedings") including, without limitation:

(1)      A suit commenced by Advanced Micro Devices, Inc. and AMD International Sales & Services, Ltd. in the United States District Court for the District of Delaware, entitled *Advanced Micro Devices, Inc. v. Intel Corp.*, Civil Action No. 05-441 (JJF) (the "AMD Action");

(2)     A series of putative class action suits brought under state competition laws, consolidated in the United States District Court for the District of Delaware under the caption *In re Intel Corporation Microprocessor Antitrust Litigation*, MDL No. 05-1717 (JJF);

(3)     A proceeding by the Japan Fair Trade Commission against Intel Kabushiki Kaisha, Intel's Japanese subsidiary, which resulted in a consent decree ordering Intel Kabushiki Kaisha to cease and desist certain actions;

(4)     An investigation and proceeding brought by the European Commission, in which the European Commission issued a decision and imposed a fine against Intel in May 2009;

(5)     A proceeding brought by the Korea Fair Trade Commission, in which the Korea Fair Trade Commission entered a ruling against Intel in June 2008;

(6)     An action commenced by the New York Attorney General in the United States District Court for the District of Delaware, entitled *State of New York v. Intel Corp.*, Civil Action No. 09-827 (JJF); and

(7)     An administrative proceeding commenced by the U.S. Federal Trade Commission against Intel on or about December 16, 2009, Docket No. 9341;

L.     The Delaware Complaint incorporates the allegations made in certain of the Antitrust Proceedings, and further asserts that Intel's alleged anticompetitive conduct has resulted in damage to Intel, and that the Individual Defendants breached their fiduciary duties to Intel by failing to, among other things, rein in, ameliorate, or

4

countermand such conduct, and failing to institute certain remedial measures.   The Delaware Complaint seeks recovery for and on behalf of Intel of the damages it allegedly suffered as a result of the alleged breaches of fiduciary duty by the Individual Defendants;

M.      Intel and certain of its current or former officers, directors, and employees are parties to other litigation relating to, arising out of, or making allegations similar to, the allegations contained in the Delaware Complaint, including the following (the "Related Actions"):

(1)      A shareholder derivative suit pending in the Superior Court of the State of California, Santa Clara County, entitled *Paris v. Otellini, et al.,* Case No. 110CV166850 (the "Paris Action"); and

(2)      An action pursuant to Delaware General Corporation Law § 220 pending in the Court of Chancery for the State of Delaware, entitled *Rosenfeld Family Foundation, et ano. v. Intel Corporation*, Civil Action No. 5070-VCS. The Rosenfeld Family Foundation action was filed following the dismissal by this Court of a demand futility shareholder derivative suit, entitled *In re Intel Corp. Derivative Litigation*, Civ. A. No. 08-93-JJF (D. Del.).   The two actions are collectively referred to herein as the "Rosenfeld Action";

N.      Counsel for the Defendants and Delaware Plaintiffs' Counsel have engaged in extensive negotiations concerning a possible settlement of the Delaware Action.   In connection therewith, Delaware Plaintiffs' Counsel have conducted a thorough investigation of the claims and allegations asserted in the Delaware Action, including: (i) review of publicly-available documents concerning Intel and the Antitrust

5

Proceedings, (ii) review of over 17,000 pages of documents produced by Intel, including transcripts of the depositions of twenty Intel officers, directors, or employees that were taken in the AMD Action, (iii) the deposition of Evangelina Almirantearena, Senior Counsel, Competition Compliance for Intel, and (iv) consultation with experts in the areas of corporate governance, antitrust law, and compliance;

O.     Plaintiffs and counsel to the plaintiffs in the Rosenfeld Action ("Rosenfeld's Counsel") have engaged in extensive negotiations concerning the terms of a possible settlement of the Rosenfeld Action.   In connection therewith, Rosenfeld's Counsel have conducted a thorough investigation of the allegations asserted in the Rosenfeld Action, including a review of publicly-available documents concerning Intel and the Antitrust Proceedings, review of documents produced by Intel, the transcript, and accompanying exhibits, to the deposition of Evangelina Almirantearena, Senior Counsel, Competition Compliance for Intel, and consultation with experts in the areas of corporate governance, antitrust law, and compliance.

P.     The Delaware Plaintiffs and Delaware Plaintiffs' Counsel have independently considered and evaluated the benefits provided by this Settlement to Intel and Intel's shareholders, and have also considered:  (i) the attendant risks of continued litigation and the uncertainty of the outcome of the Delaware Action; (ii) the probability of success on the merits and the allegations contained in the Delaware Action; (iii) the fact that a previous shareholder derivative suit on behalf of Intel, entitled *In re Intel Corp. Derivative Litigation*, Civ. A. No. 08-93-JJF (D. Del.), in which the plaintiff alleged wrongdoing similar to that alleged in the Delaware Complaint, was dismissed by the Court in an opinion dated June 4, 2009; (iv) the possible defenses that the Defendants

may assert and other impediments to a better outcome of the Delaware Action, including (a) the motion to dismiss filed by the Defendants that is currently pending, (b) the unlikelihood of proving that Intel violated U.S. or foreign competition law; (c) the difficult standard that must be met to prove a breach of the duty of oversight under Delaware law, (d) the fact that Intel's Certificate of Incorporation includes an exculpatory provision permitted by Delaware General Corporation Law § 102(b)(7), and (e) the fact that Intel's directors and officers liability insurance excludes coverage for any loss for which Intel is obligated to indemnify the insureds; and (v) the desirability of permitting this Settlement to be consummated according to its terms, and avoiding the substantial expense and risks of continued litigation;

Q.       The Delaware Plaintiffs and Delaware Plaintiffs' Counsel have determined that a settlement of the Delaware Action on the terms reflected in this Settlement is fair, reasonable, and in the best interests of Intel and Intel's shareholders;

R.       Plaintiffs and counsel to the plaintiffs in the Related Actions (the "Related Plaintiffs" and "Related Plaintiffs' Counsel," respectively) have likewise considered and evaluated the benefits provided by this Settlement to Intel and Intel's shareholders, and have considered the matters set forth in paragraph P above, and have agreed that the terms reflected in this Settlement are fair, reasonable, and in the best interests of Intel and Intel's shareholders, and have agreed to dismiss their respective cases if this Settlement is approved by the Court;

S.       The Individual Defendants have vigorously denied, and continue to deny:  (i) any liability or wrongdoing with respect to any and all claims alleged in the Delaware Action and the Related Actions; (ii) that they engaged in any wrongdoing

whatsoever; (iii) that they committed any violation of law; (iv) that they breached any fiduciary duties; (v) that they acted improperly in any way; and (vi) that any of the enhancements to Intel's corporate governance and antitrust compliance policies and procedures that are set forth in this Settlement were legally required, or that to the extent such policies and procedures were not in place in the past, it constituted a breach of fiduciary duty or other wrongdoing.  Rather, the Individual Defendants believe:  (a) that they fulfilled their fiduciary duties to the Company; (b) that they engaged in proper oversight of Intel's antitrust compliance activities; and (c) that Intel had in place, at all relevant times, adequate and appropriate corporate governance and antitrust compliance policies and procedures.  Without conceding any infirmities in their defenses to the claims asserted in the Delaware Action and the Related Actions, the Individual Defendants nevertheless consider it desirable that the Delaware Action and the Related Actions be dismissed, on the terms and conditions herein, because the Settlement will eliminate the substantial burden, expense, inconvenience and distraction of litigation and will dispel any uncertainty that may exist as a result of the Delaware Action and the Related Actions;

## SETTLEMENT TERMS AND CONDITIONS

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,**

pursuant to Federal Rule of Civil Procedure 23.1, and subject to the approval of the Court, as follows:

## ENHANCEMANTS TO INTEL'S CORPORATE GOVERNANCE AND ANTITRUST COMPLIANCE POLICIES AND PROCEDURES

1.     Intel and its Board of Directors have implemented, or agree to implement, to the extent it has not already done so, enhancements to Intel's corporate governance and antitrust compliance policies and procedures, as set forth in paragraphs 2 and 3 below, in order to reduce the risk of future litigation or proceedings regarding antitrust or foreign competition laws.  Thus, the fact that Intel has implemented, or agreed to implement, such enhancements should not be construed as an admission that Intel violated any U.S. or foreign competition laws, that any such enhanced policies and procedures are legally required, or that to the extent such policies and procedures were not in place in the past, it constituted a failure of compliance, a breach of any duty, or any other wrongdoing. Delaware Plaintiffs' Counsel have investigated and conducted discovery regarding Intel's corporate governance and antitrust compliance policies and procedures and, based thereon, agree that these corporate governance and antitrust compliance policy and procedure reforms are reasonably designed to provide enhanced oversight of, and compliance with, Intel's antitrust policies going forward.  Rosenfeld's Counsel, likewise, after conducting an investigation into the allegations of the Rosenfeld Action, agree that these corporate governance and antitrust compliance policy and procedure reforms are reasonably designed to provide enhanced oversight of, and compliance with, Intel's antitrust policies going forward.

2.     Intel has always been and continues to be committed to the implementation, enforcement, and enhancement of its antitrust compliance programs, procedures, employee training and data management systems.  Enhancements to these programs, procedures, training and systems that have been made, or were planned and are in the process of being implemented, since the Antitrust Proceedings and the Villari Demand include:

a.      Formation of a Compliance Committee to review Intel's policies, programs and procedures with regard to significant pending and threatened litigation, monitor the Company's programs to implement legal obligations arising from judgments, settlement agreements and other similar documents that bear upon the Company's effective conduct of its business in a legal and ethical manner, consistent with the Committee's charter;

b.      Appointment of a General Counsel with an extensive background in all aspects of antitrust practice;

c.      Creation of an attorney position within the Legal Compliance Group (group was formally created in May 2008 and reports to General Counsel) to focus solely on global antitrust compliance, and addition of attorney and non-attorney resources across most Intel geographic areas to support antitrust compliance efforts;

d.      Addition of attorneys to the various geographic areas in Intel's Sales & Marketing Group (SMG) to provide counseling, and address compliance issues regarding, antitrust and competition laws;

e.      Addition/dedication of non-attorney personnel in Finance, SMG, the Microprocessor Marketing and Business Planning group (MMBP), and Information Technology (IT) to support antitrust compliance activities;

f.      Creation of a process to audit accounts to assess compliance with Intel's antitrust policy, the results of which shall be reported to the Global Director of Legal Compliance ("GDLC") and the Compliance Committee;

g.      Creation of a process to monitor individuals' compliance with Intel's antitrust policy, the results of which shall be reported to the GDLC and the Compliance Committee;

h.      Intel will continue to refine and enhance its pricing procedures to ensure that it has reliable pricing tools to enable it to set its microprocessor prices at levels that exceed the appropriate measure of costs used to determine when prices constitute anticompetitive conduct or unfair competition;

i.      Elimination of retroactive rebates, absent approval by the head of SMG Legal;

j.      Addition of new controls on requests for Marketing Development Funds (MDF) and Non-Recurring Engineering Funds (NRE) with respect to Intel's principal product lines for all customers worldwide;

k.      Movement to a smaller number of standard deal types;

l.      Addition of a requirement that, absent approval by the head of SMG Legal, all new sales and pricing agreements must: (i) be in writing, (ii) include standard integration and non-exclusivity clauses, and (iii) be kept in a centralized repository;

m.      Implementation of the Intel Deal Management System (IDMS), an internal deal approval tool to include deal terms, cost guard band data, agreement/document repository, and rebate forecasting and payment information.  IDMS will assist with implementing and monitoring compliance with changes to sales process and policies described above.  (IDMS was rolled out in pilot form in 2009; complete

implementation for all direct customers is scheduled in 2010 with further implementation for indirect customers in 2010 and 2011.)

       n.    Roll out of enhanced processes for delivery and tracking of required basic antitrust training in 2009 – approximately 7,500 employees completed training in 2009;

       o.    Roll out of advanced antitrust communications training course in 2009 – approximately 1,500 employees completed advanced antitrust communications training in 2009;

       p.    Launch of Antitrust Awareness 2010 as a required course for over 8,000 employees, covering both SMG and the product groups;

       q.    Requirement that in 2009, all employees in SMG dealing with customers certify their review of, and agreement to comply with, Intel's refreshed antitrust policy;

       r.    Roll out of training on new sales processes and sales policies in the fall of 2009 to approximately 1600 employees (primarily in SMG) involved in negotiating pricing and sales agreements.

Intel represents that it has expended millions of dollars to date in costs and resources to implement the foregoing enhancements set forth in this paragraph 2, and agrees to commit the monetary and personnel resources necessary and appropriate to implement and enforce the Company's future antitrust compliance programs, procedures, training and systems.

3.      Since the initiation of the Delaware Action and the Rosenfeld Action, Intel has implemented, or agreed to implement, the following additional enhancements to Intel's corporate governance and antitrust compliance policies and procedures:

a.      Intel will maintain a Legal Compliance Group, which will be headed by the GDLC, and which together will be given increased roles and responsibilities for antitrust compliance based upon recommendations made to and approved by the newly-formed Compliance Committee of the Board.

(i)      The GDLC will have the authority, experience, skill, training, budget, and staff to carry out his or her responsibilities.  The GDLC shall report to Intel's General Counsel.

(ii)      The Compliance Committee will review and concur in the appointment, replacement, reassignment, or dismissal of the GDLC.

(iii)      The GDLC shall receive and review reports and recommendations concerning antitrust compliance matters from other personnel supporting compliance functions within the Legal Compliance Group, SMG, Finance, MMBP, and IT.

(iv)      Intel will review and strengthen the GDLC's role in the design, implementation and enforcement of a compliance and ethics program directed to antitrust and competition issues, as is deemed appropriate and necessary under the circumstances.

(v)      The GDLC shall meet with the Compliance Committee in executive session at least twice annually, or more frequently if the Compliance Committee determines after consultation with the GDLC that additional meetings are necessary, to discuss antitrust compliance matters and to report on any material changes to Intel's antitrust compliance policies, procedures, and programs.

(vi)    The GDLC shall, on at least an annual basis, provide a written report to the Compliance Committee outlining the GDLC's activities regarding antitrust and competition issues, and any other items that the Committee may request.

(vii)    In reviewing any conduct that raises potential issues regarding antitrust compliance, the GDLC or his or her delegated staff will be given full cooperation by Company personnel, including access to Company records as reasonably necessary to further any investigation into alleged antitrust misconduct, and Company personnel shall promptly respond to inquiries from the GDLC.

(viii)    If the GDLC determines that such assistance is necessary or desirable, the GDLC may retain and utilize personnel, outside advisors, or independent consultants who are experienced and knowledgeable in the subject matter being investigated.

(ix)    The GDLC shall have input into the design, implementation and enforcement of a compliance and ethics program directed to antitrust and competition issues. Any disagreement concerning the GDLC's recommendations may be reviewed and resolved by the Compliance Committee.

(x)    If a credible and material report of an antitrust or competition issue is received by the Intel employee whistleblower hotline, the GDLC shall promptly be informed of this report except for good cause.

b.    The Compliance Committee shall consist of independent directors (as defined in the applicable rules for NASDAQ-traded issuers), will review the effectiveness of the Company's antitrust compliance policies and procedures at least annually, including the effectiveness of any new policies and procedures established as part of this Settlement, and will review and approve a risk assessment at least annually with regard to the Company's risk of antitrust or foreign competition law violations. The Compliance Committee shall review

14

and approve recommended changes to Intel's antitrust compliance policies as it deems appropriate, and such approved changes shall be reported to the Board.

(i)     Intel shall keep records of its antitrust compliance program as the Compliance Committee deems appropriate to gauge the overall effectiveness of such program.

(ii)    Intel will implement an "audit" program sufficient to review and consider the effectiveness of the Company's antitrust compliance policies and procedures with respect to executives who are significantly involved in OEM contracting activities.  The results of this audit program shall be provided to the Compliance Committee and the GDLC, and may be provided to Intel's external auditors as necessary to satisfy any financial statement audit procedures.

(iii)   The Compliance Committee will monitor Intel's implementation of the terms of this Settlement Agreement.

(iv)    The Compliance Committee will monitor the Company's compliance with the terms of the Company's Settlement Agreement with Advanced Micro Devices, Inc., dated November 11, 2009, including contracting procedures specified therein.

(v)     The Compliance Committee will review and, as it deems necessary based on the recommendations of the GDLC, approve strengthening the employee training and certification programs related to antitrust compliance.

(vi)    The Compliance Committee is authorized to retain and consult with subject matter experts as it deems appropriate in order to carry out its review and monitoring function.

(vii)   The Compliance Committee members shall be given such training and education as they may request regarding antitrust compliance.

      c.     Intel agrees that its antitrust compliance policies, procedures and programs will be intended to conform in material respects to the relevant provisions of the U.S. Federal Sentencing Guidelines, and that in implementing such policies, procedures, and programs the Company will not knowingly cause the involved personnel to violate any applicable professional standards.

      d.     Intel agrees that its Code of Conduct will be further revised to address antitrust compliance in a more particularized fashion, as part of the Antitrust & Competition Law Worldwide Policy and Standards element of the Code of Conduct.

      (i)     Any personnel found to have violated Intel's antitrust policies will, subject to local laws, be disciplined, up to and including termination of employment.

      (ii)     Any personnel found liable by a court of law in a final, non-appealable judgment for violating United States federal or state antitrust laws will, subject to local laws, be disciplined, up to and including termination of employment, and any non-independent director so found to have violated federal or state antitrust laws shall also be subject to removal from the Board.

      (iii)     Intel will give strong weight to any officer's or employee's failure to comply with Intel's antitrust policies in making employment and compensation decisions, and in evaluating performance of all officers and employees of the Company.

      (iv)     Consistent with the terms of its Code of Conduct, Intel agrees that any personnel found to have retaliated against or threatened retaliation against anyone for: (a) having raised an antitrust or competitive concern; or (b) having objected to a course of action on behalf of the Company on the grounds that such course of action raises antitrust concerns; shall be disciplined as contemplated by the Code of Conduct.

e.      Intel will continue to enhance its existing antitrust training and education programs for Intel officers and employees, based on the recommendations made to and approved by the Compliance Committee.  Such training and education may include topics related to compliance with the terms of recently-resolved antitrust proceedings, or such future settled antitrust actions or proceedings, as the Compliance Committee deems appropriate.

4.      The provisions of paragraphs 2 and 3 shall be operative for a period of three years commencing on June 30, 2010.

## **RELEASE OF CLAIMS**

5.      Upon Final Approval of this Settlement, all of the Settled Claims by Releasing Persons against Released Persons are completely, fully, finally and forever compromised, settled, released, discharged, extinguished and dismissed with prejudice, upon and subject to the terms and conditions set forth herein.  For purposes of this Settlement, "Final Approval," "Released Persons," "Releasing Persons," and "Settled Claims" mean the following:

a.      "Final Approval" means the entry by the Court of an Order and Final Judgment approving the material terms of this Settlement (substantially in the form attached hereto as Exhibit C) and the latest of: (i) the expiration of the time for the filing or noticing of an appeal, writ petition, or motion for reargument or rehearing from the Order and Final Judgment without such appeal or motion having been made; (ii) the date of final affirmance of the Order and Final Judgment on any appeal or reargument or rehearing; or (iii) the final dismissal of any appeal or writ proceeding relating to the Order and Final Judgment.

b.      "Released Persons" means each and all of the Individual Defendants, each and all of the current and former officers, directors and employees of Intel, and each and all of their respective agents, representatives, insurers, heirs, executors, personal or legal representatives, estates, administrators, predecessors, successors and assigns, and Intel as Nominal Defendant.

c.      "Releasing Persons" means each and all of the Delaware Plaintiffs, the Related Plaintiffs, Intel and each and all of the past and present shareholders of Intel, and each and all of their respective officers, directors, employees, heirs, executors, personal or legal representatives, estates, administrators, predecessors, successors and assigns.

d.      "Settled Claims" means all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, fees, expenses, costs, matters and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, that have been, could have been, or in the future can or might be asserted by any of the Releasing Persons derivatively on behalf of Intel (or by Intel directly) in the Delaware Action or in the Related Actions, or in any other court, tribunal or proceeding (including, but not limited to, any claims arising under federal, state or foreign statutory or common law relating to alleged fraud, misrepresentation, breach of any duty of care or loyalty, negligence, corporate waste or mismanagement, contribution, indemnification, recoupment, disgorgement, or for violations of any antitrust or competition laws or otherwise) whether legal, equitable or any other type, which have arisen, arise now or hereafter arise out of, or relate in any manner to, the

allegations, facts, events, practices, conduct, transactions, matters, acts, occurrences, statements, representations, misrepresentations or omissions, or any fees, expenses or costs incurred in prosecuting, defending or settling the Delaware Action or the Related Actions, or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved or set forth in, or referred to or otherwise related, directly or indirectly, in any way to, the Delaware Action or the Related Actions, or the subject matter of the Delaware Action or the Related Actions, and including, without limitation, any claims of a derivative nature brought on behalf of Intel (or by Intel directly) in any way related to (i) this Settlement, (ii) the fiduciary duties of the Individual Defendants or Released Persons relating to or in connection with the allegations made in the Delaware Complaint or the Related Actions, (iii) any  compensation, bonus, or benefits received by any Released Persons relating to or in connection with the allegations made in the Delaware Complaint or the Related Actions; (iv) any disclosures or alleged misrepresentations or omissions that were made or allegedly not made by any of the Released Persons regarding the subject matter of the Delaware Action or the Related Actions, the Settlement or any other matters described or alleged in the Delaware Complaint or the Related Actions or this Settlement, or (v) the conduct alleged in the Antitrust Proceedings; *provided, however*, that the Settled Claims shall not include the right to enforce the terms of this Settlement.  Nothing herein shall be construed to release any claim or cause of action asserted (a) by any governmental body in any pending litigation against Intel or (b) by any Intel shareholders in any pending class action against Intel.

6.     If any claims that are or would be subject to the release and dismissal contemplated by the Settlement are asserted against any person in any court prior to Final Approval of the Settlement, the Delaware Plaintiffs, the Related Plaintiffs, and the Defendants shall join, where possible, in any motion to dismiss or stay such proceedings.

7.     Upon Final Approval of this Settlement, all claims that have been or could have been asserted by any Individual Defendant or any other Released Person against the Delaware Plaintiffs or the Related Plaintiffs or any of their counsel which arise out of or in any way relate to the institution, prosecution or settlement of the Delaware Action or the Related Actions are completely, fully, finally and forever compromised, settled, released, discharged, extinguished and dismissed with prejudice, upon and subject to the terms and conditions set forth herein.

8.     The releases contemplated by this Settlement extend to claims that the Releasing Persons do not know or suspect to exist at the time of the release, which if known by the Delaware Plaintiffs, plaintiffs in the Related Actions, or Intel might have affected their decisions to enter into this release, or might have affected any other Intel stockholder's decision not to object to this Settlement.  Although the parties do not in any way concede that any law other than the law of the State of Delaware governs this Settlement, the Releasing Persons will be deemed upon Final Approval by operation of the Order and Final Judgment to have waived and relinquished the provisions, rights and benefits of §1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

In addition, the Releasing Persons will be deemed, upon Final Approval by operation of the Order and Final Judgment, to have waived and relinquished any and all provisions, rights and benefits of any law of any state or territory of the United States, federal law, foreign law or principle of common law, which is similar, comparable or equivalent to §1542 of the California Civil Code.  The Releasing Persons may hereafter discover facts in addition to or different from those now known or believed to be true with respect to the Settled Claims, but the Releasing Persons shall, upon Final Approval by operation of the Order and Final Judgment, be deemed to have completely, fully, finally and forever compromised, settled, released, discharged and extinguished any and all Settled Claims known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of additional or different facts.  The foregoing waiver was separately bargained for and is a key element of the Settlement.

## SUBMISSION AND APPLICATION TO THE COURT

9.   As soon as practicable after the execution of the Settlement, the parties hereto shall jointly apply to the Court for an order in the form attached hereto as Exhibit A (the "Scheduling Order"), which shall provide that:

a.   A settlement hearing (the "Settlement Hearing") be held after distribution to Intel shareholders of a Notice of Pendency of Derivative Action, Proposed Settlement of Derivative Action, Settlement Hearing and Right to Appear (the "Notice") to determine whether the Court should: (i) approve the Settlement pursuant to Federal Rule of Civil Procedure 23.1 as fair, reasonable, adequate and in the best interests of Intel and its shareholders; (ii) enter an Order and Final Judgment dismissing

the Delaware Action with prejudice, and releasing and barring prosecution of any and all Settled Claims; (iii) consider the application of Delaware Plaintiffs' Counsel and the application of Related Plaintiffs' Counsel for an award of attorneys' fees and expenses; and (iv) hear such other matters as the Court may deem necessary and appropriate; and

        b.     Intel shall be responsible for the reproduction and distribution of the Notice, in the form attached hereto as Exhibit B.  Promptly following court approval of the Notice, Intel shall cause the Notice to be distributed, by First Class Mail, to all record holders of common stock of Intel as of May 25, 2010 (or such other date as the Court may set in the Scheduling Order) at the respective addresses currently set forth in the records of the Company's transfer agent.  Furthermore, Intel shall use reasonable efforts to give notice to all beneficial owners of common stock of Intel as of May 25, 2010 (or such other date as the Court may set in the Scheduling Order) (a) by providing additional copies of the Notice to any record holder requesting the Notice for purposes of distribution to such beneficial owners; and (b) by posting a copy of the Notice on Intel's corporate website.  All of the expenses related to the distribution of the Notice shall be paid by Intel, whether or not the Settlement is approved.

## <u>ORDER AND FINAL JUDGMENT</u>

    10.    Not earlier than 30 days following the Notice provided pursuant to paragraph 9, the Court shall hold a hearing to finally approve the Settlement.  If the Settlement (including any modification thereto made with the consent of the Delaware Plaintiffs, Intel and the Individual Defendants as provided for herein) is approved by the Court, the parties to the Settlement shall promptly request that the Court enter an Order

and Final Judgment substantially in the form attached hereto as Exhibit C, which among other things:

a.      Approves the Settlement, adjudges the terms thereof to be fair, reasonable, adequate and in the best interests of Intel and Intel's shareholders, and directs consummation of the Settlement in accordance with the terms and conditions of the Settlement;

b.      Determines that the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process have been satisfied in connection with the notice to Intel's shareholders;

c.      Dismisses the Delaware Action with prejudice on the merits, extinguishing, discharging and releasing any and all Settled Claims, and permanently barring Delaware Plaintiffs, Intel's past or present shareholders, Intel, and anyone claiming through or for the benefit of any of them, from asserting, commencing, prosecuting, assisting, instigating or in any way participating in the commencement, maintenance, or prosecution of any action or other proceeding, in any forum, asserting any Settled Claims;

d.      Extinguishes, discharges and releases any and all claims that have been or could have been asserted by any Individual Defendant or any other Released Person against the Delaware Plaintiffs or any of their counsel which arise out of or in any way relate to the institution, prosecution or settlement of the Delaware Action; and

e.      Determines the Delaware Plaintiffs' application and the Related Plaintiffs' application for an award of attorneys' fees and out-of-pocket expenses incurred in connection with the Delaware Action and the Related Actions.

23

11.    Within ten (10) days after entry of the Order and Final Judgment, the Related Plaintiffs shall undertake all appropriate measures to obtain dismissal of the Related Actions, with prejudice, as moot and/or based on *res judicata* grounds.

## RIGHT TO WITHDRAW FROM THE SETTLEMENT

12.    The Delaware Plaintiffs, Intel and each of the Individual Defendants shall have the separate option to withdraw from the Settlement in the event that either (i) the Order and Final Judgment referred to above is not entered substantially in the form specified herein, or as modified by order of the Court with the consent of the Delaware Plaintiffs, Intel and the Individual Defendants, or (ii) the Settlement does not receive Final Approval by the Court, or the Court approves the Settlement but such approval is reversed or vacated or substantially modified on appeal, reconsideration or otherwise.

13.    In the event that the Settlement proposed herein does not receive Final Approval by the Court, or the Court approves the Settlement but such approval is reversed or vacated on appeal, reconsideration or otherwise, and such order reversing or vacating the Settlement becomes final by lapse of time or otherwise, or if any of the conditions to such Settlement are not fulfilled, then the Settlement proposed herein shall be of no further force or effect, and this Settlement and all negotiations, proceedings and statements relating thereto and any amendment thereof shall be null and void and without prejudice to any party hereto, and each party shall be restored to his, her or its respective position as it existed prior to the execution of this Settlement.

## FEES AND EXPENSES

14.    Intel agrees that the enhancements to Intel's corporate governance and antitrust compliance policies and procedures, as set forth in paragraphs 2 and 3 above,

represent a valuable benefit to Intel and its shareholders.  Intel agrees that it will pay to Delaware Plaintiffs' Counsel and Related Plaintiffs' Counsel up to the following amounts in attorneys' fees and expenses, as ordered by and subject to the approval of the Court (the "Fee and Expense Award"):

   a. to Delaware Plaintiffs' Counsel and to counsel in the Paris Action, collectively, up to $1,800,000 in attorneys' fees and expenses; and

   b. to Rosenfeld's Counsel, up to $850,000 in attorneys' fees and expenses.

   15. Intel, Delaware Plaintiffs' Counsel, and Related Plaintiffs' Counsel negotiated the provisions herein related to the Fee and Expense Award after the parties agreed to the other substantive terms of this Settlement.  The Delaware Plaintiffs and the Related Plaintiffs and their respective counsel agree that they will not request that the Court approve payment of attorneys' fees and expenses in excess of the amounts provided above, and they further agree that they will not seek an award of attorneys' fees and expenses in any of the Related Actions.  Defendants agree not to oppose an application by the Delaware Plaintiffs and the Related Plaintiffs and their respective counsel for such approval in amounts no greater than set forth above.  Approval by the Court of the Fee and Expense Award shall not be a precondition to approval of the Settlement or dismissal of the Delaware Action or the Related Actions in accordance with this Settlement.  The Delaware Plaintiffs, the Related Plaintiffs and their respective counsel may not cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to attorneys' fees and/or expenses.  Any appeal relating to an award of attorneys' fees or expenses will not affect the finality of the Settlement, the

Order and Final Judgment or the releases provided herein.  The application for a Fee and Expense Award may be considered separately from the proposed Settlement.

16.     Intel shall pay any fees and expenses awarded by the Court to Delaware Plaintiffs' Counsel and Related Plaintiffs' Counsel within twenty (20) business days after the latest of: (a) Final Approval; (b) the date on which the Fee and Expense Award becomes final and nonappealable; and (c) the date on which the last dismissal of the Related Actions becomes final and nonappealable.

## SETTLEMENT NOT AN ADMISSION

17.     The provisions contained in this Settlement and all negotiations, statements and proceedings in connection therewith are not, shall not be argued to be, and shall not be deemed, a presumption, a concession or an admission by the Individual Defendants or Intel of any fault, liability or wrongdoing as to any fact or claim alleged or asserted in the Delaware Action or the Related Actions or any other actions or proceedings and shall not be interpreted, construed, deemed, invoked, offered or received in evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal or administrative, except in a proceeding to enforce the terms or conditions of this Settlement.

## DENIAL OF LIABILITY

18.     Each Released Person specifically disclaims any liability whatsoever relating to any of the Settled Claims; expressly denies having engaged in, or threatened to engage in, any breach of duty, violations of law or wrongful or illegal activity, or having failed to act in any matter required by law or rule, or having violated, or threatened to violate, any law or regulation or duty; expressly denies that any person or entity has

suffered any harm or damages as a result of such Released Person's involvement with the Settled Claims (or the events at issue therein), and such Released Person is making this Settlement (without conceding any infirmity in such Released Person's defenses against the Settled Claims) solely to avoid the uncertainty, harm, distraction, burden and expense occasioned by litigation.  Each Released Person believes such Released Person acted, at all times, in the best interests of Intel and Intel's shareholders.  The Court has made no finding that any Released Person has engaged in any wrongdoing or wrongful conduct or otherwise acted improperly or in violation of any law or regulation or duty in any respect.

### GENERAL PROVISIONS

19.     Each of the individuals executing this Settlement on behalf of one or more of the parties hereto represents and warrants that he or she has been duly authorized and empowered to execute this Settlement on behalf of his or her respective client or clients.

20.     This Settlement may be executed in any number of actual, emailed or telecopied counterparts and by each of the different parties thereto on several counterparts, each of which when so executed and delivered shall be an original.  The executed signature page(s) from each actual, emailed or telecopied counterpart may be joined together and attached to such original and shall constitute one and the same instrument.

21.     The waiver by any party of any breach of this Settlement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement.

22.     In addition to the actions specifically provided for in this Settlement, the parties will use their reasonable best efforts from the date hereof to take, or cause to be

taken, all actions, and to do, or cause to be done, all things, reasonably necessary, proper or advisable under applicable laws, regulations and agreements, to consummate and make effective this Settlement.  The parties and their attorneys agree to cooperate fully with one another in seeking the Court's approval of this Settlement and to use their best efforts to effect the consummation of this Settlement.  Without further order of the Court, the parties may agree to reasonable extensions of time not expressly set by the Court in order to carry out any of the provisions of this Settlement.

23.    Each party represents and warrants that the party, or a responsible officer or partner or other fiduciary thereof, has read this Settlement and understands the contents hereof, and believes it is a fair resolution of contested claims.

24.    Each party represents and warrants that the party has made such investigation of the facts pertaining to the Settlement provided for in this Settlement, and of all of the matters pertaining thereto, as the party deems necessary and advisable.

25.    This Settlement may not be amended, changed, waived, discharged or terminated (except as explicitly provided herein), in whole or in part, except by an instrument in writing signed by the party against whom or which enforcement of such amendment, change, waiver, discharge or termination is sought.

26.    This Settlement will be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to conflict of laws principles.  Any action relating to this Settlement will be filed exclusively in the Court.  Each party hereto (i) consents to personal jurisdiction in any such action (but in no other action) brought in the Court, (ii) consents to service of process by registered mail upon such party and/or such party's agent, (iii) waives any objection to venue in the Court and any claim that

28

Delaware or the Court is an inconvenient forum, and (iv) waives any right to demand a jury trial as to any such action.

27.     This Settlement constitutes the entire agreement among the parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous oral or written agreements, understandings or representations.  All of the exhibits hereto are incorporated herein by reference as if set forth herein verbatim, and the terms of all exhibits are expressly made part of this Settlement.

28.     The terms and provisions of this Settlement are intended solely for the benefit of the parties to the Settlement, the Released Persons, and their respective stockholders, affiliates, agents, executors, heirs, successors and permitted assigns, and it is not the intention of the parties to confer third-party beneficiary rights or remedies upon any other person or entity, except any attorneys' fees and expenses to be paid pursuant to the terms of this Settlement.

29.     This Settlement will be deemed to have been mutually prepared by the parties and will not be construed against any of them by reason of authorship.  Paragraph titles have been inserted for convenience only and will not be used in determining the terms of this Settlement.

Dated: May 25, 2010

OF COUNSEL:

PASKOWITZ & ASSOCIATES
Laurence D. Paskowitz
60 East 42nd St., Suite 4600
New York, NY 10165
(212) 685-0969

BERMAN DEVALERIO
Jeffrey C. Block
Bryan A. Wood
Scott A. Mays
One Liberty Square
Boston, MA 02109
(617) 542-8300

Co-Lead Counsel for Delaware Plaintiffs

BIGGS & BATTAGLIA

/s/ Robert D. Goldberg
Robert D. Goldberg (ID #631)
921 North Orange Street
Wilmington, Delaware 19899
(302) 655-9677
goldberg@battlaw.com

Attorneys for Delaware Plaintiffs


OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jonathan C. Dickey
Marshall R. King
200 Park Avenue, 47th Floor
New York, NY 10166
(212) 351-4000

POTTER ANDERSON & CORROON LLP

/s/ Stephen C. Norman
Donald J. Wolfe, Jr. (ID #285)
Stephen C. Norman (ID #2686)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
dwolfe@potteranderson.com
snorman@potteranderson.com

Attorneys for Nominal Defendant Intel
Corporation and Defendants Otellini, Barrett,
Pottruck, Shaw, Yoffie, Barshefsky,
Plummer, Decker, Bartz, Donahoe, and Yeary

OF COUNSEL:

LAW OFFICES OF KIM DAVID
STASKUS, P.C.
Kim David Staskus
1631 Willow Street, Suite 100
San Jose, CA  95125
(408) 264-0155

CONNOLLY, BOVE, LODGE & HUTZ
LLP

/s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (ID #2237)
Bradley R. Aronstam (ID #5129)
1007 North Orange Street, 8th Floor
Wilmington, Delaware 19899
(302) 658-9141
cseitz@cblh.com
baronstam@cblh.com

Attorneys for Defendant D. James Guzy, Sr.

RIGRODSKY & LONG, P.A.

OF COUNSEL:

WEISS & LURIE
Joseph H. Weiss
David C. Katz
551 Fifth Avenue
New York, NY  10176
(212) 682-3025

STULL, STULL & BRODY
Jules Brody
6 East 45th Street
New York, NY  10017
(212) 687-7230

KIEVE LAW OFFICES

/s/ Brian D. Long
Seth D. Rigrodsky (ID #3147)
Brian D. Long (ID #4347)
919 North Market Street, Suite 980
Wilmington, Delaware 19801
(302) 295-5310
sdr@rigrodskylong.com
bdr@rigrodskylong.com

Attorneys for Plaintiffs in the Rosenfeld
Action

THEGRANTLAWFIRM, PLLC

/s/ Loren Kieve
Loren Kieve
5A Funston Avenue
The Presidio of San Francisco
San Francisco, California  94129-1110
(415) 364-0060

Attorneys for Plaintiff in the Paris
Action

/s/ Lynda J. Grant
Lynda J. Grant
7 East 35th Street, 12th Floor
New York, New York 10016
(917) 697-8108
lgrant@grantfirm.com

Attorneys for Plaintiff in the Paris Action