IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. DERIVATIVE LITIGATION | C.A. No. 1:09-cv-867-JJF |

**NOTICE OF PENDENCY OF DERIVATIVE ACTION,
PROPOSED SETTLEMENT OF DERIVATIVE ACTION,
SETTLEMENT HEARING AND RIGHT TO APPEAR**

**TO:** **ALL RECORD AND BENEFICIAL HOLDERS OF SHARES OF COMMON STOCK OF INTEL CORPORATION ("INTEL" OR THE "COMPANY") AS OF MAY 25, 2010.**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS LITIGATION. IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE SETTLED CLAIMS (DEFINED HEREIN).**

**IF YOU HOLD INTEL COMMON STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

1. **PURPOSE OF NOTICE**

Pursuant to an Order of the United States District Court for the District of Delaware (the "Court") dated May 25, 2010, and further pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, this Notice is to inform you of (a) the above-captioned action (the "Delaware Action") pending in the Court, (b) the proposed settlement of the Delaware Action (the "Settlement") as provided for in a Stipulation of Settlement (the "Stipulation") dated May ___, 2010, and (c) your right to participate in a hearing to be held on _____, 2010 at _____ _.m., before the Honorable Joseph J. Farnan at the United States Courthouse, 844 N. King Street, Wilmington, Delaware 19801 (the "Settlement Hearing") to (i) determine whether the Court should approve the Settlement pursuant to Federal Rule of Civil Procedure 23.1 as fair, reasonable, adequate and in the best interests of Intel and its shareholders, (ii) determine whether an Order and Final Judgment should be entered dismissing the Delaware Action with prejudice, and releasing and barring prosecution of any and all Settled Claims, as defined below, (iii) consider and determine whether to enter an award of attorneys' fees and expenses to counsel for the plaintiffs in the Delaware Action and in the Related Actions, as defined below, and (iv) consider such other matters as the Court deems appropriate.

This Notice describes the rights you may have with respect to the Delaware Action and pursuant to the Stipulation and what steps you may take, but are not required to take, in relation to the Settlement.

2. **FACTUAL BACKGROUND**

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES**.

On November 13, 2009, Charles A. Gilman, an Intel stockholder, commenced a shareholder derivative action in the Court (the "Gilman Action") on behalf of Intel against defendants Craig R. Barrett, Carol Bartz, Charlene Barshefsky, Susan L. Decker, John J. Donahoe, D. James Guzy, Sr., Paul S. Otellini, David S. Pottruck, James D. Plummer, Jane E. Shaw, David B. Yoffie, and Frank D. Yeary (collectively, the "Individual Defendants") and nominal defendant Intel (together with the Individual Defendants, the "Defendants").

On December 23, 2009, the Louisiana Municipal Police Employees' Retirement System ("MPERS") commenced a shareholder derivative action in the Court on behalf of Intel against the Individual Defendants and nominal defendant Intel (the "MPERS Action").

On January 15, 2010, the Court entered an order consolidating the Gilman Action and the MPERS Action into this action, appointing Mr. Gilman and MPERS as lead plaintiffs in the Delaware Action (the "Delaware Plaintiffs"), and appointing Paskowitz & Associates and Berman DeValerio to be Co-Lead Counsel (together, the "Delaware Plaintiffs' Counsel").

On February 12, 2010, the Delaware Plaintiffs filed a Shareholders' Demand-Made Consolidated Derivative Complaint (the "Delaware Complaint"), alleging, *inter alia*, that Intel has, for a number of years, engaged in conduct which violates U.S. and foreign competition laws, resulting in civil suits and regulatory investigations and proceedings against Intel (together the "Antitrust Proceedings") including, without limitation:

(1) A suit commenced by Advanced Micro Devices, Inc. and AMD International Sales & Services, Ltd. in the United States District Court for the District of Delaware, entitled *Advanced Micro Devices, Inc. v. Intel Corp.*, Civil Action No. 05-441 (JJF) (the "AMD Action");

(2) A series of putative class action suits brought under state competition laws, consolidated in the United States District Court for the District of Delaware under the caption *In re Intel Corporation Microprocessor Antitrust Litigation*, MDL No. 05-1717 (JJF);

(3) A proceeding by the Japan Fair Trade Commission against Intel Kabushiki Kaisha, Intel's Japanese subsidiary, which resulted in a consent decree ordering Intel Kabushiki Kaisha to cease and desist certain actions;

(4) An investigation and proceeding brought by the European Commission, in which the European Commission issued a decision and imposed a fine against Intel in May 2009;

(5) A proceeding brought by the Korea Fair Trade Commission, in which the Korea Fair Trade Commission entered a ruling against Intel in June 2008;

(6) An action commenced by the New York Attorney General in the United States District Court for the District of Delaware, entitled *State of New York v. Intel Corp.*, Civil Action No. 09-827 (JJF); and

(7) An administrative proceeding commenced by the U.S. Federal Trade Commission against Intel on or about December 16, 2009, Docket No. 9341.

The Delaware Complaint incorporates the allegations made in certain of the Antitrust Proceedings, and further asserts that Intel's alleged anticompetitive conduct has resulted in damage to Intel, and that the Individual Defendants breached their fiduciary duties to Intel by failing to, among other things, rein in, ameliorate, or countermand such conduct, and failing to institute certain remedial measures. The Delaware Complaint seeks recovery for and on behalf of Intel of the damages it allegedly suffered as a result of the alleged breaches of fiduciary duty by the Individual Defendants.

Intel and certain of its current or former officers, directors, and employees are parties to other litigation relating to, arising out of, or making allegations similar to, the allegations contained in the Delaware Complaint, including the following (the "Related Actions"):

(1) A shareholder derivative suit pending in the Superior Court of the State of California, Santa Clara County, entitled *Paris v. Otellini, et al.,* Case No. 110CV166850; and

(2) An action pursuant to Delaware General Corporation Law § 220 pending in the Court of Chancery for the State of Delaware, entitled *Rosenfeld Family Foundation, et ano. v. Intel Corporation*, Civil Action No. 5070-VCS. The Rosenfeld Family Foundation action was filed following the dismissal by this Court of a demand futility shareholder derivative suit, entitled *In re Intel Corp. Derivative Litigation*, Civ. A. No. 08-93-JJF (D. Del.). The two actions are collectively referred to as the "Rosenfeld Action."

Counsel for the Defendants and Delaware Plaintiffs' Counsel have engaged in extensive negotiations concerning a possible settlement of the Delaware Action. In connection therewith, Delaware Plaintiffs' Counsel have conducted a thorough investigation of the claims and allegations asserted in the Delaware Action, including: (i) review of publicly-available documents concerning Intel and the Antitrust Proceedings, (ii) review of over 17,000 pages of documents produced by Intel, including transcripts of the depositions of twenty Intel officers, directors, or employees that were taken in the AMD Action, (iii)

2

the deposition of Evangelina Almirantearena, Senior Counsel, Competition Compliance for Intel, and (iv) consultation with experts in the areas of corporate governance, antitrust law, and compliance. As a result of the extensive negotiations, the Delaware Plaintiffs and the Defendants have agreed to the proposed Settlement described below, as provided for in the Stipulation, and have moved the Court for final approval of the Settlement.

Plaintiffs and counsel to the plaintiffs in the Rosenfeld Action ("Rosenfeld's Counsel") have engaged in extensive negotiations concerning the terms of a possible settlement of the Rosenfeld Action. In connection therewith, Rosenfeld's Counsel have conducted a thorough investigation of the allegations asserted in the Rosenfeld Action, including a review of publicly-available documents concerning Intel and the Antitrust Proceedings, review of documents produced by Intel, the transcript, and accompanying exhibits, to the deposition of Evangelina Almirantearena, Senior Counsel, Competition Compliance for Intel, and consultation with experts in the areas of corporate governance, antitrust law, and compliance. As a result of the extensive negotiations, Plaintiffs and counsel to the plaintiffs in the Related Actions (the "Related Plaintiffs" and "Related Plaintiffs' Counsel," respectively) also have agreed to the proposed Settlement described below and have executed the Stipulation.

3. **REASONS FOR THE SETTLEMENT**

The Delaware Plaintiffs and Delaware Plaintiffs' Counsel have independently considered and evaluated the benefits provided by the Settlement to Intel and Intel's shareholders, and have also considered: (i) the attendant risks of continued litigation and the uncertainty of the outcome of the Delaware Action; (ii) the probability of success on the merits and the allegations contained in the Delaware Action; (iii) the fact that a previous shareholder derivative suit on behalf of Intel, entitled *In re Intel Corp. Derivative Litigation*, Civ. A. No. 08-93-JJF (D. Del.), in which the plaintiff alleged wrongdoing similar to that alleged in the Delaware Complaint, was dismissed by the Court in an opinion dated June 4, 2009; (iv) the possible defenses that the Defendants may assert and other impediments to a better outcome of the Delaware Action, including (a) the motion to dismiss filed by the Defendants that is currently pending, (b) the unlikelihood of proving that Intel violated U.S. or foreign competition law; (c) the difficult standard that must be met to prove a breach of the duty of oversight under Delaware law, (d) the fact that Intel's Certificate of Incorporation includes an exculpatory provision permitted by Delaware General Corporation Law § 102(b)(7), and (e) the fact that Intel's directors and officers liability insurance excludes coverage for any loss for which Intel is obligated to indemnify the insureds; and (v) the desirability of permitting the Settlement to be consummated according to its terms, and avoiding the substantial expense and risks of continued litigation.

The Delaware Plaintiffs and Delaware Plaintiffs' Counsel have determined, after consultation with experts in the areas of corporate governance, antitrust law, and compliance, that a settlement of the Delaware Action on the terms reflected in the Settlement is fair, reasonable, and in the best interests of Intel and Intel's shareholders.

The Related Plaintiffs and Related Plaintiffs' Counsel have likewise considered and evaluated the benefits provided by the Settlement to Intel and Intel's shareholders, have considered the matters set forth above, have agreed that the terms reflected in the Settlement are fair, reasonable, and in the best interests of Intel and Intel's shareholders, and have executed the Stipulation, thereby agreeing to dismiss their respective cases if the Settlement is approved by the Court.

The Individual Defendants have vigorously denied, and continue to deny: (i) any liability or wrongdoing with respect to any and all claims alleged in the Delaware Action and the Related Actions; (ii) that they engaged in any wrongdoing whatsoever; (iii) that they committed any violation of law; (iv) that they breached any fiduciary duties; (v) that they acted improperly in any way; and (vi) that any of the enhancements to Intel's corporate governance and antitrust compliance policies and procedures that are set forth in the Settlement were legally required, or that to the extent such policies and procedures were not in place in the past, it constituted a breach of fiduciary duty or other wrongdoing. Rather, the Individual Defendants believe: (a) that they fulfilled their fiduciary duties to the Company; (b) that they engaged in proper oversight of Intel's antitrust compliance activities; and (c) that Intel had in place, at all relevant times, adequate and appropriate corporate governance and antitrust compliance policies and procedures. Without conceding any infirmities in their defenses to the claims asserted in the Delaware Action and the Related Actions, the Individual Defendants nevertheless consider it desirable that the Delaware Action and the Related Actions be dismissed, on the terms and conditions herein, because the Settlement will eliminate the substantial burden, expense, inconvenience and distraction of litigation and will dispel any uncertainty that may exist as a result of the Delaware Action and the Related Actions.

4. **SUMMARY OF THE SETTLEMENT**

In consideration for the settlement and dismissal with prejudice of the Delaware Action and the Related Actions, and the releases provided in the Settlement and summarized below, Intel and its Board of Directors have implemented, or agree to implement, to the extent it has not already done so, enhancements to Intel's corporate governance and antitrust compliance policies and procedures, and will maintain those provisions for a period of three years commencing on June 30, 2010. Intel has

implemented, or agreed to implement, such enhancements in order to reduce the risk of future litigation or proceedings regarding antitrust or foreign competition laws. Thus, the fact that Intel has implemented, or agreed to implement, such enhancements should not be construed as an admission that Intel violated any U.S. or foreign competition laws, that any such enhanced policies and procedures are legally required, or that to the extent such policies and procedures were not in place in the past, it constituted a failure of compliance, a breach of any duty, or any other wrongdoing. Delaware Plaintiffs' Counsel have investigated and conducted discovery regarding Intel's corporate governance and antitrust compliance policies and procedures and, based thereon, agree that these corporate governance and antitrust compliance policy and procedure reforms are reasonably designed to provide enhanced oversight of, and compliance with, Intel's antitrust policies going forward. Rosenfeld's Counsel, likewise, after conducting an investigation into the allegations of the Rosenfeld Action, agree that these corporate governance and antitrust compliance policy and procedure reforms are reasonably designed to provide enhanced oversight of, and compliance with, Intel's antitrust policies going forward.

Intel has always been and continues to be committed to the implementation, enforcement, and enhancement of its antitrust compliance programs, procedures, employee training and data management systems. Enhancements to these programs, procedures, training and systems that have been made, or were planned and are in the process of being implemented, include:

    a. Formation of a Compliance Committee to review Intel's policies, programs and procedures with regard to significant pending and threatened litigation, monitor the Company's programs to implement legal obligations arising from judgments, settlement agreements and other similar documents that bear upon the Company's effective conduct of its business in a legal and ethical manner, consistent with the Committee's charter;

    b. Appointment of a General Counsel with an extensive background in all aspects of antitrust practice;

    c. Creation of an attorney position within the Legal Compliance Group (group was formally created in May 2008 and reports to General Counsel) to focus solely on global antitrust compliance, and addition of attorney and non-attorney resources across most Intel geographic areas to support antitrust compliance efforts;

    d. Addition of attorneys to the various geographic areas in Intel's Sales & Marketing Group (SMG) to provide counseling, and address compliance issues regarding, antitrust and competition laws;

    e. Addition/dedication of non-attorney personnel in Finance, SMG, the Microprocessor Marketing and Business Planning group (MMBP), and Information Technology (IT) to support antitrust compliance activities;

    f. Creation of a process to audit accounts to assess compliance with Intel's antitrust policy, the results of which shall be reported to the Global Director of Legal Compliance ("GDLC") and the Compliance Committee;

    g. Creation of a process to monitor individuals' compliance with Intel's antitrust policy, the results of which shall be reported to the GDLC and the Compliance Committee;

    h. Intel will continue to refine and enhance its pricing procedures to ensure that it has reliable pricing tools to enable it to set its microprocessor prices at levels that exceed the appropriate measure of costs used to determine when prices constitute anticompetitive conduct or unfair competition;

    i. Elimination of retroactive rebates, absent approval by the head of SMG Legal;

    j. Addition of new controls on requests for Marketing Development Funds (MDF) and Non-Recurring Engineering Funds (NRE) with respect to Intel's principal product lines for all customers worldwide;

    k. Movement to a smaller number of standard deal types;

      l.    Addition of a requirement that, absent approval by the head of SMG Legal, all new sales and pricing agreements must: (i) be in writing, (ii) include standard integration and non-exclusivity clauses, and (iii) be kept in a centralized repository;

      m.    Implementation of the Intel Deal Management System (IDMS), an internal deal approval tool to include deal terms, cost guard band data, agreement/document repository, and rebate forecasting and payment information. IDMS will assist with implementing and monitoring compliance with changes to sales process and policies described above. (IDMS was rolled out in pilot form in 2009; complete implementation for all direct customers is scheduled in 2010 with further implementation for indirect customers in 2010 and 2011.)

      n.    Roll out of required basic antitrust training in 2009 – approximately 7,500 employees completed training in 2009;

      o.    Roll out of enhanced processes for delivery and tracking of advanced antitrust communications training course in 2009 – approximately 1,500 employees completed advanced antitrust communications training in 2009;

      p.    Launch of Antitrust Awareness 2010 as a required course for over 8,000 employees, covering both SMG and the product groups;

      q.    Requirement that in 2009, all employees in SMG dealing with customers certify their review of, and agreement to comply with, Intel's refreshed antitrust policy; and

      r.    Roll out of training on new sales processes and sales policies in the fall of 2009 to approximately 1600 employees (primarily in SMG) involved in negotiating pricing and sales agreements.

Intel represents that it has expended millions of dollars to date in costs and resources to implement the foregoing enhancements, and agrees to commit the monetary and personnel resources necessary and appropriate to implement and enforce the Company's future antitrust compliance programs, procedures, training and systems.

Since the initiation of the Delaware Action and the Rosenfeld Action, Intel has implemented, or agreed to implement, the following additional enhancements to Intel's corporate governance and antitrust compliance policies and procedures:

      a.    Intel will maintain a Legal Compliance Group, which will be headed by the GDLC, and which together will be given increased roles and responsibilities for antitrust compliance based upon recommendations made to and approved by the newly-formed Compliance Committee of the Board.

      (i)    The GDLC will have the authority, experience, skill, training, budget, and staff to carry out his or her responsibilities. The GDLC shall report to Intel's General Counsel.

      (ii)    The Compliance Committee will review and concur in the appointment, replacement, reassignment, or dismissal of the GDLC.

      (iii)    The GDLC shall receive and review reports and recommendations concerning antitrust compliance matters from other personnel supporting compliance functions within the Legal Compliance Group, SMG, Finance, MMBP, and IT.

      (iv)    Intel will review and strengthen the GDLC's role in the design, implementation and enforcement of a compliance and ethics program directed to antitrust and competition issues, as is deemed appropriate and necessary under the circumstances.

      (v)    The GDLC shall meet with the Compliance Committee in executive session at least twice annually, or more frequently if the Compliance Committee determines after consultation with the GDLC that additional meetings are necessary, to discuss antitrust compliance matters and to report on any material changes to Intel's antitrust compliance policies, procedures, and programs.

(vi) The GDLC shall, on at least an annual basis, provide a written report to the Compliance Committee outlining the GDLC's activities regarding antitrust and competition issues, and any other items that the Committee may request.

(vii) In reviewing any conduct that raises potential issues regarding antitrust compliance, the GDLC or his or her delegated staff will be given full cooperation by Company personnel, including access to Company records as reasonably necessary to further any investigation into alleged antitrust misconduct, and Company personnel shall promptly respond to inquiries from the GDLC.

(viii) If the GDLC determines that such assistance is necessary or desirable, the GDLC may retain and utilize personnel, outside advisors, or independent consultants who are experienced and knowledgeable in the subject matter being investigated.

(ix) The GDLC shall have input into the design, implementation and enforcement of a compliance and ethics program directed to antitrust and competition issues. Any disagreement concerning the GDLC's recommendations may be reviewed and resolved by the Compliance Committee.

(x) If a credible and material report of an antitrust or competition issue is received by the Intel employee whistleblower hotline, the GDLC shall promptly be informed of this report except for good cause.

b. The Compliance Committee shall consist of independent directors (as defined in the applicable rules for NASDAQ-traded issuers), will review the effectiveness of the Company's antitrust compliance policies and procedures at least annually, including the effectiveness of any new policies and procedures established as part of this Settlement, and will review and approve a risk assessment at least annually with regard to the Company's risk of antitrust or foreign competition law violations. The Compliance Committee shall review and approve recommended changes to Intel's antitrust compliance policies as it deems appropriate, and such approved changes shall be reported to the Board.

(i) Intel shall keep records of its antitrust compliance program as the Compliance Committee deems appropriate to gauge the overall effectiveness of such program.

(ii) Intel will implement an "audit" program sufficient to review and consider the effectiveness of the Company's antitrust compliance policies and procedures with respect to executives who are significantly involved in OEM contracting activities. The results of this audit program shall be provided to the Compliance Committee and the GDLC, and may be provided to Intel's external auditors as necessary to satisfy any financial statement audit procedures.

(iii) The Compliance Committee will monitor Intel's implementation of the terms of this Settlement Agreement.

(iv) The Compliance Committee will monitor the Company's compliance with the terms of the Company's Settlement Agreement with Advanced Micro Devices, Inc., dated November 11, 2009, including contracting procedures specified therein.

(v) The Compliance Committee will review and, as it deems necessary based on the recommendations of the GDLC, approve strengthening the employee training and certification programs related to antitrust compliance.

(vi) The Compliance Committee is authorized to retain and consult with subject matter experts as it deems appropriate in order to carry out its review and monitoring function.

(vii) The Compliance Committee members shall be given such training and education as they may request regarding antitrust compliance.

  c. Intel agrees that its antitrust compliance policies, procedures and programs will be intended to conform in material respects to the relevant provisions of the U.S. Federal Sentencing Guidelines, and that in implementing such policies, procedures, and programs the Company will not knowingly cause the involved personnel to violate any applicable professional standards.

  d. Intel agrees that its Code of Conduct will be further revised to address antitrust compliance in a more particularized fashion, as part of the Antitrust & Competition Law Worldwide Policy and Standards element of the Code of Conduct.

  (i) Any personnel found to have violated Intel's antitrust policies will, subject to local laws, be disciplined, up to and including termination of employment.

  (ii) Any personnel found liable by a court of law in a final, non-appealable judgment for violating United States federal or state antitrust laws will, subject to local laws, be disciplined, up to and including termination of employment, and any non-independent director so found to have violated federal or state antitrust laws shall also be subject to removal from the Board.

  (iii) Intel will give strong weight to any officer's or employee's failure to comply with Intel's antitrust policies in making employment and compensation decisions, and in evaluating performance of all officers and employees of the Company.

  (iv) Consistent with the terms of its Code of Conduct, Intel agrees that any personnel found to have retaliated against or threatened retaliation against anyone for: (a) having raised an antitrust or competitive concern; or (b) having objected to a course of action on behalf of the Company on the grounds that such course of action raises antitrust concerns; shall be disciplined as contemplated by the Code of Conduct.

  e. Intel will continue to enhance its existing antitrust training and education programs for Intel officers and employees, based on the recommendations made to and approved by the Compliance Committee. Such training and education may include topics related to compliance with the terms of recently-resolved antitrust proceedings, or such future settled antitrust actions or proceedings, as the Compliance Committee deems appropriate.

## 5. RELEASES

Upon Final Approval of the Settlement (as defined below), all of the Settled Claims (as defined below) by Releasing Persons (as defined below) against Released Persons (as defined below) will be completely, fully, finally and forever compromised, settled, released, discharged, extinguished and dismissed with prejudice.

"Final Approval" means the entry by the Court of an Order and Final Judgment approving the material terms of this Settlement and the latest of: (i) the expiration of the time for the filing or noticing of an appeal, writ petition, or motion for reargument or rehearing from the Order and Final Judgment without such appeal or motion having been made; (ii) the date of final affirmance of the Order and Final Judgment on any appeal or reargument or rehearing; or (iii) the final dismissal of any appeal or writ proceeding relating to the Order and Final Judgment.

"Released Persons" means each and all of the Individual Defendants, each and all of the current and former officers, directors and employees of Intel, and each and all of their respective agents, representatives, insurers, heirs, executors, personal or legal representatives, estates, administrators, predecessors, successors and assigns, and Intel as Nominal Defendant.

"Releasing Persons" means each and all of the Delaware Plaintiffs, the Related Plaintiffs, Intel and each and all of the past and present shareholders of Intel, and each and all of their respective officers, directors, employees, heirs, executors, personal or legal representatives, estates, administrators, predecessors, successors and assigns.

"Settled Claims" means all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, fees, expenses, costs, matters and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, that have been, could have been, or in the future can or might be asserted by any of the Releasing Persons derivatively on behalf of Intel (or by Intel directly) in the Delaware Action or in the Related Actions, or in any other court, tribunal or proceeding (including, but not limited to, any claims arising under federal, state or foreign statutory or common law relating to alleged fraud, misrepresentation, breach of any duty of care or loyalty, negligence, corporate waste or mismanagement, contribution, indemnification, recoupment, disgorgement, or for violations of any antitrust or competition laws or otherwise) whether legal,

equitable or any other type, which have arisen, arise now or hereafter arise out of, or relate in any manner to, the allegations, facts, events, practices, conduct, transactions, matters, acts, occurrences, statements, representations, misrepresentations or omissions, or any fees, expenses or costs incurred in prosecuting, defending or settling the Delaware Action or the Related Actions, or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved or set forth in, or referred to or otherwise related, directly or indirectly, in any way to, the Delaware Action or the Related Actions, or the subject matter of the Delaware Action or the Related Actions, and including, without limitation, any claims of a derivative nature brought on behalf of Intel (or by Intel directly) in any way related to (i) the Settlement, (ii) the fiduciary duties of the Individual Defendants or Released Persons relating to or in connection with the allegations made in the Delaware Complaint or the Related Actions, (iii) any compensation, bonus, or benefits received by any Released Persons relating to or in connection with the allegations made in the Delaware Complaint or the Related Actions; (iv) any disclosures or alleged misrepresentations or omissions that were made or allegedly not made by any of the Released Persons regarding the subject matter of the Delaware Action or the Related Actions, the Settlement or any other matters described or alleged in the Delaware Complaint or the Related Actions or the Settlement, or (v) the conduct alleged in the Antitrust Proceedings; *provided, however*, that the Settled Claims shall not include the right to enforce the terms of the Settlement. Nothing herein shall be construed to release any claim or cause of action asserted (a) by any governmental body in any pending litigation against Intel or (b) by any Intel shareholders in any pending class action against Intel.

In addition, under the terms of the Settlement, all claims that have been or could have been asserted by any Individual Defendant or any other Released Person against the Delaware Plaintiffs or the Related Plaintiffs or any of their counsel which arise out of or in any way relate to the institution, prosecution or settlement of the Delaware Action or the Related Actions will be completely, fully, finally and forever compromised, settled, released, discharged, extinguished and dismissed with prejudice.

The releases contemplated by the Settlement extend to claims that the Releasing Persons do not know or suspect to exist at the time of the release, which if known by the Delaware Plaintiffs, plaintiffs in the Related Actions, or Intel might have affected their decisions to enter into the release, or might have affected any other Intel stockholder's decision not to object to the Settlement. Although the parties do not in any way concede that any law other than the law of the State of Delaware governs the Settlement, the Releasing Persons will be deemed upon Final Approval by operation of the Order and Final Judgment, described below, to have waived and relinquished the provisions, rights and benefits of §1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

In addition, the Releasing Persons will be deemed, upon Final Approval by operation of the Order and Final Judgment, to have waived and relinquished any and all provisions, rights and benefits of any law of any state or territory of the United States, federal law, foreign law or principle of common law, which is similar, comparable or equivalent to §1542 of the California Civil Code. The Releasing Persons may hereafter discover facts in addition to or different from those now known or believed to be true with respect to the Settled Claims, but the Releasing Persons shall, upon Final Approval by operation of the Order and Final Judgment, be deemed to have completely, fully, finally and forever compromised, settled, released, discharged and extinguished any and all Settled Claims known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of additional or different facts. The foregoing waiver was separately bargained for and is a key element of the Settlement.

## 6. ORDER AND FINAL JUDGMENT OF THE COURT

If the Court determines that the Settlement, as provided for in the Stipulation, is fair, reasonable, and adequate and in the best interests of Intel and its shareholders, the parties shall jointly request that the Court enter an Order and Final Judgment. The Order and Final Judgment shall, among other things:

    a. approve the Settlement as fair, reasonable, adequate and in the best interests of Intel and Intel's shareholders;

    b. direct the performance of the Settlement in accordance with its terms and conditions and reserve jurisdiction to supervise the consummation of the Settlement;

    c. determine that the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process have been satisfied in connection with the notice to Intel's shareholders;

      d.      dismiss the Delaware Action with prejudice on the merits, extinguishing, discharging and releasing any and all Settled Claims, and permanently barring Delaware Plaintiffs, Intel's past or present shareholders, Intel, and anyone claiming through or for the benefit of any of them, from asserting, commencing, prosecuting, assisting, instigating or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Settled Claims;

      e.      extinguish, discharge and release any and all claims that have been or could have been asserted by any Individual Defendant or any other Released Person against the Delaware Plaintiffs or any of their counsel which arise out of or in any way relate to the institution, prosecution or settlement of the Delaware Action; and

      f.      determine the Delaware Plaintiffs' application and the Related Plaintiffs' application for an award of attorneys' fees and out-of-pocket expenses incurred in connection with the Delaware Action and the Related Actions

## 7. PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND EXPENSES

Intel agrees that it will pay to Delaware Plaintiffs' Counsel and Related Plaintiffs' Counsel up to the following amounts in attorneys' fees and expenses, as ordered by and subject to the approval of the Court (the "Fee and Expense Award"):

    a. to Delaware Plaintiffs' Counsel and to counsel in the Paris Action, collectively, up to $1,800,000 in attorneys' fees and expenses; and

    b. to Rosenfeld's Counsel, up to $850,000 in attorneys' fees and expenses.

The Delaware Plaintiffs and the Related Plaintiffs and their respective counsel agree that they will not request that the Court approve payment of attorneys' fees and expenses in excess of the amounts provided above, and they further agree that they will not seek an award of attorneys' fees and expenses in any of the Related Actions. Defendants agree not to oppose an application by the Delaware Plaintiffs and the Related Plaintiffs and their respective counsel for such approval in amounts no greater than set forth above. Approval by the Court of the Fee and Expense Award shall not be a precondition to approval of the Settlement or dismissal of the Delaware Action or the Related Actions in accordance with the Settlement. The Delaware Plaintiffs, the Related Plaintiffs and their respective counsel may not cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to attorneys' fees and/or expenses. Any appeal relating to an award of attorneys' fees or expenses will not affect the finality of the Settlement, the Order and Final Judgment or the releases provided herein. The application for a Fee and Expense Award may be considered separately from the proposed Settlement.

## 8. SETTLEMENT HEARING

The Court has scheduled a Settlement Hearing which will be held on _____, 2010 at ____ _.m., at the United States Courthouse, 844 N. King Street, Wilmington, Delaware 19801 to:

(i) determine whether the Court should approve the Settlement pursuant to Federal Rule of Civil Procedure 23.1 as fair, reasonable, adequate and in the best interests of Intel and its shareholders;

(ii) determine whether to enter an Order and Final Judgment, as described above;

(iii) consider and determine whether to enter an award of attorneys' fees and expenses to Delaware Plaintiffs' Counsel and Related Plaintiffs' Counsel; and

(iv) consider such other matters as the Court deems appropriate.

The Court has reserved the right to adjourn the Settlement Hearing or any adjournment thereof, including the consideration an award of attorneys' fees, without further notice of any kind other than oral announcement at the Settlement Hearing or any adjournment thereof. The Court has also reserved the right to approve the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties to the Stipulation and without further notice to Intel shareholders.

## 9. RIGHT TO APPEAR AND OBJECT

Any Intel shareholder who objects to the Settlement, the Order and Final Judgment to be entered in the Delaware Action, and/or the applications by Delaware Plaintiffs' Counsel and Related Plaintiffs' Counsel for an award of attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant; provided, however, that, except for good cause shown, no person shall be heard and no papers, briefs, pleadings or other documents submitted by any person shall be considered by the Court unless not later than ten (10) business days prior to the Settlement Hearing such person files with the Court and serves upon counsel listed below: (a) a written notice of intention to appear; (b) proof of ownership of Intel stock; (c) a statement of such person's objections to the Settlement, or any related matters before the Court; and (d) the grounds for such objections and the reasons that such person desires to appear and be heard, as well as all documents or writings such person desires the Court to consider. Such filings shall be served upon the following counsel:

>Laurence D. Paskowitz, Esq.
>PASKOWITZ & ASSOCIATES
>60 East 42nd St., Suite 4600
>New York, NY 10165

>and

>Jeffrey C. Block, Esq.
>BERMAN DEVALERIO
>One Liberty Square
>Boston, MA 02109

>Co-Lead Counsel for the Delaware Plaintiffs

>and

>Jonathan C. Dickey, Esq.
>GIBSON, DUNN & CRUTCHER LLP
>200 Park Avenue, 47th Floor
>New York, NY 10166

>Attorneys for Intel and the Individual Defendants other than D. James Guzy

>and

>Kim David Staskus, Esq.
>LAW OFFICES OF KIM DAVID STASKUS, P.C.
>1631 Willow Street, Suite 100
>San Jose, CA 95125
>Attorneys for Defendant D. James Guzy

Unless the Court otherwise directs, no person shall be entitled to object to the approval of the Settlement, any judgment entered thereon, any award of attorneys' fees, or otherwise be heard, except by serving and filing a written objection and supporting papers and documents as prescribed above. Any person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding.

**10. NOTICE TO PERSONS OR ENTITIES HOLDING OWNERSHIP ON BEHALF OF OTHERS**

Brokerage firms, banks and/or other persons or entities who held shares of the common stock of Intel as of May 25, 2010 for the benefit of others are directed promptly to send this Notice to all of their respective beneficial owners. If additional copies of the Notice are needed for forwarding to such beneficial owners, any requests for such copies may be made to:

>Intel Corp. Noticing Administrator
>C/O Kurtzman Carson Consultants, LLC
>P.O. Box 56798

Jacksonville, FL 32241-6798

Email: SecuritiesNotice@kccllc.com

**11. SCOPE OF THIS NOTICE**

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Delaware Action, the Stipulation and other papers and proceedings are only summaries and do not purport to be comprehensive. For the full details of the Delaware Action, the claims and defenses which have been asserted by the parties and the terms and conditions of the Settlement, including a complete copy of the Stipulation, Intel shareholders are referred to the Court files in the Delaware Action. **DO NOT CALL THE COURT.** Inquiries or comments about the Settlement may be directed to the attention of Delaware Plaintiffs' Counsel as follows:

Laurence D. Paskowitz, Esq.
PASKOWITZ & ASSOCIATES
60 East 42nd St., Suite 4600
New York, NY 10165

and

Jeffrey C. Block, Esq.
BERMAN DEVALERIO
One Liberty Square
Boston, MA 02109

Co-Lead Counsel for the Delaware Plaintiffs