# EXHIBIT 10

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Jonathan C. Dickey
Direct: 212.351.2399
Fax: 212.351.6399
JDickey@gibsondunn.com

Client: T 42376-00856

June 15, 2010

BY E-MAIL AND OVERNIGHT COURIER

Kevin A. Seely, Esq.
Robbins Umeda LLP
600 B Street, Suite 1900
San Diego, CA 92101

Re:  Intel Corporation

Dear Mr. Seely:

I write in response to your letter dated June 14, 2010.  We have several items we wish to address.

First, thank you for sending us the documentation confirming your client's continuing ownership of Intel shares, as we first requested in our letter dated June 4, 2010.  As you can appreciate, it is a statutory requirement that your client have standing to make your May 28 Inspection Demand, and that was the basis for our request for such documentation.  Likewise, to the extent your client purports to be an "objector" to the proposed settlement (a role that your June 14 letter does not disclaim), Ms. Del Gaizo's status as a continuing shareholder of Intel also is a matter of standing.  Hence, we requested that same confirmation before we began producing documentation to you in response to your June 10 letters.  We appreciate your supplying that information to us.

Second, your letter suggests there is something "troubling" by the fact that I have chosen to respond to your four letters dated June 10.  Since the four letters all request the same information, and much of that information is in the exclusive possession of Intel, it made practical sense for Intel to provide a single response to your four letters.  I trust that this puts to rest any concerns you have about receiving one letter instead of four in response to your June 10 letters.

Third, this will confirm that yesterday at approximately 6:30 pm Pacific, I emailed you that, once we have executed the Confidentiality Agreement, we can begin making documents available to you in our Palo Alto office beginning on Wednesday, June 16.  I also stated in my email that these documents are not to be copied, consistent with the agreement we reached with the Delaware plaintiffs' counsel with respect to the same discovery materials.  By this letter, we are designating all of the discovery materials that we make available to you in Palo Alto as "Confidential Inspection Material," as that term is defined in the Confidentiality Agreement attached hereto.  Other discovery materials will be sent to you via email, and all such materials likewise are deemed to be "Confidential Inspection Material."

# GIBSON DUNN

Fourth, among the confidential documents we will make available to you in Palo Alto is the Company's primary D&O insurance policy, which is "Side A only" coverage. This document, like the other documents we plan to make available to you in Palo Alto, is not to be copied.

Fifth, with regard to your several questions regarding the EC Decision, please find attached the correspondence I previously sent to Delaware plaintiffs' counsel on this subject, dated December 16, 2009.

Sixth, with regard to your Inspection Demand, we can send you the materials referenced in my June 4 letter upon receiving your confirmation in writing that such production will be subject to the prior confidentiality agreement dated August 28, 2008.

Finally, we reserve all other arguments with respect to the other statements in your letter. Pleased be advised, however, that your several references to our prior settlement communications are in violation of the terms of the written confidentiality agreement you entered into with us on May 6, 2010. Any disclosure of our prior settlement communications will be subject to challenge.

Very truly yours,

Jonathan C. Dickey

JCD/mrk

# EXHIBIT 11

# ROBBINS UMEDA & FINK, LLP

## ATTORNEYS AT LAW

BRIAN J. ROBBINS*
MARC M. UMEDA
JEFFREY P. FINK
FELIPE J. ARROYO
GEORGE C. AGUILAR
BENJAMIN ROZWOOD

610 WEST ASH STREET, SUITE 1800
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 525-3990
FACSIMILE (619) 525-3991

STEVEN J. SIMERLEIN
KEVIN A. SEELY†
CAROLINE A. SCHNURER
MARK A. GOLOVACH
LOUIS A. KERKHOFF
SHANE P. SANDERS
REBECCA A. PETERSON
ASHLEY R. PALMER
JILL E. KLEMANN
DANIEL R. FORDE
ARSHAN AMIRI
JULIA M. WILLIAMS
GREGORY E. DEL GAIZO

*Admitted in CA & CT
†Admitted in CA, CNMI & Guam

March 18, 2008

**VIA CERTIFIED U.S. MAIL**

Board of Directors
Intel Corporation
2200 Mission College Boulevard
Santa Clara, CA 95054

> Re:  *Inspection Demand of Intel Corporation's Books and Records Under California Corporations Code §1601, et seq.*

Dear Board of Directors of Intel Corporation:

We represent Christine Del Gaizo, the owner of outstanding voting shares of Intel Corporation ("Intel" or the "Company") common stock. We are writing on her behalf to submit the below-discussed demand to inspect certain books and records of Intel pursuant to California Corporations Code §1601, *et seq.* In her capacity as an Intel shareholder, our client has an absolute right under §1601(a) to review, copy and make extracts of Intel's books and records for any proper purpose reasonably related to her interest as a shareholder. As her counsel, we are also authorized under this statute to undertake such an inspection on her behalf. *Id.* §1601(b).

Mrs. Del Gaizo brings her demand for the proper purposes of investigating potential improper conduct by certain officers and directors of Intel relating to their management of the Company, as well as to be able to make informed decisions about her holdings in Intel. Mrs. Del Gaizo is concerned about the recent reports regarding Intel's monopolistic practices aimed at excluding competitor Advanced Micro Devices, Inc. ("AMD") from the microprocessor market and the international investigations and regulatory and civil actions that have occurred as a result. Further, Mrs. Del Gaizo is concerned that Intel failed to disclose or materially misrepresented that material portions of the Company's revenue were generated from practices that violated the anti-trust laws in the United States and other countries.

Based on these concerns, Mrs. Del Gaizo demands to inspect the following Intel corporate books and records related to the above-mentioned proper purposes:

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are provided in the spirit of good faith and cooperation to assist Intel in assembling the requested documents for inspection and copying.

1.     The term "AMD" means Advanced Micro Devices, Inc., all entities merged with or acquired by Advanced Micro Devices, Inc., its agents, employees and other persons acting or purporting to act on its behalf, or on behalf of its affiliates, parent corporations, subsidiary corporations or joint ventures.

2.     The term "Board" means Intel's past or present Board of Directors.

3.     The term "competitor" means any entity other than Intel buying or selling products or services in the same market as Intel, including, but not limited to, AMD.

4.     The term "customer" means as past, present or potential entity that purchases products or services that Intel offers.

5.     The term "documents" has the same meaning as "writings," as that term is defined in California Evidence Code Section 250 including all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, without limitation, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "documents" also includes, without limitation, preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

6.     The term "Intel" means Intel Corporation, all entities merged with or acquired by Intel Corporation, its agents, employees, and other persons acting or purporting to act on its behalf, or on behalf of its affiliates, parent corporations, subsidiary corporations or joint ventures.

7.     Unless otherwise indicated, the relevant time period for each request shall be from January 1, 2000 through the present.

## SPECIFIC DEMANDS FOR INSPECTION

1.     All documents concerning any:

(a)     agreements between Intel and its customers designed to ensure exclusive or near-exclusive arrangements with Intel to supply products or services;

(b)     conditioning of rebates, allowances, discounts, subsidies and/or market development funding on Intel's customers' agreements to limit purchases from Intel's competitors, including but not limited to AMD;

(c)     plan, policy or procedure by Intel designed to penalize, punish or retaliate against any Intel customer that conducts business with Intel's competitors, including but not limited to AMD;

(d)     plan, policy or procedure by Intel designed to penalize, punish or retaliate against any Intel customer that refuses to limit their business with Intel's competitors, including but not limited to AMD, to products or services that Intel approves;

(e)     retroactive, first-dollar rebates for Intel's customers; and

(f)     establishment and/or enforcement by Intel of quotas for its customers concerning Intel's products or services.

2.     All documents concerning any review, investigation, evaluation or assessment that was contemplated, planned or performed by Intel or on Intel's behalf concerning the allegations made by AMD, the New York State Attorney General, the European Commission, the Japan Fair Trade Commission and/or the Korea Fair Trade Commission that Intel improperly prevented or limited its customers use of Intel's competitors' products or services, including, but not limited to, reports, memoranda, notes, interviews taken and any statements made in the course of any investigation, evaluation or assessment.

3.     All documents provided to or received from any governmental or regulatory agency, whether domestic or foreign, concerning any investigation, inquiry or examination concerning Intel's alleged practice of preventing or limiting its customers use of its competitors' products or services, including, but not limited, any investigation by the New York State

Attorney General, the European Commission, the Japan Fair Trade Commission and the Korea Fair Trade Commission.

We believe that an inspection of the foregoing documents will be sufficient to satisfy Mrs. Del Gaizo's proper purposes of allowing her to effectively investigate possible wrongdoing at the Company, formulating an informed assessment of the Board, and making meaningful decisions about her Intel stock holdings.

We are, of course, sensitive to concerns that Intel may have regarding the confidentiality of documents that we inspect on behalf of our client. As a result, we are prepared to work with you to structure a mutually acceptable stipulation to protect the confidentiality of these documents.

Additionally, if Intel believes that a certain requested document is subject to the attorney-client privilege or other privilege that may preclude disclosure, we ask that you identify such document with sufficient particularity so that we may independently evaluate the assertion of such privilege.

We ask that the Board respond to this demand no later than March 28, 2008. We appreciate your diligent attention to this matter.

Very truly yours,

MARC M. UMEDA

MMU/bg

# EXHIBIT 12

# ROBBINS UMEDA & FINK, LLP

## ATTORNEYS AT LAW

BRIAN J. ROBBINS*
MARC M. UMEDA
JEFFREY P. FINK
FELIPE J. ARROYO
GEORGE C. AGUILAR
S. BENJAMIN ROZWOOD
KEVIN A. SEELY†
CRAIG W. SMITH

610 WEST ASH STREET, SUITE 1800
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 525-3990
FACSIMILE (619) 525-3991

STEVEN J. SIMERLEIN
CAROLINE A. SCHNURER
MARK A. GOLOVACH
LOUIS A. KERKHOFF
SHANE P. SANDERS
REBECCA A. PETERSON
ASHLEY R. PALMER
DANIEL R. FORDE
ARSHAN AMIRI
JULIA M. WILLIAMS
GREGORY E. DEL GAIZO

*Admitted in CA & CT
†Admitted in CA, CNMI & Guam

June 17, 2008

**VIA CERTIFIED U.S. MAIL & FACSIMILE**
(212) 351-6399

Jonathan C. Dickey
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

> Re: *Inspection Demand of Intel Corporation Pursuant to Corporations Code §1601*

Dear Mr. Dickey:

Thank you for your most recent letter detailing Intel's inspection offer. If Intel agrees to allow copies to be made of the Board's meeting minutes during the inspection, our client will agree to Intel's offer on the rest of its terms, without waiving any of her rights or arguments concerning her entitlement to her prior inspection requests. In making this request, it is important to note that both Delaware and California law allow copies of a Company's books to be made. *See* Cal. Corp Code §1601; Del. Code Ann. 8, § 220. Also, in order to be clear, a representative from our firm would conduct the actual inspection of the meeting minutes.

In a related manner, recent events concerning Intel's monopolistic practices has made it all the more imperative that Intel protect its rights against those that have harmed the Company by causing it to engage in illegal activity. Our client, therefore, renews her request that the Company enter into tolling agreements during the pendency of our inspection with the following persons, whom we believe were involved in or failed to correct Intel's monopolistic practices in breach of their fiduciary duties: Craig R. Barrett, Paul S. Otellini, Andy D. Bryant, Anand Chandrasekher, Eric B. Kim, Sean M. Maloney, D. Bruce Sewell, Stacy J. Smith, Charlene Barshefsky, Carol A. Bartz, Susan L. Decker, D. James Guzy, Reed E. Hundt, James D. Plummer, David S. Pottruck, Jane E. Shaw, John

L. Thornton and David B. Yoffie.  If Intel fails to enter into tolling agreements by June 25, 2008 with these individuals, our client will be forced to file a derivative complaint on behalf of the Company against these named persons to preserve the Company's rights.

Very truly yours,

MARC. M. UMEDA

MMU/GDG/hla

# EXHIBIT 13

# GIBSON, DUNN & CRUTCHER LLP

## LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

JDickey@gibsondunn.com - Admitted in California Only

June 23, 2008

<table>
<tr><td>Direct Dial<br>(212) 351-2399</td><td>Client No.<br>T 42376-00859</td></tr>
<tr><td>Fax No.<br>(212) 351-6399</td><td></td></tr>
</table>

<u>BY E-MAIL AND U.S. MAIL</u>

Marc M. Umeda, Esq.
Robbins Umeda & Fink, LLP
610 West Ash Street, Suite 1800
San Diego, California 92101

      Re:    *Intel/Del Gaizo*

Dear Mr. Umeda:

     I write in response to your June 17 letter. We must respectfully decline your invitation that the entire Board of Directors of Intel Corporation, its general counsel, and a list of other present and former officers and employees of the company, enter into a tolling agreement with your client over unspecified wrongdoing.

     As we have discussed in prior correspondence, we cannot discern a proper purpose for your client's inspection demands. Your threat to file a derivative suit against the individuals identified in your latest letter merely underscores our stated concerns, and confirms to us that your client's agenda all along has been to sue someone, anyone, regardless of fault. Accordingly, Intel also does not intend to indulge Mrs. Del Gaizo's inspection demands if you sue the company's directors and officers in the meantime. Indeed, we assume (as we must) that if you file a lawsuit, it is because you believe you have sufficient facts upon which to base any claims you assert. In that event, we cannot understand how an "inspection demand" would constitute anything other than an improper fishing expedition, and a thinly disguised attempt to engage in discovery for your court case, without first establishing your client's standing to sue, or otherwise complying with the discovery rules of whatever court may have proper jurisdiction over your client's claims. For all these reasons, if you choose to file suit, our position is that your client's inspection demand is moot.

# GIBSON, DUNN & CRUTCHER LLP

Notwithstanding your threat of litigation, we will abide by our offer as set forth in my letter of June 13, if and when you provide us the information and documentation described in Paragraph 1 of my June 13 letter concerning Mrs. Mrs. Del Gaizo's share ownership. As a further accommodation, we will permit you, at your own expense, to designate some or all of the minutes for copying at the time of inspection. Each copy with be clearly marked as "Confidential" when we provide such copies to you. Intel reserves its right to withhold such documents, and terminate the inspection demand process, if litigation is commenced prior to the time that we otherwise would be sending you copies of the documents in question.

Please feel free to contact me with any questions.

Very truly yours,

Jonathan Dickey

JCD/dcm

EXHIBIT 14



ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CA 94105-2669

*tel* 415-773-5700
*fax* 415-773-5759
WWW.ORRICK.COM

November 30, 2009

Michael D. Torpey
(415) 773-5932
mtorpey@orrick.com

*VIA FEDERAL EXPRESS*

Kevin A. Seely, Esq.
Robbins Umeda LLP
600 B Street, Suite 1900
San Diego, CA 92101

Re:     Intel Corporation – Christine Del Gaizo's Shareholder Demand

Dear Mr. Seely:

I write as a follow up to our earlier letters dated July 22, 2009, August 17, 2009 and October 6, 2009. As you know, on July 8, 2009, your client, Dr. Christine Del Gaizo, made a Shareholder Demand on Intel Corporation's ("Intel" or the "Company") Board of Directors to investigate certain claims, initiate appropriate legal action, and take necessary and appropriate remedial measures to ensure that the Corporation is protected from further harm in connection with what you have characterized as Intel's anticompetitive business practices.

As we explained when we met with you on October 28, 2009, the Board asked that the Audit Committee review and consider Dr. Del Gaizo's demand. We appreciate the time you took to meet with us regarding these issues generally and your client's concerns specifically. We also appreciate the presentation you prepared for our meeting. We have relayed the various concerns you expressed during our meeting to the Audit Committee.

The Audit Committee reported to the Board at its recent Board meeting held on November 11, 2009. After due consideration, at the recommendation of the Audit Committee, the Board has decided to defer any determination regarding Dr. Del Gaizo's demand. In considering the Audit Committee's recommendation, the Board considered the following factors, among others:

- That the issues raised in the underlying matters (including, among others, those which you mention in your demand letter), are legally and factually complex and the Company would benefit from additional administrative and judicial proceedings in connection with those questions;

- The factual records in the underlying matters are not yet fully developed, and the Company expects further factual development in additional proceedings and believes it will benefit from a more fully developed factual record;



ORRICK

- The issues raised in the demand are legally and factually intertwined with those of ongoing underlying matters and any action by the Company at this time could unnecessarily expose the Company to liability, including potential liability in the underlying matters;

- Any further action on Dr. Del Gaizo's demand at this time could have an adverse effect on the Company's business; and

- Any action against the Company's directors and officers would require the Company to indemnify them for the substantial costs and expenses (including attorneys' fees) they would incur in defending the actions which the Company does not believe is appropriate at this time.

As you know, prior to making this demand, you filed on behalf of Dr. Del Gaizo a shareholder derivative action entitled *Del Gaizo v. Otellini, et al.*, Case No. 1-08-CV-116137, pending in Santa Clara Superior Court (filed on June 27, 2008). This action names a number of current and former Intel Board members and officers as well as "Doe defendants." The Audit Committee and the Board have been apprised that it is your position that the statute of limitations was tolled by this action.

The Board will continue to monitor the underlying antitrust matters.

Please do not hesitate to contact me at (415) 773-5932 or Amy Ross at (415) 773-5723 if you would like to discuss this matter further.

Very truly yours,

Michael D. Torpey

# EXHIBIT 15

**FILED SEPARATELY UNDER SEAL**

# EXHIBIT 16

**FILED SEPARATELY UNDER SEAL**

EXHIBIT 17

# ROBBINS UMEDA & FINK, LLP

## ATTORNEYS AT LAW

BRIAN J. ROBBINS*
MARC M. UMEDA
JEFFREY P. FINK
FELIPE J. ARROYO
GEORGE C. AGUILAR
S. BENJAMIN ROZWOOD
KEVIN A. SEELY†
CRAIG W. SMITH

610 WEST ASH STREET, SUITE 1800
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 525-3990
FACSIMILE (619) 525-3991

STEVEN J. SIMERLEIN
CAROLINE A. SCHNURER
MARK A. GOLOVACH
LOUIS A. KERKHOFF
SHANE P. SANDERS
REBECCA A. PETERSON
ASHLEY R. PALMER
DANIEL R. FORDE
ARSHAN AMIRI
JULIA M. WILLIAMS
GREGORY E. DEL GAIZO
DAVID L. MARTIN

*Admitted in CA & CT
†Admitted in CA, CNMI & Guam

July 8, 2008

**VIA ELECTRONIC MAIL & FACSIMILE**
(212) 351-6399

Jonathan C. Dickey
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

     Re:   *Inspection Demand of Intel Corporation Pursuant to Corporations Code §1601*

Dear Mr. Dickey:

     Thank you for your letter dated June 23, 2008 regarding the above-referenced matter. We appreciate your offer to allow our client to at least review (and copy, if necessary) certain limited books and records of Intel. Although we are concerned by the narrow scope of your offer, we would like to take you up on that offer if it is still available to our client. As you are aware, our client filed a derivative action on behalf of Intel against certain current and former officers and directors of the Company. According to your June 23rd letter, Intel's offer would be revoked if litigation were initiated. The main purpose of this letter is to ask that you reconsider your position in this regard. To that end, if the offer is still open, we are willing to provide a declaration (or other documentation) indicating that our client has owned Intel shares for several years.

     In your letter, you correctly assume that since our client filed a derivative action, she has sufficient facts to support the claims asserted. The complaint allegations regarding Intel's illegal business practices are extremely detailed. You are incorrect, however, in your assumption that our client's inspection demand is now moot. *See Khanna v. Covad Commc'ns Group, Inc.*, No. 20481-NC, 2004 WL 187274, *4 (Del. Ch. Jan. 23, 2004) ("merely because [the shareholder's] counsel concluded that they had sufficient information to file a complaint does not preclude the possibility, or

even the likelihood, that additional information to which [the shareholder] may otherwise be entitled, would bolster his response...").[1] A shareholder's right to inspect a corporation's books and records "exists and persists without regard to the pendency of an action brought by him against the corporation. It is a right distinct and apart from litigation." *State ex rel. Foster v. Standard Oil Co. of Kansas*, 18 A.2d 235, 238 (Del. 1941). In fact, in one recent case, the Delaware Court granted shareholders their broad inspection requests for the express purpose of amending their complaint to better allege that demand upon the board would have been futile. *Melzer v. CNET Networks, Inc.*, 934 A.2d 912 (Del. Ch. 2007).

Further, it is the Company's failure to comply with its statutory obligations that has created this situation. Your client cannot avoid its statutory and common law obligations by engaging in dilatory tactics. *Khanna*, 2004 WL 187274, at *4. As the court in *Khanna* stated,

> [The company's] suggestion that a shareholder's rights under [Del. Code Ann. 8] Section 220 lapse when the substantive litigation is filed would, if accepted, encourage corporations to shirk their Section 220 duties and to engage in dilatory conduct in the hopes that the passage of time-and the need for the potential plaintiff to move forward with his litigation-would allow them to avoid their obligations altogether.

*Id.* A company cannot force a shareholder to wait for an appropriate production, to the detriment of his case. *Id.* at *4 n.10.

In this matter, Intel attempted to force our client to choose between filing a complaint to protect the Company's interests, or wait for Intel to allow her to inspect documents which, by that time, would concern a possibly time-barred claim. Forcing such a choice on a shareholder is improper, especially in situations such as this, where the shareholder asked to inspect documents months before filing a complaint. *See Id.* at *1, 3 (wherein plaintiff made an inspection demand in June and filed a complaint in August).

Our client gave Intel several opportunities to comply with its inspection demand obligations. Intel has thus far shirked its duties and engaged in dilatory conduct in apparent hope of avoiding its obligations. Even under Delaware law, which a California court will find persuasive, our client is still entitled to inspect the Company's books and records, even after initiating litigation, and particularly, under the facts relevant here. *See Id.* at *5.

In conclusion, our client reiterates her earlier demand that Intel make available the requested books and records. She reserves all of her rights associated with her initial demand, including her

---

[1] While unpublished California decisions cannot be cited or relied upon, "[o]pinions from other jurisdictions can be cited without regard to their publication status." *See Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070, 1077 (2004). (citations omitted). Further, in Delaware, unpublished decisions are given precedential value. *See* Del. Sup. Ct. Rule 17(a) commentary; *New Castle County v. Goodman*, 461 A.2d 1012, 1013 (Del. 1983).

right to pursue enforcement of her inspection demand. While reserving our client's rights to enforce her initial document request, if it becomes necessary, our client is willing to accept, at this time, your offer as stated in your letter of June 23, 2008, in a good-faith effort to try and avoid litigation regarding this inspection demand matter. If your client refuses to allow our client's representatives to inspect at least the Intel books and records outlined in your June 23rd offer letter, it seems that our client is left with no reasonable alternative but to file a Verified Petition for Writ of Mandate to Compel Inspection of Books and Records of Intel Corporation, pursuant to Cal. Corp. Code §§1601, *et seq.*

Please let us know at your earliest convenience if we have an agreement in this regard. If we do not hear from you otherwise, by ***Friday, July 11, 2008***, we will presume that you continue to believe that our client is not entitled to her right of inspection. Thank you for your attention to this matter. We look forward to hearing from you soon.

Very truly yours,

KEVIN A. SEELY

KAS/cll

cc:    Marc M. Umeda, Esq.

# EXHIBIT 18

# GIBSON, DUNN & CRUTCHER LLP

## LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com

JDickey@gibsondunn.com

September 3, 2008

Direct Dial
(212) 351-2399
Fax No.
(212) 351-6399

Client No.
T 42376-00859

VIA FEDERAL EXPRESS

Kevin A. Seely, Esq.
Robbins Umeda & Fink, LLP
610 West Ash Street, Suite 1800
San Diego, California 92101

      Re:    *Inspection Demand of Intel Corporation Pursuant to California
Corporations Code § 1601*

Dear Mr. Seely:

      Pursuant to our agreement, please find enclosed copies of the minutes of Intel
Corporation's board of directors' meetings from 2000 to the present relating to the board's
oversight of antitrust compliance policies and procedures, or its oversight of antitrust
investigations or antitrust legal proceedings. The documents are bates stamped "I0000001"
through "I0000271" and are designated confidential pursuant to the Confidentiality and Non-
Disclosure Agreement dated August 28, 2008.

      Very truly yours,

      *Jonathan Dickey*

Jonathan Dickey

JCD/net
Enclosure

100511046_1.DOC