IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. DERIVATIVE LITIGATION | C.A. No. 1:09-cv-867-JJF |

**MEMORANDUM OF LAW IN SUPPORT OF THE RELATED PLAINTIFFS'
APPLICATION FOR FINAL APPROVAL OF THE SETTLEMENT**

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
919 N. Market Street, Suite 980
Wilmington, Delaware 19899
(302) 295-5310

WEISS & LURIE
Joseph H. Weiss
David C. Katz
551 Fifth Avenue
New York, NY 10176
(212) 682-3025

STULL, STULL & BRODY
Jules Brody
6 East 45th Street
New York, NY 10017
(212) 687-7230

*Related Plaintiffs' Counsel*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..............................................................................................................................3

I.     THE STANDARD FOR JUDICIAL APPROVAL
      OF DERIVATIVE SETTLEMENTS ................................................................................3

II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
      ADEQUATE AND SHOULD BE APPROVED ..............................................................5

        A.    The Litigations' Likelihood of Success is Uncertain................................................6

        B.    Complexity, Expense And Likely Duration of the Litigation
            Weigh in Favor of Approval .....................................................................................7

        C.    Reaction of Intel's Shareholders to the Settlement....................................................8

        D.    The Stage of the Proceedings and the Amount of Discovery
            Completed Weigh in Favor of Approval ..................................................................9

        E.    The Risks of Establishing Liability Weigh in Favor of Approval ...........................9

        F.    The Risk of Proving Damages and Causation Weighs
            in Favor of Approval................................................................................................10

        G.    The Ability of Defendants to Withstand a Greater Judgment
            Weighs in Favor of Approval ..................................................................................10

        H.    The Settlement is Reasonable in Light of the Best
            Possible Recovery and All Attendant Risks of Litigation .....................................11

        I.    The Settlement is the Product of Arm's Length
            Negotiations Among Experienced Counsel ...........................................................11

CONCLUSION..........................................................................................................................13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ace Heating & Plumbing Co. v. Crane Co.*,
   453 F.2d 30 (3d Cir. 1971) ...................................................................................3

*In re Aetna Inc. Sec. Litigation*,
   2001 U.S. Dist. LEXIS 68 (E.D. Pa. 2001) ............................................................7

*In re Austrian & German Bank Holocaust Litigation*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236
   F.3d 78 (2d Cir. 2001) ...........................................................................................8

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) ........................................................................... *passim*

*In re Cendant Corp. Deriv. Litig.*,
   232 F. Supp. 2d 327 (D.N.J. 2002) ........................................................................8

*In re Cendant Corp. Litigation*,
   264 F.3d 286 (3d Cir. 2001) ..............................................................................6, 7

*In re Chambers Development Sec. Litigation*,
   912 F. Supp. 822 (W.D. Pa. 1995) .........................................................................8

*In re Computron Software, Inc., Sec. Litigation*,
   6 F. Supp. 2d 313 (D.N.J. 1998) ............................................................................8

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...............................................................................6

*Davies v. Continental Bank*,
   122 F.R.D. 475 (E.D. Pa. 1988)..............................................................................3

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995) .....................................................................................3

*Fisher Brothers v. Phelps Dodge Industrial, Inc.*,
   604 F. Supp. 446 (E.D. Pa.  1985) ..................................................................3, 12

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*,
   55 F.3d 768 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995)..........................3, 4

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ................................................................................3, 6, 9, 11

*Granada Investments, Inc. v. DWG Corp.*,
    823 F. Supp. 448 (N.D. Ohio 1993) ................................................................................7

*Grier v. Chase Manhattan Automotive Finance Co.*,
    2000 U.S. Dist. LEXIS 1339 (E.D. Pa. Feb. 16, 2000) ....................................................4

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*,
    855 F. Supp. 825 (E.D.N.C. 1994) ................................................................................10

*In re Ikon Office Solutions, Inc. Sec. Litigation*,
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................7, 12

*In re Prudential Insurance Co. of America Sales Practice Litigation Agent Actions*,
    148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) ...................................8

*In re Rite Aid Corp. Sec. Litigation*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) .............................................................................12

*In re Safety Components, Inc. Sec. Litigation*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................................................7

*In re Schering-Plough/Merck Merger Litigation*,
    2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) ...................................................11

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) .............................................................................................9

*Walsh v. Great Atlantic & Pac. Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) ........................................................................................3, 4

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................................................6

## STATE CASES

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) .................................................................................................7

*In re Caremark International Inc. Deriv. Litigation*,
    698 A.2d 959 (Del. Ch. 1999) ..........................................................................................6

*Spiegel v. Buntrock*,
    571 A.2d 767 (Del. 1990) ............................................................................................... 7

## STATUTES

Fed.R.Civ.P. 23.1(c) ............................................................................................................ 1

The Rosenfeld Family Foundation and Martin Smilow (the "Related Plaintiffs"), shareholders of Intel Corporation ("Intel" or the "Company") who are parties to the stipulation settling this derivative litigation and who had a material and active role in proposing, negotiating and securing for Intel the substantial corporate governance and antitrust compliance measures and benefits conferred by the derivative litigation settlement, as more fully set forth herein, respectfully submit this memorandum in support of their application for final approval of the Settlement pursuant to the Stipulation of Settlement dated May 25, 2010 (the "Stipulation") (Doc. 51),[1] this Court's Scheduling Order filed on June 3, 2010 (the "Scheduling Order") (Doc. 55), and Fed.R.Civ.P. 23.1(c).

## PRELIMINARY STATEMENT

After extensive arm's-length settlement negotiations over the course of many months, the parties have entered into the Stipulation of Settlement setting forth the terms of the Settlement concerning the claims asserted in the various litigations.[2]

As discussed in the parties' submissions, the Settlement Agreement is fair, reasonable and adequate, and is in the best interests of Intel and its shareholders. The Settlement Agreement provides for extensive corporate governance policies and antitrust compliance measures to be adopted and enforced by Intel by order of this Court, resulting in a substantial benefit to the Company and its shareholders, on whose behalf the various litigations were brought. This relief is more than adequate in light of the costs and risks to the parties associated with continuing the litigations. That only three Intel shareholders out of more than 1.6 million notices disseminated objected to the Settlement, confirms its fairness and adequacy.

---

[1] All capitalized terms are as defined in the Stipulation unless otherwise indicated.

[2] A fuller description of the other litigations is contained in the brief in support of the Settlement

Under the terms of the Settlement, Intel and its Board of Directors have agreed to substantially enhance Intel's corporate governance and antitrust compliance policies and procedures for no less than three years from June 30, 2010. These enhancements are substantial because they will materially reduce the risk of future litigation or proceedings regarding antitrust and foreign competition laws, they mandatorily require Intel to adopt, implement and enforce them for at least three years, and they will be required by this Court's order approving the Settlement.

As discussed more fully in the Delaware plaintiffs' Memorandum of Law and related submissions, consistent with the current and long-term Intel shareholders' concerns reflected in the derivative actions being resolved as part of this Settlement, this Settlement materially enhances the Company's continued growth and profitability by strengthening its vigilance and compliance with U.S. and international antitrust laws, delivering just the type of significant and mandatory corporate governance revisions to the Company's policies and practices relating to antitrust compliance that will protect Intel from harm of the kind described in the derivative actions. This Settlement reflects a substantial benefit conferred upon the Company in the face of the extraordinary risks of litigation, is fair, reasonable and adequate, and meets all of the relevant criteria for approval.

The fairness and adequacy of the Settlement are evidenced by the fact that in response to the Notice widely disseminated pursuant to the Scheduling Order – over 1.6 million Notices concerning the Settlement being directly mailed to shareholders of Intel as of May 25, 2010, and the publishing of the Notice prominently on Intel's website – advising shareholders of the Settlement and their right to object thereto and/or to the fee and expense requests of counsel, ***only three objections have been received and lodged with this Court.*** The deadline for filing requests for exclusion and/or

---

filed by the Delaware Plaintiffs in the captioned litigation.

objections was July 6, 2010. The paucity of objections to the Settlement is very significant since the universe of shareholders receiving the notice and entitled to object to the Settlement undoubtedly includes, in addition to tens of thousands of individuals, many sophisticated financial institutions which have counsel available to advise, represent and assist them in expressing opposition to the request made herein if they so choose.

For all of the foregoing reasons, the Court should approve the Settlement.

## ARGUMENT

**I.     THE STANDARD FOR JUDICIAL APPROVAL
        OF DERIVATIVE SETTLEMENTS**

The approval of a derivative settlement is a matter within the sound discretion of the court. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971).

In determining whether to approve a settlement, the court should be cognizant of the strong judicial policy favoring resolution of litigation short of trial. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) (citations omitted); *accord Eichenholtz*, 52 F.3d at 486 ("[i]n general, the settlement of complex litigation before trial is favored by the federal courts"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1318 (3d Cir. 1993) (settlement is to be encouraged in as early a stage as possible); *see Davies v. Continental Bank*, 122 F.R.D. 475, 478 (E.D. Pa. 1988); *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 449 (E.D. Pa. 1985).

The Court should approve a shareholder derivative settlement if it is fair and reasonable in light of the "factors applied initially to class action settlement agreements" subsequently applied to derivative actions. *Bell*, 2 F.3d at 1311 (citations omitted). In the derivative context, the court

examines "the extent of the benefit to be derived from the proposed settlement by the corporation, . . . considered in the light of the best possible recovery, of the risks of establishing liability and proving damages in the event the case is not settled, and of the cost of prolonging the litigation," *Id.* (*citing Girsh*, 521 F.2d at 156-57 and *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978)), and "the response of other shareholders to the lawsuit." *Bell*, 2 F.3d at 1311 (*citing Shlensky*, 574 F.2d at 148).

When considering the benefits to be received by the corporation, the Court is empowered to evaluate purely "prophylactic" or "structural" relief that is more than a mere "promise to obey the law," but which "provides specific mechanisms to ensure [that] employees . . . behave appropriately." *Bell*, 2 F.3d at 1312. Here, the substantial benefits to the Company provided by the Settlement, combined with the other relevant considerations, collectively demonstrate that the Court should approve the proposed Settlement.

Here, the proposed Settlement enjoys a presumption that it is fair and reasonable because it is the product of arm's length negotiations conducted by a group of capable plaintiffs' counsel who are highly experienced in class action and derivative litigation. *See, e.g. GMC*, 55 F.3d at 785; *Walsh*, 726 F.2d at 965; *Grier v. Chase Manhattan Automotive Finance Co.*, 2000 U.S. Dist. LEXIS 1339 at *11-12 (E.D. Pa. Feb. 16, 2000) ("[a]n initial presumption of fairness attaches to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery.").

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED

As described above, the corporate governance and antitrust enhancements mandated by the Settlement will serve as significant and substantial governance principles for the Company. These principles will impact board governance, overall compliance, enforcement of antitrust principles, executive compensation, financial and other reporting and management efforts at a number of levels within the Company and are designed to ensure compliance with applicable governance, accounting, legal and ethical standards. The Related Plaintiffs' Counsel, together with counsel for the plaintiffs in the captioned litigation, in consultation with their highly skilled experts and consultants, made significant contributions to corporate governance and antitrust enhancements, and they directly address the concerns and demands for equitable relief underlying the claims in the various complaints that were filed. Such comprehensive principles will benefit both the Company and its shareholders. Courts have found corporate governance benefits to corporations to be adequate and appropriate relief, particularly when the relief is intended to prevent future harm. *See Bell*, 2 F.3d at 1311 (noting that nonpecuniary benefits may support a settlement, citing cases).

The Settlement of these complex shareholder derivative claims is an outstanding conclusion to the years of litigation and, considering the circumstances and relevant legal standards, satisfies all of the criteria for final approval. The Individual Defendants contend that they properly oversaw the Company's affairs. To prevail, plaintiffs would have to overcome this and other colorable defenses, and plaintiffs would need to show that the Individual Defendants knew of the antitrust violations and abdicated their duties to take the necessary action to prevent further antitrust violations. Plaintiffs faced the risk that the jury would believe any or all of Defendants' arguments that they did not breach their responsibilities to the Company and its shareholders and that, even if they did breach their duties, those breaches did not proximately cause the losses suffered by the Company.

5

Under these circumstances, and for the other reasons set forth in the parties' submissions, the Settlement well exceeds the standard of being fair, reasonable and adequate and should be approved by the Court. *Girsh*, 521 F2d at 157.

### A. The Litigations' Likelihood of Success Is Uncertain

In reviewing the substantive adequacy of the benefit bestowed on the Company, the Court must consider the fairness of the settlement in light of the complexity and costs of prolonging litigation and plaintiffs' likelihood of success on the merits. *Bell*, 2 F.3d at 1312-13 (approving non-monetary derivative settlement when probability of success on the merits was uncertain). In evaluating this factor, a court does not have "the right or the duty to reach any ultimate conclusions on the issues of the fact and law which underlie the merits of the dispute." *In re Cendant Corp. Litig.*, 264 F.3d 286, 301 (3d Cir. 2001) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) (in determining fairness of consent decree "[t]he Court has no occasion to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties").

This inquiry weighs heavily in favor of settlement in this case. In the derivative proceedings being resolved by this Settlement, plaintiffs in all jurisdictions face the difficulties inherent in derivative actions as well as significant procedural and substantive obstacles to ultimate success. Indeed, the Delaware Chancery Court has described a claim for failure of oversight as "perhaps the most difficult theory upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1999).

Moreover, Intel consistently has taken the position that it is not in the Company's best interest to pursue litigation against the Individual Defendants at this time.[3] *See Spiegel v. Buntrock*,

---

[3] The business judgment rule presumes that in making a business decision, actions have been taken

6

571 A.2d 767, 773 (Del. 1990) ("[t]he decision to bring a law suit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation . . . [c]onsequently, such decisions are part of the responsibility of the board of directors"); *see also Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (courts will defer to the judgment of an independent and disinterested, fully informed and deliberative board in business decisions in the context of derivative actions).

### B. Complexity, Expense and Likely Duration of the Litigation Weigh in Favor of Approval

Courts have consistently held that the expense and uncertainty of litigation are factors supporting a settlement. *See Cendant*, 264 F.3d at 264 (this factor "captures the probable costs, in both time and money, of continued litigation"); *see also In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001) (complexity of case weighed in favor of settlement); *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68 at *22-23 (E.D. Pa. 2001) ("Of equal importance is the likely complexity of proof in the case."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) (noting the "complicated nature of large class actions alleging securities fraud" where "there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trial through numerous public and private documents").

Here, the complexity of the case against the Individual Defendants is a given, and even in the unlikely event plaintiffs did succeed at trial, they could expect a vigorous appeal by defendants and

---

on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the company. *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 455 (N.D. Ohio 1993). This presumption can be very difficult for Plaintiffs to overcome.

an accompanying delay in the receipt of any relief. *See, e.g., In re Computron Software, Inc., Sec. Litig.*, 6 F. Supp. 2d 313, 317 (D.N.J. 1998) ("even if the Plaintiff Class were to recover a larger judgment at trial, which is not guaranteed, the additional delay caused by a trial, post-trial motions and the appellate process, would delay recovery . . . for years"). The full trial and appeal of this case would have undoubtedly continued to consume the resources of the parties and the Court for some time to come. "It is safe to say, in a case of this complexity, the end of that road might be miles and years away." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995).

In sum, the complexity and inherent delays must be taken into account when appraising the fairness of the proposed Settlement. *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").

### C. Reaction of Intel's Shareholders to the Settlement

The fact that there have been virtually no objections to the Settlement, not even one by any of the numerous sophisticated institutional investors that hold Intel's shares, indicates a virtually unanimous favorable reaction by the Company's shareholders. *See Bell*, 2 F.3d at 1313 (approving settlement when 30 out of 1.1 million shareholders objected -- "an infinitesimal number"); *In re Cendant Corp. Deriv. Litig.*, 232 F. Supp. 2d 327, 333 (D.N.J. 2002) (when only four out of 200,000 shareholders questioned the settlement, there was "little doubt" that this factor weighed in favor of settlement); *accord In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (observing

8

that objections by "only" 29 members of the class comprised of 281 "strongly favors settlement").

### D. The Stage of the Proceedings and the Amount of Discovery Completed Weigh in Favor of Approval

"[T]he stage of the proceedings and the amount of discovery completed" is another factor considered in determining the fairness, reasonableness and adequacy of a settlement. *Girsh*, 521 F.2d at 157. This prong of the analysis "captures the degree of case development that class counsel have accomplished prior to settlement.

Here, both before and after the Settlement Agreement was executed, counsel for the plaintiffs engaged in substantial case development, consulted with experts and consultants on the adequacy of the relief and completed extensive confirmatory discovery. Thus, they are well-positioned to assess the benefits of the Settlement Agreement to Intel and its shareholders.

The Related Plaintiffs in particular have thoroughly researched the facts of the case. Their counsel reviewed thousands of pages of discovery and deposition transcripts from the underlying antitrust litigations. *See* Weiss Declaration filed herewith. The Settlement takes into account the merits of plaintiffs' claims as developed through the discovery process as well as plaintiffs' independent research, the defenses that Defendants have pled and could be expected to plead, including the defense that Intel's exculpatory charter provision shields the individual defendant directors from any liability resulting from breach of the duty of care and the business judgment rule presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company" protects the individual director defendants, *see Bell*, 2 F.3d at 1312, and the risks of additional motion practice, trial and further appeals after trial.

### E. The Risks of Establishing Liability Weigh in Favor of Approval

The Related Plaintiffs recognize that a finding of liability as to the individual defendants was

9

far from assured. In fact, Defendants denied and continue to deny -- even in Settlement -- that they are liable. One of the most important factors in evaluating the adequacy of a settlement is the relative strength of plaintiff's case and the existence of any defenses or difficulties of proof. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 831 (E.D.N.C. 1994). The pleadings filed with the Court in this and the related cases plainly show that the strengths of the claims and defenses thereto have been the subject of substantial dispute between the parties.

### F. The Risk of Proving Damages and Causation Weighs in Favor of Approval

The question of damages sparked sharp disagreement among the parties and would likely have remained a lively subject of dispute through trial and appeal. In fact, Defendants strenuously contended that there are no material monetary damages deriving from even a successful prosecution of the claims asserted by the plaintiffs. Substantial disagreement in the form of expert testimony would likely exist at trial, particularly as to the critical issues of the dollar value of any injury suffered by Intel and the liability therefor by the Individual Defendants' experts may contend that the damages in this case were nominal, and perhaps even zero. Thus, the risk of proving damages could not be eliminated until after a successful trial and the exhaustion of all appeals. In this instance, instead of the risk of failing to obtain a benefit for Intel through continued litigation, the settlement guarantees implementation of sweeping corporate governance changes and potentially billions of dollars in increased market capitalization for Intel owing to its adoption of best practices of corporate governance.

### G. The Ability of Defendants to Withstand a Greater Judgment Weighs in Favor of Approval

Another important factor in determining whether the proposed Settlement is fair is whether or not a higher judgment could have been sustained by the Defendants. *Girsh*, 521 F.2d at 157.

Here, Intel's financial condition does not bear upon approval of this Settlement. Intel's resources are such that it could have continued to litigate the case indefinitely.

H. **The Settlement is Reasonable in Light of the Best Possible Recovery and All Attendant Risks of Litigation**

The range of possible recovery must be juxtaposed against the *likelihood* of recovery. Indeed, the Third Circuit has approved derivative settlements with no monetary recovery at all. *Bell*, 2 F.3d at 1313. In fact, the *Bell* court noted that "even if we attach a small figure to the value of the corporate governance changes . . . , this small value may be fair consideration for and accurately reflect the expected payout at trial net of the costs of trial." *Id.*

Here, the parties have agreed to a Settlement involving substantial corporate governance and antitrust enhancements. Despite the fact that damages will not be paid to Intel by the individual defendants, this is an excellent recovery given that Defendants contest liability and damages and remain steadfast to countering the litigations without any monetary benefit. This Settlement is well within the category of corporate governance settlements that have been approved by the Courts. *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *47 (D.N.J. Mar. 25, 2010) (approving disclosure settlement).

I. **The Settlement is the Product of Arm's Length Negotiations Among Experienced Counsel**

Upon an analysis of the "fairness" factors, it is clear that the Settlement was entered into in good faith, at arm's length and without any collusion. Counsel from all sides zealously represented their respective clients' interests and did so without any discussion of fees.

Related Plaintiffs' Counsel has extensive experience in complex litigation in general and securities class action and derivative litigation in particular. Such widespread experience underscores that the negotiated Settlement was based on an informed and realistic consideration of

11

the costs and risks incident to proceeding with the litigation. *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 774-775 (E.D. Pa. 2001); *In re Ikon Office Solutions*, 194 F.R.D. at 190-191. The qualifications and expertise of plaintiffs' counsel has been provided to the Court.

The settlement negotiations in this case were extensive, hard fought, and undertaken at arm's length. Throughout the negotiation process, the parties employed their own teams of attorneys, experts and consultants to assess the validity of the allegations underlying the various complaints, as well as the value to Intel of the corporate governance and antitrust compliance enhancements presented in this Settlement. Even after the parties reached a preliminary agreement on the corporate governance enhancements, plaintiffs' counsel insisted on additional discovery before they agreed that the overall terms of the Settlement were fair, reasonable and adequate. Because "there has been no suggestion that these settlements were not conducted in good faith at arm's length," this Court can be confident that the interests of Intel and its shareholders have been advanced and properly represented. *Fisher Bros.*, 604 F. Supp. at 452.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

This Settlement will put Intel at the forefront with respect to corporate governance and antitrust compliance practices and procedures. It is a superb result of lasting value to Intel and its shareholders. For all of reasons set forth above, the Related Plaintiffs and their counsel respectfully request that the Court approve the Settlement of this litigation as submitted, overrule the three objections and enter the Order and Final Judgment presented as part of the Settlement.

Dated: July 15, 2010                                        Respectfully submitted,

                                                            RIGRODSKY & LONG, P.A.

                                                        By: /s/ Brian D. Long
                                                            Seth D. Rigrodsky (#3147)
                                                            Brian D. Long (#4347)
                                                            919 N. Market Street, Suite 980
                                                            Wilmington, Delaware 19899
                                                            (302) 295-5310

                                                            WEISS & LURIE
                                                            Joseph H. Weiss
                                                            David C. Katz
                                                            551 Fifth Avenue
                                                            New York, NY 10176
                                                            (212) 682-3025

                                                            STULL, STULL & BRODY
                                                            Jules Brody
                                                            6 East 45th Street
                                                            New York, NY 10017
                                                            (212) 687-7230

                                                            *Related Plaintiffs' Counsel*