IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE INTEL CORP. DERIVATIVE LITIGATION | C.A. No. 1:09-cv-867-JJF |

**DECLARATION OF JONATHAN C. DICKEY IN SUPPORT OF SETTLEMENT**

I, JONATHAN C. DICKEY, declare as follows:

1.     I am an attorney admitted to practice *pro hac vice* in this Court and I am co-counsel to Nominal Defendant Intel Corporation ("Intel") and Individual Defendants Paul S. Otellini, Craig R. Barrett, David S. Pottruck, Jane E. Shaw, David B. Yoffie, Charlene Barshefsky, James D. Plummer, Susan L. Decker, Carol Bartz, John J. Donahoe, and Frank D. Yeary (the "Individual Defendants"). I submit this declaration in support of the parties' joint motion for approval of the settlement of this derivative action. If called as a witness, I would be competent to testify to the matters set forth herein.

2.     I have served as counsel of record for Intel and the Individual Defendants in various shareholder derivative actions related to the underlying antitrust complaints against Intel, including the case entitled *Smilow v. Barrett* (later retitled *In re Intel Corporation Deriviative Litigation*, Civ. A. No. 08-93-JJF) that was previously filed in this Court, and was dismissed in June 2009. I also have served as counsel of record for Intel and the Individual Defendants in *Del Gaizo v. Otellini, et al.*, Case No. 1-08-CV-116137 filed in Santa Clara Superior Court in California. The *Del Gaizo* suit was stayed by the Superior Court in September, 2008. Over the course of over two years of litigation of these cases, and related shareholder demands and inspection demands, I necessarily have become familiar with the underlying facts and

circumstances, and along with other in-house and outside counsel for Intel, have spent considerable time evaluating the merits of the claims and defenses in connection with the various shareholder actions. Among the activities that I and other members of my team have undertaken, we have reviewed extensive written materials, interviewed witnesses, and reviewed key pleadings, documents, and testimony in the underlying antitrust proceedings.

3. Unlike the previously-dismissed *Smilow* litigation, or the substantially similar *Del Gaizo* litigation in California, both of which are "demand futility" cases, the present case in this Court (the "Delaware Action") is styled as a "demand rejected" lawsuit. As this Court is aware, defendants have filed a motion to dismiss the Delaware Action, and that motion is fully briefed and is awaiting decision.

4. In February 2010, prior to the completion of briefing of the pending motion to dismiss, I began negotiations with Plaintiffs' counsel in this action ("Delaware Plaintiffs' Counsel") concerning a possible settlement of the Delaware Action. At the time, this action was the only active Intel shareholder derivative suit against the Individual Defendants. As mentioned above, this Court had previously dismissed the *Smilow* action, and the *Del Gaizo* suit has been stayed since September 2008. Thus, when our clients decided to pursue settlement negotiations, I contacted Delaware Plaintiffs' Counsel to commence those negotiations.

5. My negotiations with Delaware Plaintiffs' Counsel were hard fought, and extended over the course of several months. Negotiations began with a face-to-face meeting at my office in New York on February 4, 2010. The meeting lasted for approximately 90 minutes, during which I outlined the basic contours on which Intel and the Individual Defendants were prepared to settle and resolve the claims. During the meeting, I also shared information with Delaware Plaintiffs' Counsel about various areas of corporate therapeutics that Intel and the

Individual Defendants would be willing to further explore.  At the conclusion of the meeting, I asked Delaware Plaintiffs' Counsel to respond promptly as to whether they would be prepared to commence good faith negotiations.

6.     The next day, February 5, Delaware Plaintiffs' Counsel informed me that they were willing to proceed with further negotiations, and we scheduled a conference call on February 10.  On February 6, I sent Delaware Plaintiffs' Counsel a draft confidentiality agreement, in anticipation of providing them with additional confirmatory discovery.

7.     During the February 10 conference call, Delaware Plaintiffs' Counsel discussed areas of confirmatory discovery they would require, including discovery directed to Intel's antitrust compliance policies and practices.  Delaware Plaintiffs' Counsel also asked for an interview of an Intel person or persons familiar with those compliance policies and practices. We took those requests under advisement.  Delaware Plaintiffs' Counsel also indicated that they wanted to share any confirmatory discovery with their governance expert(s).

8.     On February 17, I sent Delaware Plaintiffs' Counsel a final version of a confidentiality agreement to execute, which they did later in the day.

9.     On February 23, we received the first substantive proposals from Delaware Plaintiffs' Counsel.  We agreed that we would continue to follow-up on confirmatory discovery while Intel and the Individual Defendants considered the settlement proposal.

10.     After extensive internal discussions at Intel, we provided our formal counter-proposal on March 25.  We continued to provide Delaware Plaintiffs' Counsel with additional confirmatory discovery thereafter.  We also held a face-to-face meeting with Delaware Plaintiffs' Counsel in my New York office on March 31.  The meeting lasted two hours, and involved

extensive arms-length negotiations over the terms of Plaintiffs' initial proposal, and Defendants' counter-proposal.

11.     At some point in March, I understand that Delaware Plaintiffs' Counsel contacted plaintiffs' counsel in the *Del Gaizo* suit, and shared their settlement proposal with them, in order to involve them in the settlement talks. Also in late March, I informed Delaware Plaintiffs' Counsel of a newly-filed suit in Santa Clara Superior Court, entitled *Paris v. Otellini, et al.*, and sent them a copy of the complaint in that action.

12.     On April 2, Delaware Plaintiffs' Counsel sent me their "reply proposal," reflecting revisions to the terms of their original settlement proposal, in light of Defendants' counter-proposal and the discussions and negotiations during our face-to-face meeting on March 31.

13.     On April 7—again, after extensive internal discussion at Intel—we provided Delaware Plaintiffs' Counsel with our formal response to Plaintiffs' "reply proposal." Reflecting the hard-fought nature of these negotiations, the parties almost reached an impasse at this point, and the confirmatory discovery was briefly suspended. Extensive negotiations ensued over the next week, and both sides made further modifications to their respective positions on settlement terms.

14.     By April 14, a new set of terms was circulated reflecting the extensive additional arms-length negotiations. On April 16, we were informed that the basic terms of settlement circulated on April 14 were accepted by the Delaware Plaintiffs' group, subject to the completion of confirmatory discovery, negotiation of the terms of a formal Stipulation of Settlement (including release language), and negotiation of a ceiling on Plaintiffs' request for attorneys' fees. At no time prior to April 16 had we entered into any negotiation over fees.

4

15.     During the period from April 16 until the Stipulation of Settlement was signed on May 25, Delaware Plaintiffs' Counsel completed their confirmatory discovery efforts, including the deposition of an Intel representative on compliance-related issues, which took place on April 27. Delaware Plaintiffs' Counsel also completed their extensive review of deposition testimony in the underlying *AMD* antitrust litigation. During this period, we prepared the first draft of a Stipulation of Settlement, which was delivered to Delaware Plaintiffs' Counsel on May 6, 2010.

16.     Also, beginning on April 19, Delaware Plaintiffs' Counsel began to communicate with counsel in the *Paris* litigation about having Dr. Paris join in the settlement talks. And beginning on May 4, I contacted plaintiffs' counsel in the *Rosenfeld Family Foundation, et al. v. Intel Corporation* books and records demand litigation then pending in Delaware Chancery Court (the "Rosenfeld Action"), Joseph Weiss, about having his clients join in the settlement talks as well. Over the ensuing weeks, Dr. Paris's counsel and Rosenfeld's counsel participated in the settlement talks, and ultimately their clients agreed to join the settlement. I delivered the proposed settlement terms to Rosenfeld's counsel on May 4. As recounted below, Rosenfeld's counsel was particularly active in negotiating settlement terms, and as a result of Mr. Weiss's efforts, Intel agreed to additional terms and conditions to the settlement.

17.     Between May 4 and May 23, 2010, counsel for the *Rosenfeld* plaintiffs and I carried on extensive additional settlement negotiations, beginning with a face-to-face meeting on May 7 in my office in New York. As a result of the negotiations at that meeting, and other telephonic negotiations, I transmitted a set of revised settlement terms to Rosenfeld's counsel on May 10. Beginning on May 11, Rosenfeld's counsel also began a process of confirmatory discovery. On May 13, as a result of further negotiations, we provided Rosenfeld's counsel with final proposed modifications to the settlement terms, which he accepted. On May 18, we also

delivered to Rosenfeld's counsel a draft of the Stipulation of Settlement we previously had sent to Delaware Plaintiffs' Counsel.  The negotiations with Rosenfeld's counsel over the draft Stipulation of Settlement continued over the next several days.  In my view, Rosenfeld's counsel added value to the overall settlement, for which Intel believed he was entitled to compensation. We therefore commenced a negotiation over Mr. Weiss' request for an attorney fee, which we concluded on May 23.

18.     As a result of the new settlement terms proposed by Rosenfeld's counsel, we spent additional time with the Delaware Plaintiffs' Counsel in order to permit them the opportunity to review and comment on those new settlement terms, which they did, and as to which they proposed minor modifications.

19.     On May 5, I also communicated with Ms. Del Gaizo's counsel about having Ms. Del Gaizo join the settlement talks.  Because of our agreement to maintain settlement privilege over our separate settlement communications, I cannot reveal here the substance of those discussions, but Ms. Del Gaizo obviously objects to the proposed settlement.

20.     During most of May, negotiations continued with Delaware Plaintiffs' Counsel over the terms of the draft Stipulation of Settlement, and the other ancillary settlement documents.  On May 9, we received edits and comments from Delaware Plaintiffs' Counsel regarding the Stipulation of Settlement.  On May 11, we received further edits from Delaware Plaintiffs' Counsel.  Negotiations over the terms of the draft Stipulation of Settlement continued until May 23.

21.     During the course of the settlement negotiations, I personally reviewed with Delaware Plaintiffs' Counsel, and subsequently with counsel for Ms. Del Gaizo, the terms of Intel's directors and officers liability insurance policy for the relevant time period.  That policy

expressly excludes coverage for any claim for which the Intel is required or permitted to indemnify the insureds. In order for the conduct at issue herein to be covered, and given the exculpatory provision of Intel's Certificate of Incorporation, Plaintiffs would be required to plead and prove a level of egregious conduct by Intel's directors and officers that simply is not supported by the pleaded facts—as this Court's prior decision in the *Smilow* litigation indicates. Accordingly, Intel's and the Individual Defendants' position has been, and continues to be, that the D&O insurance policies are irrelevant to the question of the fairness of the proposed settlement before this court, and I have so informed counsel for the various plaintiff groups.

22.     Ms. Del Gaizo's counsel has made a number of requests for information concerning the Stipulation of Settlement, the underlying antitrust issues, and the D&O insurance policies potentially applicable to the Delaware claims. Consistent with Third Circuit law, Intel has responded promptly to these requests and provided Ms. Del Gaizo's counsel with the same documents and information it previously provided to Delaware Plaintiffs' Counsel. Because certain of the documents were sensitive, we made them available for inspection in Gibson, Dunn & Crutcher's offices, a condition to which the Delaware Plaintiffs and Ms. Del Gaizo both agreed. I personally met Ms. Del Gaizo's lawyers while they were inspecting documents in Gibson, Dunn & Crutcher's offices, and spoke with them for the last time on Thursday, June 24, when they informed me that they would be leaving mid-day, and may not return. In fact, they never did return, and seemingly did not complete their review of the available documents. According to our records, Ms. Del Gaizo's counsel was present in Gibson, Dunn & Crutcher's offices for a total of 4 ½ days.

23.     In addition to the settlement-related documentation discussed above, on May 28, 2010, Ms. Del Gaizo's counsel sent an inspection demand to Intel, seeking documents related to

7

the Board's decision to defer consideration of Ms. Del Gaizo's July 2009 demand.  Those documents were provided to Ms. Del Gaizo's counsel by June 17, promptly after Ms. Del Gaizo's counsel executed a confidentiality agreement.  I have received no complaints from Ms. Del Gaizo's counsel as to the adequacy of the materials we produced.

24.     Attached hereto as Exhibit A is a copy of Intel's Third Restated Certificate of Incorporation.  The Certificate of Incorporation makes clear that Intel's directors are exculpated from personal liability for monetary damages for breach of fiduciary duty, consistent with Delaware General Corporation Law Section 102(b)(7).

25.     Attached hereto as Exhibit B is a copy of the Complaint in the *Del Gaizo* action.

26.     Based on all the facts and circumstances, Intel and the Individual Defendants believe that the proposed settlement is fair, adequate and reasonable, that the objections filed with the Court are without merit, and that the Court should approve the settlement in its entirety.


I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of July, 2010, at New York, New York.

Jonathan C. Dickey

100850620_6.DOC

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I do hereby certify that, on July 15, 2010, the foregoing document was filed with the

Clerk of Court using CM/ECF which will send notification of such filing to the following, that

the document was served on the following counsel as indicated; and that the document is

available for viewing and downloading from CM/ECF:

### BY CM-ECF and E-MAIL

Robert D. Goldberg, Esquire
BIGGS & BATTAGLIA
921 North Orange Street
Wilmington, DE  19801

Collins J. Seitz, Jr., Esquire
Bradley R. Aronstam, Esquire
CONNOLLY, BOVE, LODGE & HUTZ LLP
1007 North Orange Street, 8th Floor
Wilmington, DE 19801

I hereby certify that on July 15, 2010 I have sent by E-mail the foregoing document to the

following:

Laurence D. Paskowitz, Esquire
PASKOWITZ & ASSOCIATES
60 East 42nd Street, Suite 4600
New York, NY  10165
lpaskowitz@pasklaw.com

Kim David Staskus, Esquire
LAW OFFICES OF KIM DAVID STASKUS, P.C.
1631 Willow Street, Suite 100
San Jose, CA  95125
kimstaskus@mgle-law.com

Joseph H. Weiss, Esquire
WEISS & LURIE
551 Fifth Avenue
New York, NY  10176
jweiss@weisslurie.com

Brian D. Long, Esquire
RIGRODSKY & LONG, P.A.
919 North Market Street, Suite 980
Wilmington, DE  19801
bdr@rigrodskylong.com

Jeffrey C. Block, Esquire
BERMAN DEVALERIO
One Liberty Square
Boston, MA  02109
jblock@bermandevalerio.com

Ian Connor Bifferato, Esquire
BIFFERATO LLC
800 North King Street
Plaza Level
Wilmington, DE  19801
cbifferato@bifferato.com

Kevin A. Seely, Esquire
ROBBINS UMEDA LLP
600 B Street, Suite 1900
San Diego, CA  92101
kseely@robbinsumeda.com

Darrell Palmer, LL.M.
LAW OFFICES OF DARRELL PALMER
603 North Highway 101, Ste A
Solana Beach, CA  92075
Darrell.palmer@palmerlegalteam.com


_____/s/ Stephen C. Norman_____
Stephen C. Norman (#2686)
Potter Anderson & Corroon LLP
Hercules Plaza – 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, Delaware  19899
(302) 984-6000
snorman@potteranderson.com