IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE INTEL CORP. DERIVATIVE LITIGATION | : : : : : : : : | C.A. No. 1:09-cv-867-JJF<br><br>**REDACTED VERSION** |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE PROPOSED SETTLEMENT

OF COUNSEL:

**GIBSON, DUNN & CRUTCHER LLP**
Jonathan C. Dickey (admitted *pro hac vice*)
Marshall R. King (admitted *pro hac vice*)
200 Park Avenue, 47th Floor
New York, New York  10166
(212) 351-4000
jdickey@gibsondunn.com
mking@gibsondunn.com

**POTTER ANDERSON & CORROON LLP**
Donald J. Wolfe, Jr. (#285)
Stephen C. Norman (#2686)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000
dwolfe@potteranderson.com
snorman@potteranderson.com

*Attorneys for Nominal Defendant Intel Corporation and Defendants Otellini, Barrett, Pottruck, Shaw, Yoffie, Barshefsky, Plummer, Decker, Bartz, Donahoe, and Yeary*

**CONNOLLY, BOVE, LODGE & HUTZ LLP**
Collins J. Seitz, Jr. (#2237)
Bradley R. Aronstam (#5129)
1007 North Orange Street, 8th Floor
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
baronstam@cblh.com

*Attorneys for Defendant D. James Guzy, Sr.*

OF COUNSEL:

Kim David Staskus (admitted *pro hac vice*)
LAW OFFICES OF
KIM DAVID STASKUS, P.C.
1631 Willow Street, Suite 100
San Jose, CA 95125
(408) 264-0155
kimstaskus@mgle-law.com

July 15, 2010

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT...........................................................................................................................3

I. THE PROPOSED SETTLEMENT WAS REACHED THROUGH VIGOROUS, ARM'S-LENGTH NEGOTIATIONS.........................................................................3

II. THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE.......................................4

    A.    Virtually No Intel Stockholders Object to the Proposed Settlement......................4

    B.    The Del Gaizo Objection Has No Merit.............................................................4

    C.    The Other Two Objections Also Lack Merit.......................................................17

CONCLUSION ......................................................................................................................19

i

TABLE OF AUTHORITIES

Page(s)

## Cases

A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.,
  881 F.2d 1396 (7th Cir. 1989) ......................................................................................... 13

Advo, Inc. v. Philadelphia Newspapers, Inc.,
  51 F.3d 1191 (3d Cir. 1995) ............................................................................................ 12

Arnold v. Soc'y for Sav. Bancorp, Inc.,
  650 A.2d 1270 (Del. 1984) ........................................................................................ 12, 17

Barry Wright Corp. v. ITT Grinnell Corp.,
  724 F.2d 227 (1st Cir. 1983) ............................................................................... 11, 13, 14

Bell Atl. Corp. v. Bolger,
  2 F.3d 1304 (3d Cir. 1993) ............................................................................................ 4, 6

Brooke Group Ltd. v. Brown Williamson Tobacco Corp.,
  509 U.S. 222 (1993) ......................................................................................... 11, 12, 15

Girsh v. Jepson,
  521 F.2d 153 (3d Cir. 1975) ............................................................................................ 10

Goodwin v. Live Entm't, Inc.,
  No. Civ. A. 15765, 1999 WL 64265 (Del. Ch. Jan. 25, 1999) ....................................... 17

In re Caremark Int'l,
  698 A.2d 959 (Del. Ch. 1996) ........................................................................................... 5

In re Citigroup Inc. S'holder Derivative Litig.,
  964 A.2d 106 (Del. Ch. 2009) .................................................................................. 5, 8, 12

In re Intel Corp. Derivative Litig.,
  621 F. Supp. 2d 165 (D. Del. 2009) .................................................................................. 5

In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,
  148 F.3d 283 (3d Cir. 1998) .............................................................................................. 8

In re Warfarin Sodium Antitrust Litig.,
  212 F.R.D. 231 (D. Del. 2002) .......................................................................................... 7

In re Zoran Corp. Derivative Litigation,
  No. C 06-05503 WHA, 2008 WL 941897 (N.D. Cal. Apr. 7, 2008) ................................. 6

**Table of Authorities**
**(Continued)**

Page(s)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ...............................................................................................12

*Pacific Bell Tel. Co. v. LinkLine Commc'ns,*
    129 S. Ct. 1109 (2009) ...........................................................................................15

*Shlensky v. Dorsey,*
    574 F.2d 131 (3d Cir. 1978) ...............................................................................4, 7

*Western Parcel Express v. United Parcel Service of America, Inc.,*
    190 F.3d 974 (9th Cir. 1999) .................................................................................15

*Wood v. Baum,*
    953 A.2d 136 (Del. 2008)......................................................................................16

**Statutes**

8 Del. C. § 102(b)(7) ....................................................................................................16

**Other Authorities**

Areeda & Hovencamp, *Antitrust Law* ¶ 1807 (2007 Supp.)........................................14

F. Balotti & J. Finkelstein, *Delaware Law of Corp. & Business Org.,* § 4.19 .............17

Nominal Defendant Intel Corporation ("Intel") and Individual Defendants Paul S. Otellini, Craig R. Barrett, David S. Pottruck, Jane E. Shaw, David B. Yoffie, Charlene Barshefsky, James D. Plummer, Susan L. Decker, Carol Bartz, John J. Donahoe, Frank D. Yeary, and D. James Guzy, Sr. (the "Individual Defendants") respectfully submit this memorandum of law in support of the settlement of this action and in response to the few objections submitted by Intel stockholders.

## INTRODUCTION

After extensive investigations and arm's-length negotiations, the parties come before this Court with a proposed settlement of shareholder derivative claims (the "Settlement") that is eminently fair and reasonable, and which this Court should approve. Notwithstanding the few objections submitted by Intel stockholders, which are addressed below, the terms of the proposed settlement are fair and adequate. No less than *five* plaintiff law firms representing shareholders with claims against Intel's directors and officers – all experienced in shareholder derivative litigation – have concluded that the settlement terms have substantial value to Intel, and that the proposed settlement meets the fairness standards under applicable Third Circuit law. Moreover, the fairness and adequacy of the Settlement is underscored by the almost total absence of objections from Intel stockholders. Notice of the proposed Settlement was sent to more than 1.6 million record and beneficial owners of Intel common stock, and was posted on Intel's website for more than a month. Notwithstanding this massive notification effort, only three Intel stockholders have expressed any negative opinion regarding the Settlement. The Court should view this almost complete absence of objections to the Settlement for what it is – agreement by the overwhelming majority of Intel's stockholders that the Settlement is fair, reasonable, and adequate.

1

As to the three objections to the Settlement submitted by stockholders, two are pro forma
– *i.e.,* whether notice of the Settlement was in plain English, and whether the requested
plaintiffs' attorney's fees are excessive. And the third, submitted by Christine Del Gaizo, lacks
credibility, and presents no factual or legal basis for this Court to find the proposed Settlement
unfair. Del Gaizo is the mother of one of the lawyers whose firm is separately suing Intel's
directors and officers in California state court. Despite having had access to substantial
evidentiary materials developed in this case and in the underlying *AMD* antitrust action, Del
Gaizo's objection consists of nothing more than factually baseless allegations against the
Individual Defendants Paul Otellini and Craig Barrett, followed by the equally baseless
conclusion that the absence of any monetary contributions from these individuals renders the
proposed Settlement unfair. As explained below, the law and the facts refute each and every one
of Del Gaizo's arguments.

At bottom, not a single objector offers any credible argument that the proposed settlement
terms do not represent substantial value to Intel and its stockholders. Moreover, not a single
objector contends that the proposed settlement was not the product of vigorous, arm's-length
negotiations, or that plaintiffs' counsel in this action lack the competence, experience, and
expertise to make the good faith judgment that the risks of litigation in this case were substantial,
and that the settlement value represents a fair exchange for the dismissal of these claims. In fact,
the substantial corporate governance and antitrust compliance enhancements included in the
proposed Settlement provide more than adequate consideration for the settlement of Plaintiffs'
weak claims and, accordingly, this Court should approve the Settlement.

2

## ARGUMENT

### I.
### THE PROPOSED SETTLEMENT WAS REACHED THROUGH VIGOROUS, ARM'S-LENGTH NEGOTIATIONS

None of the few objections to the Settlement contends that the process by which the Settlement was reached was in any way compromised – and for good reason. As set forth in detail in the accompanying Declaration of Jonathan C. Dickey ("Dickey Decl."), the negotiations between Plaintiffs' Counsel and Defendants' Counsel were lengthy, hard-fought, and unquestionably arm's-length. The negotiations extended over the course of several months, with considerable back and forth between and among Mr. Dickey and plaintiffs' counsel representing shareholders in three different court actions. Those negotiations almost broke down on at least one occasion. That the prospect of settlement was uncertain and that the negotiations were adversarial is further evidenced by the fact that the parties continued to brief Defendants' motion to dismiss while negotiations continued – and the Court is able to see for itself that those briefs pulled no punches as the parties continued to advocate vigorously for the merits of their respective positions. Finally, as the Dickey Declaration makes clear (at ¶ 14), the parties conducted no negotiations regarding Plaintiffs' Counsel's fee application until after the basic terms of the Settlement were agreed upon.

Under these circumstances, the *bona fides* of the Settlement cannot reasonably be questioned.[1]

---

[1] Del Gaizo suggests that the Intel Board has acted inconsistently by first asserting that it was in Intel's best interest to defer taking action on Del Gaizo's demand, but then deciding to settle the derivative claims asserted here. Del Gaizo Obj. at 2, 12-13. Contrary to Del

[Footnote continued on next page]

3

## II.
## THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

**A.   Virtually No Intel Stockholders Object to the Proposed Settlement**

Under Third Circuit law, "[o]ne of the factors to be considered in determining the

fairness of a settlement disposing of a class action is the reaction of the members of the class" --

and the same factors applicable to the consideration of class action settlements are typically

applicable to the settlement of shareholder derivative litigation as well. *Shlensky v. Dorsey*, 574

F.2d 131, 147-48 (3d Cir. 1978). Thus, it is notable that, with the posting of the notice of the

Settlement on Intel's corporate website, as well as the mailing of notice of the Settlement to

more than 1.6 million record or beneficial owners of Intel common stock (*see* Affidavit of

Mailing of Jonathan L. Jocson, dated July 1, 2010 (Dkt. No. 62)), only three individual Intel

stockholders submitted a response of any kind. Not only is this number "infinitesimally small,"[2]

but the objections lack merit.

**B.   The Del Gaizo Objection Has No Merit**

As set forth in Plaintiffs' papers, the benefits to Intel of the proposed Settlement include

corporate governance and antitrust compliance enhancements designed to reduce the risk of

---

[Footnote continued from previous page]

    Gaizo's suggestion, however, the Board concluded only that it would not be in Intel's best
interest to pursue an investigation or claim against its directors and officers at that time, and
that the Board *might* benefit from further legal and factual development in the underlying
antitrust proceedings. Seely Decl., Ex. 14. But of more critical import to the Board's
determination on Del Gaizo's demand was that taking the actions demanded by Del Gaizo at
that time could unnecessarily expose Intel to liability in the underlying antitrust proceedings.
*Id.* It is self-evident that that risk does not exist in connection with the proposed settlement
of the derivative claims.

[2] *See, e.g., Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 (3d Cir. 1993) (holding that, where
fewer than "30 of approximately 1.1 million shareholders objected" to proposed settlement,
this was "an infinitesimal number").

future litigation or proceedings regarding antitrust or foreign competition laws, and the elimination of the substantial burden, expense, inconvenience, distraction, and uncertainty of litigation.

Del Gaizo's objection to the Settlement is, in essence, that the benefit to Intel is inadequate in the absence of sizeable monetary payments to Intel by Individual Defendants Paul Otellini and Craig Barrett.[3] Del Gaizo contends that Plaintiffs have a "strong likelihood of success on the merits" of their claims against Dr. Barrett and Mr. Otellini for breach of fiduciary duty, and that because Intel has paid sizeable amounts in fines and settlements in underlying antitrust disputes, settlement of the derivative litigation cannot be approved unless it includes monetary compensation to Intel.

---

[3] Del Gaizo's objection does not even attempt to make a plausible case of wrongdoing against any of Intel's independent directors. Indeed, not a word is said against them in Del Gaizo's "merits" argument set forth at pages 17-22 of her Objection, and barely a word is said about the law. Among other things, Del Gaizo fails to acknowledge that to establish a failure of oversight, which is the primary theory of liability asserted by Plaintiffs, Plaintiffs would need to show

> that the directors *knew* that they were not discharging their fiduciary obligations or that they demonstrated a *conscious* disregard for their duties. *See, e.g., In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 122-23 (Del. Ch. 2009). The Delaware Court of Chancery has explained that this theory of liability "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l*, 698 A.2d 959, 967 (Del. Ch. 1996).

*In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009).

Del Gaizo's Objection thus utterly ignores ten of the twelve Individual Defendants who are only being sued in their roles as independent directors who allegedly breached a duty of oversight. As to those ten Defendants, the Objection offers no basis at all for contending – much less finding – that the claims have any likelihood of success or that the proposed Settlement somehow is unfair as it relates to resolution of the claims against the independent directors.

***The Absence of A Monetary Payment Does Not Render The Proposed Settlement***

***Inadequate.*** As a threshold matter, the mere fact that a derivative settlement does not involve a

monetary payment to the company does not render it inadequate. "Despite the difficulties they

pose to measurement, nonpecuniary benefits to the corporation may support a settlement." *Bell*

*Atl.*, 2 F.3d at 1311.

In this regard, Del Gaizo badly mischaracterizes the governing law. Del Gaizo relies

primarily on *In re Zoran Corp. Derivative Litigation*, No. C 06-05503 WHA, 2008 WL 941897

(N.D. Cal. Apr. 7, 2008), an out-of-Circuit decision, asserting that the court in that case found

the "main vice" of the proposed settlement was "the fact that it did not include any monetary

recovery to the corporation." Del Gaizo Obj. at 20 (citing *Zoran*, at *11). In fact, the *Zoran*

court stated that a non-monetary settlement might or might not be acceptable, but that "[t]he

main vice is that the proposal does not come even close to the $1.65 million [non-monetary]

settlement it was advertised to be." 2008 WL 941897, at *11; *see also id.*, at *6 ("One key

conclusion is that the economic benefits to the corporation are nowhere close to the $1.65 million

claimed."). Thus, the decision in *Zoran* was not based on the absence of a monetary payment,

but rather on the fact that there was no evidence that the non-monetary consideration had the

value that the parties claimed. The record here, by contrast, shows that the Settlement has

significant value.

***The Adequacy of The Settlement Must Take Into Account A Variety of Factors,***

***Including The Strengths and Weaknesses of Plaintiffs' Claims.*** Moreover, the *Zoran* court

applied a unique settlement approval standard requiring "the record . . . to show that plaintiff has

*virtually no chance of success at trial*." 2008 WL 941897, at *11 (emphasis added). That is not,

and never has been, the standard for settlement approval in the Third Circuit.[4]  Rather, in the

Third Circuit:

> The principal factor to be considered in determining the fairness of a
> settlement concluding a shareholders' derivative action is the extent of the benefit
> to be derived from the proposed settlement by the corporation, the real party in
> interest.... *The adequacy of the recovery provided the corporation by the
> settlement must be considered in the light of the best possible recovery, of the
> risks of establishing liability and proving damages in the event the case is not
> settled, and of the cost of prolonging the litigation.*

*Shlensky*, 574 F.2d at 147 (emphasis added, citations omitted).

Thus, the Settlement consideration here must be weighed against the strength of the

Plaintiffs' claims in this case, which must overcome the stringent proof burdens of Delaware law

to establish the non-exculpated personal liability of Intel's directors and officers. *See Bell Atl.*, 2

F.3d at 1313 ("Even if plaintiffs hoped to secure a large damage award, this would have to be

drastically discounted by the improbability of their success on the merits given the individual

defendants' strong defenses."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D.

Del. 2002) ("A settlement is by nature a compromise between the maximum possible recovery

and the inherent risks of litigation.... Dollar amounts are judged not in comparison with possible

recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of

plaintiffs' case.") (internal citation and quotation marks omitted).  As Chancellor Chandler

observed just last year:

> Citigroup has suffered staggering losses, in part, as a result of the recent problems
> in the United States economy, particularly those in the subprime mortgage

---

[4]  *Zoran*, like other option-backdating cases, involved defendants who had directly benefitted
from the receipt of backdated stock options, and who were being sued for disgorgement of
those allegedly ill-gotten gains. Nothing like that is involved in this case, and no
disgorgement remedy is sought in the operative complaint – only "damages incurred by
Intel." Delaware Compl. ¶¶ 156, 159, 162, 167.

> market. It is understandable that investors, and others, want to find someone to hold responsible for these losses, and it is often difficult to distinguish between a desire to blame *someone* and a desire to force those responsible to account for their wrongdoing. Our law, fortunately, provides guidance for precisely these situations in the form of doctrines governing the duties owed by officers and directors of Delaware corporations. This law has been refined over hundreds of years, which no doubt included many crises, and we must not let our desire to blame someone for our losses make us lose sight of the purpose of our law. Ultimately, the discretion granted directors and managers allows them to maximize shareholder value in the long term by taking risks without the debilitating fear that they will be held personally liable if the company experiences losses. This doctrine also means, however, that when the company suffers losses, shareholders may not be able to hold the directors personally liable.

*In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 139 (Del. Ch. 2009).

The key message from the Third Circuit case law on settlements is that each case must be evaluated based on the facts of that case, weighing the particular settlement consideration being offered against the particular claims being settled, in light of the facts that support or undermine those claims. As the Third Circuit has noted, however, the district court should not attempt to substitute its *own* judgment in these matters — "the evaluating court must, of course, guard against demanding too large a settlement based on its views of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316-17 (3d Cir. 1998) (citation omitted).

Here, Del Gaizo is in a poor position to argue that her judgment regarding the fairness of the proposed Settlement should be substituted for that of experienced Delaware plaintiffs' counsel. Despite their availability, Del Gaizo's counsel did not even bother to review all of the discovery materials that the Delaware Plaintiffs' counsel reviewed. *See* Dickey Decl. ¶ 22. And Del Gaizo appears not to have understood the import of the discovery materials she *did* review. Thus, for example, Del Gaizo's Objection argues that the deposition testimony of Eva Almirantearena, who had been Senior Compliance Counsel in Intel's Legal Compliance Group,

███████████████████████████████████████████████████████████

██████████████████████████████████████ Del Gaizo Obj. at 26. Del Gaizo appears not to

have appreciated that this witness' deposition testimony fully demonstrates that (a) Intel had and

has a robust antitrust compliance system in place – thus rebutting the "duty of oversight" claims

against Intel's directors under Delaware law – and (b) the new corporate governance and

antitrust compliance enhancements to which Intel will be committed under the proposed

Settlement have substantial value and are designed to reduce Intel's potential exposure to

antitrust challenges by government regulatory agencies and private parties. Plaintiffs'

submission further discusses the value and significance of Intel's compliance enhancements.[5]

 *The Potential Liability of Dr. Barrett Or Mr. Otellini Is Extremely Remote.* As to Craig

Barrett and Paul Otellini, former and current directors and chief executive officers of Intel, Del

Gaizo cites nothing more than unproven *allegations* about their conduct. Del Gaizo Obj. at 17-

20. Even though Del Gaizo's lawyers have had access to the deposition transcripts of Dr. Barrett

and Mr. Otellini, as well as 18 other Intel witnesses, from the AMD antitrust litigation, Del

Gaizo cites not a single answer, quotation, or other piece of *evidence* to demonstrate the merit of

the allegations made about Dr. Barrett and Mr. Otellini. All that she offers is the conclusory,

hearsay assertion of her counsel that ████████████████████████████████████████████

---

[5] The fact that some – but not all – of the governance and compliance enhancements were
adopted by Intel before reaching a settlement with Plaintiffs does not diminish the value of
these terms. Indeed, because this proposed Settlement *requires* Intel to adopt such measures,
and maintain them for a period of at least three years, there is inherent value in the fact that
these enhancements will now be *mandatory*, and *required by court order*. Moreover, insofar
as Intel voluntarily adopted enhancements to its governance and compliance policies and
practices, these undisputed facts further underscore the weakness of Plaintiffs' "merits"
claims, which are based in part on the alleged failure of the Individual Defendants to "enact
crucial remedial measures." Delaware Compl. ¶ 165.

██████████████████████████████████ Seely Decl. ¶ 6.[6]  Surely, more than

counsel's say-so is needed before this Court could find that the claims have a likelihood of

success, much less a *strong* likelihood of success sufficient to overcome the exculpatory

provisions of Intel's certificate of incorporation that protect both of these individuals against

claims for monetary relief.[7]

Del Gaizo's contention that the settlement terms are unfair also is based on the premise

that the actions of Mr. Otellini and Dr. Barrett were "actions taken by company fiduciaries with

the intent to violate positive law," amounting to a "bad faith breach of the duty of loyalty." Del

Gaizo Obj. at 17.  In making this contention, Del Gaizo fails to cite any legal authority under the

antitrust laws supporting her assertion that the alleged actions and statements of Mr. Otellini and

Dr. Barrett constituted an antitrust law violation or that they acted with an "intent to violate

positive law."

---

[6]  In fact, counsel's assertions are at least "double" hearsay, as Mr. Seely is only reporting the conclusions of his "travel team" – *i.e.*, other lawyers from his firm – without citation to any of the underlying evidence.  Seely Decl. ¶ 6.

[7]  Del Gaizo also improperly suggests that the standard under which her Objection should be evaluated under Rule 23.1 is somehow like the pleading standard under Federal Rule of Civil Procedure 8(a).  *See, e.g.,* Del Gaizo Obj. at 24 (Plaintiffs' allegations "are assumed to be true at the pleadings stage and receive all reasonable inferences in their favor"), 17 ("strong allegations"), 23 ("the Delaware Complaint adequately alleges…").  The relevant inquiry is *not,* however, whether Del Gaizo's objection could survive a pleading challenge, but rather whether the settlement is fair in light of "the complexity, expense and likely duration of the litigation," "the risks of establishing liability," "the risks of establishing damages," and the "possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)).  Here, those factors support the reasonableness of the proposed Settlement.

Further, Del Gaizo quotes allegations from the NYAG complaint out of context, without addressing Intel's substantive responses in its answer to that complaint.[8] But even these snippets of allegations fail to show the existence of a viable legal claim under the antitrust laws based on the specific, intentional, individual actions of Mr. Otellini or Dr. Barrett – neither of whom ever has been named as a defendant in any antitrust action, and neither of whom has been personally charged with any antitrust misconduct by any federal, state or foreign regulator. Simply quoting or paraphrasing complaint allegations or excerpts of individual emails without legal context or argument does nothing to establish any personal liability of these two individuals.

The non-existence of any viable antitrust claim against Mr. Otellini or Dr. Barrett is powerfully supported by caselaw. *First*, it is well-established that the antitrust laws "do not create a federal law of unfair competition." *Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 222, 225 (1993). As explained more fully below, the antitrust theories employed against Intel are not based on allegations that any of the alleged conduct is per se unlawful or tortious – instead the actions are evaluated under a rule of reason analysis, which requires a hindsight evaluation of the extent and nature of the alleged foreclosure arising from the challenged conduct, as well as the business justifications underlying that conduct, as price-reducing agreements have recognized procompetitive benefits. *See, e.g., Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236-237 (1st Cir. 1983) (Breyer, J.). Thus, individual acts or statements intended to obtain business are not what is even potentially actionable – it is whether the underlying agreements unfairly foreclose a rival from the market, which is primarily an economic analysis.

---

[8] *See* Answer in *State of New York v. Intel Corp.*, C.A. No. 09-827 (JJF), dated January 12, 2010 (redacted version; Dkt. No. 16).

*Second,* the antitrust laws encourage aggressive selling conduct, as it is this very conduct that provides benefits to consumers (and to the shareholders of the successful companies). The courts routinely acknowledge the difficulty, even in hindsight, in evaluating when such aggressive competition crosses the line to anticompetitive conduct. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) ("cutting prices in order to increase business often is the very essence of competition," cautioning that "[we] must be concerned lest a rule or precedent that authorizes a search for a particular type of undesirable pricing behavior end up discouraging legitimate price competition"). The same policy that has led courts to be careful in chilling competitive conduct through "mistaken inferences" applies in this context, where the conduct of individual corporate executives is being analyzed in hindsight. *Brooke Group,* 509 U.S. at 226; *see also Citigroup,* 964 A.2d at 139.

*Third,* even taken on their face, none of the allegations to which Del Gaizo points show any *awareness* or *intent* by Messrs. Barrett and Otellini to violate the antitrust laws. *See Arnold v. Soc'y for Sav. Bancorp, Inc.,* 650 A.2d 1270, 1288 n.35 (Del. 1984) ("The Court finds unpersuasive plaintiff's contention during oral argument that defendants' intentional decision to disseminate the proxy statement leads ineluctably to a finding that they deliberately violated their disclosure obligations."). The case law looks with justifiable skepticism on using the rough and tumble of business and business negotiations as evidence of anticompetitive intent, much less of specific intent to violate the antitrust laws. *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1199 (3d Cir. 1995) ("[T]here is nothing to gain by using the law to mandate 'commercially correct' speech within corporate memoranda and business plans. Isolated and unrelated snippets of such language 'provide no help in deciding whether a defendant has

crossed the elusive line separating aggressive competition from unfair competition.'") (citation omitted).[9]  Thus, Del Gaizo's entire approach in her objection runs afoul of well-established law.

*Fourth,* Del Gaizo mischaracterizes Intel's rebate practices, calling Intel's volume rebates "payments" for "exclusivity," and ignoring that Intel's rebates were uniformly provided as price discounts, not payments.[10]  Del Gaizo also improperly states that Intel engaged in exclusive

---

[9]  This is particularly true when the underlying conduct – as in this case – primarily involves pricing.  As Justice Breyer has explained, "the antitrust courts' major task is to set rules and precedents that can segregate the economically harmful price-cutting goats from the more ordinary price-cutting sheep, in a manner precise enough to avoid discouraging desirable price-cutting activity . . . Some courts have written as if one might look to a firm's 'intent to harm' to separate 'good' from 'bad.'  But 'intent to harm' without more offers too vague a standard in a world where executives might think no further than 'Let's get more business' and long-term effects on consumers depend in large measure on competitors' responses." *Barry Wright,* 724 F.2d at 231-232; *accord A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.,* 881 F.2d 1396, 1401-02 (7th Cir. 1989) ("Rivalry is harsh, and consumers gain the most when firms slash costs to the bone and pare price down to cost, all in pursuit of more business.  Few firms cut price unaware of what they are doing; price reductions are carried out in pursuit of sales, at others' expense. . . . You cannot be a sensible business executive without understanding the link among prices, your firm's success, and other firms' distress.  If courts use the vigorous, nasty pursuit of sales as evidence of a forbidden 'intent,' they run the risk of penalizing the motive forces of competition.").

[10]  For example, Del Gaizo relies on allegations in the NYAG Complaint to assert that Dr. Barrett and Mr. Otellini caused Intel to enter into an "exclusive" relationship with Dell that was effectuated through payments to Dell for exclusivity and threats to retaliate against Dell if Dell were to purchase from AMD.  Del Gaizo Obj. at 18-19.  In support, Del Gaizo quotes a snippet from an email written by a low-level Dell employee, who wrote that a potential worst case scenario if Dell were to buy from AMD was that Dr. Barrett and Mr. Otellini would be "prepared for jihad" against Dell.  Del Gaizo further alleges that after Dell began buying microprocessors from AMD in 2006, Dr. Barrett and Mr. Otellini directed that Intel retaliate against Dell.  While the depositions of Dell's executives are confidential under the protective order in the AMD litigation, Dell previously granted Intel permission to publicly state the following facts, which completely undermine Del Gaizo's allegations:  (1) Dell did not have an exclusive relationship with Intel and Dell never agreed with Intel to buy microprocessors exclusively from Intel; (2) Dell did not understand that the rebates Dell received from Intel were conditioned upon Dell not using AMD or any other brand of microprocessors in the computers it sold; (3) Neither Dr. Barrett nor Mr. Otellini, nor anyone else from Intel, ever threatened Dell with retaliation if Dell bought microprocessors from

[Footnote continued on next page]

dealing, through unfair rebates and purported "threats" to provide less favorable treatment to customers who purchased greater amounts of product from AMD. Del Gaizo Obj. at 18-20. Del Gaizo contends that Mr. Otellini and Dr. Barrett "offered various Intel manufacturers [*sic*] financial support in exchange for an exclusive agreement with Intel," and "personally negotiated agreements for the OEMs to use Intel products." *Id.* at 17. At worst, Del Gaizo appears to allege that Mr. Otellini and Dr. Barrett participated in negotiations with customers to attempt to sell more Intel products at profitable prices – the very competitive conduct that is essential to Intel's success. Further, Intel's prices were all above Intel's average variable costs, and Intel's sales *agreements were uniformly short-term, with regular (quarterly or yearly) renegotiations as new products were introduced. The undisputed repeated sales negotiations between Intel and customers means that AMD had repeated opportunities to win business, and did, from all of Intel's customers over the relevant time period, which is all the antitrust laws require. Areeda & Hovencamp, *Antitrust Law* ¶ 1807, at 418-419 (2007 Supp.).

*Fifth*, Del Gaizo's argument ignores the truism that "virtually *every* contract to buy 'forecloses' or 'excludes' alternative sellers from *some* portion of the market, namely the portion consisting of what was bought." *Barry Wright*, 727 F.2d at 236. As a result, courts judge "the lawfulness of contracts to purchase not under per se rules, but under a 'rule of reason.'" *Id.* This is critical, because that judgment is made in hindsight, based on evaluating the degree of actual foreclosure that resulted from the challenged agreement, balanced against the strength of the justifications for the deal. *Id.* In those circumstances, to argue that attempting to negotiate

---

[Footnote continued from previous page]
    AMD or any other supplier; (4) Dell's senior executives did not understand that Intel was "prepared for jihad" if Dell were to purchase microprocessors from AMD or any other supplier; and (5) After Dell did switch to AMD in 2006, Dell does not believe that Intel retaliated against Dell. *See* www.intel.com/pressroom/legal/nyag.

for greater sales, through price discounting, could possibly constitute an intentional violation of the antitrust laws subjecting a person to individual liability would turn those laws on their head. Del Gaizo's mischaracterization of allegations in complaints that a customer might achieve greater price concessions for more business, or might fear worse terms for less business as "payments" or "threats" (Del Gaizo Obj. at 18-20), is rhetoric, not substance. In any event, these allegations, even if true, do not amount to "intentional violations of positive law," as Del Gaizo contends. Attempting to win all of a customer's business through offering better terms is not "exclusive dealing." *See, e.g., Western Parcel Express v. United Parcel Service of America, Inc.*, 190 F.3d 974, 976 (9th Cir. 1999).

*Finally,* none of the factors that might turn price discounting into a violation of Section 2 are present here, and certainly not in a manner that could satisfy the legal standard to show the existence of bad faith conduct by Dr. Barrett or Mr. Otellini. Well-established Supreme Court precedent protects price-related, sales-boosting conduct unless the plaintiff proves (a) "the prices complained of are below an appropriate measure of [the defendant's] costs" and (ii) the defendant has "a dangerous probability of recouping its investment in below-cost prices." *Brooke Group*, 509 U.S. at 222, 224; *accord Pacific Bell Tel. Co. v. LinkLine Commc'ns*, 129 S. Ct. 1109, 1120-21 (2009). The second element is critical, as it establishes that aggressive pricing is never a per se violation of the antitrust laws, *i.e.,* wrongful in itself – it is the intent and ability to recoup the losses later that is critical to a violation. None of the allegations cited by Del Gaizo allege, much less establish proof of, such wrongful "pricing." The purpose of Intel's negotiations was to sell more products at profitable prices, increasing the revenue and

profitability of the company. That Intel's aggressive competition has now led to intense legal scrutiny cannot transform in hindsight that competition into bad faith acts by its executives.[11]

*The Individual Defendants Are Exculpated From Liability Under Intel's Certificate of Incorporation.* Besides the paucity of *facts* in Del Gaizo's Objection pointing to any violation of positive law, Intel has provided in its certificate of incorporation, pursuant to Del. Gen. Corp. Law, 8 Del. C. § 102(b)(7), that "[t]o the fullest extent permitted by Delaware statutory or decisional law … no director of this Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." Dickey Decl., Ex. A ¶ 8. To overcome this exculpation provision, the Individual Defendants would have to be found to have acted "with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008). Del Gaizo offers no such evidence here.[12]

Del Gaizo incorrectly argues that the exculpation provision in Intel's certificate of incorporation does not apply in this case because Dr. Barrett and Mr. Otellini were not only Intel

---

[11] Further evidence that Messrs. Otellini and Barrett did not act with the intent to violate the antitrust laws can be gleaned from statements made by the U.S. Department of Justice, prior to the current administration taking office. At that time, the Department stated that it "likely would apply a standard predatory-pricing test in analyzing most single-product loyalty discounts," which involved comparing "the price (after all discounts are taken into account) to the cost of all units sold to a customer." *See* U.S. Dep't of Justice, Competition and Monopoloy: Single-Firm Conduct Under Section 2 of the Sherman Act, issued September 2008, at Chap. 6, pp. 116, 111. The fact that the subsequent administration withdrew this report shows the potential for second-guessing and hindsight evaluation of conduct.

[12] For similar reasons, because Intel's directors and officers liability insurance policy expressly excludes coverage for any claim for which Intel is required or permitted to indemnify the insureds, Plaintiffs would be required to prove a level of egregious conduct by the Individual Defendants that simply is not supported by the existing facts. *See* Dickey Decl. ¶ 21. Thus, Del Gaizo's contention that the D&O insurance is somehow relevant here (Del Gaizo Obj. at 28) is misplaced.

16

directors, but also Intel officers. Del Gaizo Obj. at 22-23. Under controlling Delaware caselaw, however, claims fall outside of Section 102(b)(7) exculpation only where the plaintiffs "highlight any specific actions [the defendant] undertook as an officer (*as distinct from actions as a director*)." *Arnold*, 650 A.2d at 1288 (emphasis added); *see also Goodwin v. Live Entm't, Inc.*, No. Civ. A. 15765, 1999 WL 64265, at *6 n.3 (Del. Ch. Jan. 25, 1999) (finding that exculpatory provision barred duty of care claims against two officer-directors where plaintiff only "cursorily assert[ed] that [defendants] negotiated commercial transactions … as officers, not directors"); F. Balotti & J. Finkelstein, *Delaware Law of Corp. & Business Org.*, § 4.19 (stating that "only those actions taken *solely* in the defendant's capacity as an officer are outside the purview of Section 102(b)(7)"). Here, neither the Delaware Plaintiffs, nor Del Gaizo, in her own complaint, identified *any* actions taken by Dr. Barrett and Mr. Otellini *solely* in their capacities as officers.[13] Accordingly, the exculpatory provisions of Intel's articles of incorporation fully protect Messrs. Barrett and Otellini, notwithstanding Del Gaizo's statements to the contrary.

## C.   The Other Two Objections Also Lack Merit

The remaining "objections" likewise present no basis for denying approval of the Settlement.

Like Del Gaizo, Objector William Kelly Puls suggests that the value of the Settlement to Intel is unclear. For the reasons explained above and in Plaintiffs' submission, however, it is clear that the corporate governance and antitrust compliance enhancements have significant

---

[13] *See, e.g.*, Delaware Compl. ¶¶ 24-25, 49-50, 98, 102-03, 139(a); Del Gaizo Compl. ¶¶ 34 ("By reason of their positions as officers, directors and/or fiduciaries of Intel…"), 39 ("The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Intel…") (attached as Exhibit B to the Dickey Decl.).

17

benefit for Intel. Moreover, Mr. Puls says nothing about the merits of the claims asserted by Plaintiffs. Given the weakness of those claims, the corporate therapeutics provided by the Settlement provide more than adequate compensation.

The third objection (of sorts) to the notice of the Settlement is from Intel stockholder Alexander MacKenzie. Mr. MacKenzie does not object to the terms of the Settlement per se, but rather complains that the notice was not "in plain English," and that it does not explain why Individual Defendant D. James Guzy Sr. is represented by separate counsel. *See* MacKenzie Response, filed June 17, 2010 (Dkt. No. 56). These objections are insufficient to defeat approval of the Settlement. Mr. MacKenzie's submission does not identify any language in the Court-approved notice that is not clear and comprehensible, and it is irrelevant to the reasonableness of the Settlement why Defendant Guzy has opted, as is his right, to be represented by separate counsel.

* * *

Based on all the facts and circumstances, Intel and the Individual Defendants believe that the proposed settlement is fair, adequate and reasonable, that the objections filed with the Court are without merit, and that the Court should approve the settlement in its entirety. Dickey Decl. ¶ 26.

18

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiffs' papers, this Court should approve the proposed Settlement as fair and adequate, and should enter the Order and Final Judgment proposed by the parties.

**POTTER ANDERSON & CORROON LLP**

By: ___/s/ Stephen C. Norman_____
    Donald J. Wolfe, Jr. (#285)
    Stephen C. Norman (#2686)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    dwolfe@potteranderson.com
    snorman@potteranderson.com

**OF COUNSEL:**

Jonathan C. Dickey (admitted *pro hac vice*)
Marshall R. King (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000
jdickey@gibsondunn.com
mking@gibsondunn.com

*Attorneys for Nominal Defendant Intel Corporation and Defendants Otellini, Barrett, Pottruck, Shaw, Yoffie, Barshefsky, Plummer, Decker, Bartz, Donahoe, and Yeary*

**CONNOLLY, BOVE, LODGE & HUTZ LLP**

**OF COUNSEL:**

By: ___/s/ Collins J. Seitz, Jr._____
    Collins J. Seitz, Jr. (#2237)
    Bradley R. Aronstam (#5129)
    1007 North Orange Street, 8th Floor
    Wilmington, DE 19899
    (302) 658-9141
    cseitz@cblh.com
    baronstam@cblh.com

Kim David Staskus (admitted *pro hac vice*)
**LAW OFFICES OF**
**KIM DAVID STASKUS, P.C.**
1631 Willow Street, Suite 100
San Jose, CA 95125
(408) 264-0155
kimstaskus@mgle-law.com

*Attorneys for Defendant D. James Guzy, Sr.*

July 15, 2010

974754

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I do hereby certify that, on July 15, 2010, the foregoing document was filed with the

Clerk of Court using CM/ECF which will send notification of such filing to the following, that

the document was served on the following counsel as indicated; and that the document is

available for viewing and downloading from CM/ECF:

### BY CM-ECF and E-MAIL

Robert D. Goldberg, Esquire
BIGGS & BATTAGLIA
921 North Orange Street
Wilmington, DE  19801

Collins J. Seitz, Jr., Esquire
Bradley R. Aronstam, Esquire
CONNOLLY, BOVE, LODGE & HUTZ LLP
1007 North Orange Street, 8th Floor
Wilmington, DE 19801

I hereby certify that on July 15, 2010 I have sent by E-mail the foregoing document to the

following:

| | |
|---|---|
| Laurence D. Paskowitz, Esquire | Kim David Staskus, Esquire |
| PASKOWITZ & ASSOCIATES | LAW OFFICES OF KIM DAVID STASKUS, |
| 60 East 42nd Street, Suite 4600 | P.C. |
| New York, NY  10165 | 1631 Willow Street, Suite 100 |
| lpaskowitz@pasklaw.com | San Jose, CA  95125 |
| | kimstaskus@mgle-law.com |
| | |
| Joseph H. Weiss, Esquire | Brian D. Long, Esquire |
| WEISS & LURIE | RIGRODSKY & LONG, P.A. |
| 551 Fifth Avenue | 919 North Market Street, Suite 980 |
| New York, NY  10176 | Wilmington, DE  19801 |
| jweiss@weisslurie.com | bdr@rigrodskylong.com |

Jeffrey C. Block, Esquire
BERMAN DEVALERIO
One Liberty Square
Boston, MA  02109
jblock@bermandevalerio.com

Ian Connor Bifferato, Esquire
BIFFERATO LLC
800 North King Street
Plaza Level
Wilmington, DE  19801
cbifferato@bifferato.com

Kevin A. Seely, Esquire
ROBBINS UMEDA LLP
600 B Street, Suite 1900
San Diego, CA  92101
kseely@robbinsumeda.com

Darrell Palmer, LL.M.
LAW OFFICES OF DARRELL PALMER
603 North Highway 101, Ste A
Solana Beach, CA  92075
Darrell.palmer@palmerlegalteam.com

            /s/ Stephen C. Norman
        Stephen C. Norman (#2686)
        Potter Anderson & Corroon LLP
        Hercules Plaza – 6th Floor
        1313 North Market Street
        P. O. Box 951
        Wilmington, Delaware  19899
        (302) 984-6000
        snorman@potteranderson.com