IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------x

**IN RE INTEL CORP. DERIVATIVE**          **C.A. No. 1:09-cv-867-JJF**
**LITIGATION**

-------------------------------------------------x

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES**

Dated:  July 15, 2010

**BIGGS & BATTAGLIA**

Robert D. Goldberg (ID #631)
921 North Orange Street
Wilmington, Delaware 19899
(302) 655-9677
goldberg@battlaw.com

**Attorneys for Plaintiff Charles Gilman
and Louisiana Municipal Police
Employees' Retirement System**

- AND -

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz
60 East 42nd Street—Suite 4600
New York, NY 10165
212-685-0969

**BERMAN DEVALERIO**
Jeffrey C. Block
Bryan A. Wood
Scott A. Mays
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

**Co-Lead Counsel for Plaintiff Charles
Gilman and Louisiana Municipal Police
Employees' Retirement System**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT ........................................................................................................2

   A.   The Negotiated Fee and Expense Award is Entitled
        to Substantial Deference ........................................................................2

   B.   The Fee and Expense Request is Justifiable Because
        the Settlement Clearly Confers a "Substantial Benefit"
        Upon Intel ...............................................................................................4

   C.   The Modest 1.16 Lodestar Multiplier Resulting From
        the Fee and Expense Award is Well Within the Range of
        Reasonableness of Fee Awards in Comparable Cases.........................7

   D.   The Fee and Expense Request is Reasonable Under
        all Other Relevant Factors ....................................................................9

        1.   The Paucity of Objectors to the Settlement and/or
             Attorneys' Fees Supports Approval of the Fee
             and Expense Report ....................................................................10

        2.   Both the Skill and Efficiency of Counsel and the
             Innovative Terms of the Settlement Support
             Approval of the Fee and Expense Report ...................................11

        3.   The Complexity and Duration of Litigation and the
             Amount of Time Devoted by Plaintiffs' Counsel
             Supports the Fee and Expense Report ........................................12

        4.   Plaintiffs' Counsel Faced Substantial Risks of Non-Payment
             in Prosecuting the Derivative Claims ........................................14

        5.   The Contingent Nature of the Representation Supports
             Approval of the Fee and Expense Report ...................................16

III. CONCLUSION....................................................................................................16

# TABLE OF AUTHORITES

**Cases**

*Access 4 All, Inc. v. AAMJ, LLC*,
  No. 04-6059 (JHR),
  2007 WL 655491 (D.N.J. Feb. 27, 2007) .................................................................. 8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... 3

*Bacas v. Way*,
  No. 4:07-cv-456,
  2008 U.S. Dist. LEXIS 23025 (S.D. Tex. Mar. 20, 2008) ........................................ 6

*Bailey v. Meister Brau, Inc.*,
  535 F.2d 982 (7th Cir. 1976) .................................................................................. 4

*Baldwin Emergency Med. Serv. v. Highmark, Inc.*,
  No. 03-1007,
  2006 U.S. Dist. LEXIS 49287 (W.D. Pa. June 30, 2006) ........................................ 2

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ..................................................................................... 4

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ................................................................................................ 3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .............................................................................................. 4

*Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.)*,
  No. 02-7676,
  2007 WL 1468847 (E.D. Pa. May 14, 2007) ............................................................ 8

*Canadian Commercial Workers Indus. Pension Plan v. Alden*,
  No. 1184-N,
  2006 Del. Ch. LEXIS 42 (Del. Ch. Feb. 22, 2006) ................................................ 15

*Christman v. Brauvin Realty Advisors, Inc.*,
  No. 96 C 6025,
  2001 U.S. Dist. LEXIS 11102 (N.D. Ill. Mar. 30, 2001) .......................................... 5

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................................... 9

*Gagliardi v. TriFoods Int'l,*
  683 A.2d 1049 (Del. Ch. 1996) ........................................................... 15

*Granada Invs., Inc. v. DWG Corp.,*
  962 F.2d 1203 (6th Cir. 1992) ...................................................... 7, 14

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ............................................................................ 2

*In re AT&T Corp. Sec. Litig.,*
  455 F. 3d 160 (3d Cir. 2006) ................................................... 8, 9, 10

*In re Caremark Int'l Inc. Derivative Litig.,*
  698 A.2d 959 (Del. Ch. 1996) ........................................................... 14

*In Re Cendant Derivative Action Litig.,*
  232 F. Supp. 2d 327 (D.N.J. 2002) ................................................. 8, 9

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.,*
  582 F.3d 524 (3d Cir. 2009) ............................................................... 8

*In re Fine Paper Antitrust Litig.,*
  751 F.2d 562 (3d Cir. 1984) ............................................................. 16

*In re ITT Corp. Derivative Litig.,*
  653 F. Supp. 2d 453 (S.D.N.Y. 2009) .............................................. 15

*In re Northwestern Corp. Derivative Litig.,*
  414 F. Supp. 2d 914  (D.S.D. 2005) ................................................... 7

*In re Pacific Enters. Sec. Litig.,*
  47 F.3d 373 (9th Cir. 1995) ............................................................. 14

*In re Pfizer, Inc. Derivative Sec. Litig.,*
  307 F. App'x 590 (2d Cir. 2009) ...................................................... 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) .......................................................... 7, 8

*In re Remeron End-Payor Antitrust Litig.,*
  Nos. 02-2007 (FSH), 04-5126 (FSH)
  2005 U.S. Dist. LEXIS 27011 (D.N.J. Sept. 13, 2005 ............................3

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ............................................................... 7

*In re Schering-Plough Corp. S'holders Derivative Litig.*,
  No. 01-1412,
  2008 U.S. Dist. LEXIS 2569 (D.N.J. Jan. 14, 2008) ............................................................ 5, 8

*In re Worldcom, Inc., Sec. Litig.*,
  Master File 02 Civ. 3288 (DLC),
  2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004) ...................................................... 16

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ........................................................................................................ 3

*Klingensmith v. Max & Erma's Rests., Inc.*, No. 07-0318,
  2007 U.S. Dist. LEXIS 81029 (W.D. Pa Oct. 23, 2007) .......................................................... 2

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ...................................................................................................... 14

*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985).......................................................................................................... 3

*Merola v. Atlantic Richfield Co.*,
  515 F.2d 165 (3d Cir. 1975).......................................................................................................... 4

*Miller v. American Tel. & Tel. Co.*,
  507 F.2d 759 (3d Cir. 1974).......................................................................................................... 15

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970)............................................................................................................... 4, 5, 6

*Piven v. ITT Corp.*,
  2010 Ind. LEXIS 431 (Ind. June 28, 2010) .............................................................................. 15

*Shlensky v. Dorsey*,
  574 F.2d 131(3d Cir. 1978)................................................................................................... 4, 5, 14

*Unite Nat'l* Ret. *Fund v. Watts*
  No. 04-CV-3603
  2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 27, 2005)......................................................... 6, 7

Lead Plaintiffs, Louisiana Municipal Police Employees' Retirement System ("MPERS") and Charles A. Gilman ("Gilman") (collectively, "Lead Plaintiffs"), along with the plaintiff in a related action, Dr. Alan Paris ("Paris") (collectively with Lead Plaintiffs, "Movants"), respectfully submit this Memorandum of Law in Support of Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

## I.    <u>INTRODUCTION</u>

Lead Plaintiffs efforts, from making pre-suit demand, through engaging in negotiations with the Board's counsel prior to filing suit, and ultimately to the filing of the underlying derivative actions, were the primary drivers that led to this Settlement.  The requested award of attorneys' fees and reimbursement of expenses ("Fee and Expense Request") is the product of aggressive, arm's length negotiations between the parties that took place *after* the settlement terms were reached.  Moreover, as shown in Lead Plaintiffs' Memorandum of Law in Support of Approval of Derivative Settlement ("Settlement Brief"), in obtaining the settlement here ("Settlement"), Movants' efforts unquestionably provided a substantial benefit to the nominal defendant, Intel Corp. ("Intel" or the "Company").  Reflecting both the arm's length nature of the negotiations and the reasonableness of the Fee and Expense Request, the agreed upon fee constitutes an extremely modest 1.16 lodestar multiplier for the professional time Movants' attorneys ("Plaintiffs' Counsel") expended on this case.[1]  As a result, the Fee and Expense Request lands squarely within the range of reasonableness of fee awards that have been approved in this and other Circuits.

---

[1]     As discussed more fully herein, Intel agreed to pay $1.8 million in fees and expenses pursuant to the Stipulation of Settlement dated and filed with this Court on May 25, 2010 ("Stipulation").  Plaintiffs' Counsel has out-of-pocket expenses of $102,829.25.  *See* Declaration of Jeffrey C. Block and Laurence D. Paskowitz in Support of Motion for Approval of Derivative Settlement and Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Declaration" or "Joint Decl."), ¶¶ 63-68 & Exhibits D-J.  Therefore, requested attorneys' fees are $1,697,170.75 – 1.16 times Plaintiffs' Counsel's lodestar of $1,467,703.  *Id.* ¶¶ 66-68 & Exhibits D-J.

Further supporting the reasonableness of the Fee and Expense Request, despite a notice program that reached more than 1.6 million Intel shareholders, only three (3) objections to the settlement and/or attorneys' fees were filed with this Court, only one of which contained substantive argument objecting to the settlement (but, notably, was silent as to the requested attorneys' fees) and none of which has merit.  Accordingly, and for the reasons stated herein, the Fee and Expense Request should be approved.

## II.   ARGUMENT

### A.    The Negotiated Fee and Expense Award Is Entitled to Substantial Deference

The Fee and Expense Request should be afforded substantial deference.  It is a well-established presumption that fee and expense awards that are negotiated at arm's-length, separate and apart from the substantive benefits provided to the Company, are reasonable and should be approved.  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (holding that agreed-to fee is ideal situation because "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").  Therefore, "absent evidence of collusion, a negotiated fee is entitled to substantial weight and deference."  *See Baldwin Emergency Med. Serv. v. Highmark, Inc.*, No. 03-1007, 2006 U.S. Dist. LEXIS 49287, at \*15 (W.D. Pa. June 30, 2006); *Klingensmith v. Max & Erma's Rests., Inc.*, No. 07-0318, 2007 U.S. Dist. LEXIS 81029, at \*21-22  (W.D. Pa Oct. 23, 2007) (holding that agreed upon fee is entitled to substantial weight and deference).

As a result, courts should be hesitant to interfere in fee arrangements between settling parties in shareholder actions when defendants have agreed not to oppose paying a specified sum in attorneys' fees and expenses.  *See Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), *abrogated on other grounds*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  At

2

length, the Court in *Malchman* reasoned that:

> where . . . the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that ***an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement***, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Id.* (emphasis added); *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees.").[2]

Here, counsel for the parties negotiated an attorneys' fee at arm's length ***after*** reaching agreement on the terms of the Settlement. *See* Joint. Decl. ¶ 7. Significantly, defense counsel are highly experienced, reputable law firms that have litigated complex shareholder actions for many years and, therefore, are well-versed in the applicable law pertaining to fee awards. As a result, negotiations forming the foundation for the Fee and Expense Request were conducted from a base of knowledge concerning all applicable legal factors, as well as an analysis of fees awarded in similar matters in comparison to those requested here. Given that the Settlement calls for Intel to pay the fee award and expense reimbursement sought by Plaintiffs' Counsel, the Company and its attorneys had every incentive to negotiate the lowest possible fee amount. It thus took the parties weeks of vigorous negotiations to reach agreement on the fees and expenses that are reflected in these moving papers, a highly appropriate figure in light of the substantial

---

[2]   Notably, courts in this Circuit and elsewhere have recognized that "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In Re Remeron End-Payor Antitrust Litig.*, Nos. 02-2007 (FSH), 04-5126 (FSH), 2005 U.S. Dist. LEXIS 27011, at *89 (D.N.J. Sept. 13, 2005) (quoting *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001).

benefits that the Settlement conferred upon Intel. *See* Joint Decl., ¶ 4. Accordingly, we respectfully submit that this Court should substantially defer to the Fee and Expense Request that the parties negotiated at arm's length.

> **B.** **The Fee and Expense Request is Justifiable Because the Settlement Clearly Confers a "Substantial Benefit" Upon Intel**

The United States Supreme Court has long recognized the entitlement of counsel to adequate compensation for obtaining a "substantial benefit" for resolving derivative claims. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a [benefit for] persons other than himself or his client is entitled to a reasonable attorney's fee."); *Bailey v. Meister Brau, Inc.,* 535 F.2d 982, 995 (7th Cir. 1976) ("It is well settled that the counsel fees and litigation expenses incurred by a minority stockholder in vindicating a corporate claim for relief can be assessed against all the shareholders substantially benefited by means of an award against the corporation."). Indeed, the Third Circuit has held that "the extent of the benefit to be derived from the proposed settlement by the corporation" is the most important factor for a court to consider when determining the reasonableness of an attorneys' fee request in a derivative action. *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978) (citations omitted).

It is universally recognized, however, that the "substantial benefit" need not be pecuniary in nature. *See Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature."); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (awarding attorneys' fees and expenses in a derivative settlement resulting in corporate governance reforms and stating that "[d]espite the difficulties they pose to measurement, nonpecuniary benefits to the corporation may support a settlement") (citations omitted); *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 169-70 (3d Cir. 1975) (holding that

4

where substantial non-pecuniary benefit has been conferred upon a corporation, appropriate attorneys' fees are justified); *In re Schering-Plough Corp. S'holders Derivative Litig.*, No. 01-1412, 2008 U.S. Dist. LEXIS 2569, at *2 (D.N.J. Jan. 14, 2008) (awarding attorneys' fees for non-monetary settlement in derivative action that provided substantial benefit to corporation); *Christman v. Brauvin Realty Advisors, Inc.,* No. 96 C 6025, 2001 U.S. Dist. LEXIS 11102, at *27 (N.D. Ill. Mar. 30, 2001) ("It is well-established that a fee award may be predicated on a benefit to the class which is non-monetary in nature.").[3]  Rather, a court must "determine whether the resulting benefit "corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation." *Mills*, 396 U.S. at 396 (citation omitted); *see also Shlensky*, 574 F.2d at 147 ("The principal factor . . . is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest.").

Using that framework, courts have held that settlements resulting in strengthened corporate governance and compliance systems provide a "substantial benefit" to corporations for which attorneys' fees are appropriate to award. *See, e.g., In re Schering-Plough Corp.*, 2008 U.S. Dist. LEXIS 2569, at *1 (finding substantial benefit as a result of company's requirement "to implement widespread changes to its corporate governance and compliance practices for a period of five years"); *Unite Nat'l*, 2005 U.S. Dist. LEXIS 26246, at *5, 18 (finding substantial benefit based on settlement binding nominal defendant to "adopt, implement and maintain a series of corporate governance principles for the benefit of [the company] and its shareholders," which court held "will serve to prevent and protect [the company] from the reoccurrence of

---

[3]     *See also Mills,* 396 U.S. at 392 (holding in derivative action establishing violation of proxy rules that common fund principles apply to non-monetary common benefit cases and stating that "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense. . . .  The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale").

certain alleged wrongdoings").

Here, the benefits conferred on Intel by the Settlement are very substantial indeed. As set forth in the Settlement Brief, Lead Plaintiffs' antitrust and corporate compliance experts have opined at length that the changes in Intel's corporate governance mandated by the Settlement are: (1) very material; (2) necessary for a corporation that had significant concerns with respect to antitrust liability; and (3) with respect to some reforms, the most expansive they have ever seen. *See* Settlement Brief, at 14-25 (analyzing extensive corporate governance reforms); *see also* Joint Decl., Exhibit A (Written Report of Joseph E. Murphy ("Murphy Report"), ¶¶ 18-33); *Id.*, Exhibit B (Declaration of Donald I. Baker ("Baker Decl."), ¶¶ 37-51). As the Murphy Report makes clear, "[the Settlement reforms] will be a key factor in improving the Company's ability to comply with antitrust and competition laws and in providing the Intel Board of Directors with timely and necessary information to help prevent serious antitrust and competition law compliance issues in the future." Murphy Report, ¶ 8; *see also Mills*, 396 U.S. at 396 (holding that "substantial benefit" test boils down to whether governance changes correct or prevent abuse identified in complaint).

In light of the substantial benefits that Intel received as a result of the Settlement, Movants' fee request – $1,697,170.75, constituting a 1.16 lodestar multiplier – is eminently reasonable in comparison to fees awarded in derivative cases where corporate governance enhancements and remedial measures alone were obtained through settlement. *See, e.g.*, *Bacas v. Way*, No. 4:07-cv-456, 2008 U.S. Dist. LEXIS 23025, at *6-7 (S.D. Tex. Mar. 20, 2008) (approving fees of $3 million in shareholder derivative action where settlement agreement provides corporate governance reforms directly addressing allegations made in complaint); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603, 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct.

6

27, 2005) (awarding $9.2 million fee for purely therapeutic relief and noting that award based on "the great benefit conferred upon [Defendants company] as a result of the new corporate governance principles provided for in the settlement agreement" that "will serve to prevent and protect [the company] from the reoccurrence of certain alleged wrongdoings"); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992) (affirming approval of award of more than $3.1 million in attorneys' fees and expenses based upon "the anticipated impact of the corporate governance changes"); *In re Northwestern Corp. Derivative Litig.*, 414 F. Supp. 2d 914, 917 (D.S.D. 2005) (awarding fee and expense award of $405,000 in corporate governance settlement (which constituted a multiplier of approximately 2.2)); *see also Globis Capital Partners, L.P. v. Safenet, Inc.*, C.A. No. 2772-VCS (Del. Ch. Dec. 20, 2007) (awarding $1.2 million in attorneys' fees for non-monetary relief in class action), a copy of which is attached as Exhibit A to the Declaration of Scott A. Mays in Support of Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (submitted herewith).

**C.   The Modest 1.16 Lodestar Multiplier Resulting From the Fee and Expense Award is Well Within the Range of Reasonableness of Fee Awards in Comparable Cases**

The Third Circuit has explained that the lodestar method is more typically applied in cases where 'the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998); *see also In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 300 (3d Cir. 2005) (stating that lodestar method is appropriate in cases where it is difficult to value recovery).  Accordingly, the lodestar methodology is the appropriate approach to evaluating the Fee and Expense Request, because the Settlement does not readily lend itself to a quantifiable valuation, which would implicate the "percentage of the

fund" methodology.

"The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *In re AT&T Corp. Sec. Litig.,* 455 F. 3d 160, 164 (3d Cir. 2006).  When attorney's fees are awarded, the hourly rate at the time of the petition is then applied to the hours expended.  *See e.g., Access 4 All, Inc. v. AAMJ, LLC*, No. 04-6059 (JHR), 2007 WL 655491, at *5 (D.N.J. Feb. 27, 2007) (citing *Lanni v. State of New Jersey,* 259 F.3d 146, 149-50 (3d Cir. 2001)); *see also Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.),* No. 02-7676, 2007 WL 1468847, at *18 (E.D. Pa. May 14, 2007) ("The lodestar amount covers work done from the inception of the claims in this action . . . and is calculated at current rates.").  The Court may then apply a multiplier to the lodestar to "reflect the risks of non-recovery, to reward an extraordinary result or to encourage counsel to undertake socially useful litigation."  *In Re Cendant Derivative Action Litig.,* 232 F. Supp. 2d 327, 342 (D.N.J. 2002) (awarding attorneys' fees and multiplier of 2.59 in case where there were real risks of non-recovery); *see also In re AT&T Corp., 455* F.3d at 164 n.4 (finding that "[t]he multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work") (citations omitted)).

The Third Circuit has been unequivocal that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."  *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.,* 582 F.3d 524, 545 n.42 (3d Cir. 2009) (reaffirming rule articulated in *In Re Prudential Ins. Co.*, 148 F.3d at 341.  Courts apply the same analysis with respect to derivative actions, especially where the settlement does not contain a monetary component.  *See, e.g., In re Schering-Plough Corp.*, 2008 U.S. Dist. LEXIS 2569, at *17 (awarding 1.37 multiple and affirming rule that lodestar approach applies to

derivative actions where no monetary benefit is achieved); *Cohn v. Nelson,* 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (approving fee request for 2.9 multiplier in derivative settlement involving corporate governance relief, noting that in shareholder derivative actions, "courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation"); *accord In re Cendant,* 232 F. Supp. 2d at 341-42 (approving fee request of $12 million, which constituted a multiplier of 2.59).

By comparison, the negotiated attorneys' fee award here of $1,697,170.75 million ($1.8 million less litigation expenses of $102,829.25) constitutes a moderate multiplier of only 1.16. *See* Joint Decl., ¶¶63-68 & Exhibits D-J. Therefore, the lodestar multiplier resulting from the Fee and Expense Request unquestionably falls within the range of reasonable multipliers awarded in this and other Circuits.

**D.    The Fee and Expense Request is Reasonable Under All Other Relevant Factors**

The Third Circuit has identified other relevant factors for a court to consider in determining the reasonableness of an attorneys' fee:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re AT&T Corp.,* 455 F.3d at 165-66 (quoting *Gunter v. Ridgewood Energy Corp,* 223 F.3d 190, 195 n.1 (3d Cir. 2000)).[4] The Third Circuit has cautioned, however, that those factors should not be applied in a formulaic manner, recognizing that "in certain cases, one factor may outweigh the rest," and making clear that district courts should also consider "any other factors

---

[4]    In light of the non-monetary nature of the recovery, the first factor concerning the size of the fund created is not relevant to the Court's analysis of the Fee and Expense Request.

that are useful and relevant with respect to the particular facts of the case." *In re AT&T Corp.*, 455 F.3d at 166.  An assessment of relevant factors here fully supports an award of the attorneys' fees and reimbursement of expenses that the parties agreed to in the present action.[5]

### 1. The Paucity of Objectors to the Settlement and/or Attorneys' Fees Supports Approval of the Fee and Expense Request

The lack of substantive objections to the Settlement and/or attorneys' fees manifestly supports approval.  Despite the parties' vigorous notice program – which reached more than 1.6 million Intel stockholders –only three (3) objections have been filed with the Court – and only one of those contained any substantive argument.  Moreover, as set forth in Lead Plaintiffs' Response to Shareholder Objections, the sole substantive objection lodged in this case has no merit whatsoever and, in fact, did not even object to the award of attorneys' fees.  The fact that so few of the 1.6 million stockholders who received notices objected to the Settlement and/or fees – and, further, that none of those objections has any merit – firmly weighs in favor of approving the Fee and Expense Request.

Only Intel holder William Kelly Puls ("Puls") has objected to the Fee and Expense Request.  *See* Dkt. 63.  Mr. Puls's objections are:  (1) that because the case has not been formally pending for two years, the $1.8 million fee request, on its face, cannot be supported by counsels' lodestar; and (2) the benefits conferred (Mr. Puls argues that the settlement confers no benefit on Intel) does not justify the Fee and Expense Request.  *Id.* at 3.

Mr. Puls's objections are without merit.  As to the first point, Puls concedes that he is speculating when he contends that the lodestar could not possibly justify a $1.8 million fee and expense award.  *Id.*  It should hardly come as a surprise that two highly experienced law firms,

---

[5]      As set forth *supra* (p. 5-6), the *Gunter* factor concerning awards in similar cases plainly supports the Fee and Expense Request.

after complex litigation effort that began with a demand made in June 2008, including factual investigations, meetings, review and analysis of twenty (20) deposition transcripts, review of tens of thousands of documents, countless meetings and negotiations, the drafting of three derivative complaints, and briefing in opposition to a motion to dismiss, would incur a lodestar of $1,467,703.

As to the second point, both Lead Plaintiffs and Intel disagree with Mr. Puls's blanket assertion that the Settlement confers no benefit on Intel.  *Id.* at 2.  In fact, of the approximately 5.3 billion shares of Intel stock outstanding, only Mr. Puls, with his ninety-one (91) shares and Ms. Del Gaizo, with her 1,688 shares, contend that the Settlement confers no benefit on Intel.  *Id.* at 2; Dkt. 58 (Shareholder Christine Del Gaizo's Objections to the Proposed Settlement of Derivative Claims), at 14.

We respectfully submit that Mr. Puls's objections to the Fee and Expense Request be overruled.[6]

### 2.     Both the Skill and Efficiency of Counsel and the Innovative Terms of the Settlement Support Approval of the Fee and Expense Request

Pursuing these complex claims in a manner that would result in a substantial benefit to Intel required the participation of highly skilled attorneys with experience in both derivative actions and the specialized field of substantive corporate governance and compliance reforms. Lead Plaintiffs' attorneys have a long history of successfully prosecuting complex corporate derivative and securities cases.  *See* Joint Decl., ¶ 6 n.3.  To complement that expertise and assist with negotiating appropriate settlement terms, counsel wisely retained several world-renowned experts in the areas of international competition law, corporate compliance and ethics, and securities valuation related to corporate governance changes.  Indeed, Paragraphs 29-36 of the

---

[6]      Shareholder Alexander MaKenzie's objection merely requested that this Court take into consideration all relevant factors when evaluating Plaintiffs' Counsel's attorneys' fee request.  *See* Dkt. 56.

Joint Declaration detail Plaintiffs' Counsel's aggressive design and negotiation of governance and compliance provisions specifically tailored to address the antitrust issues plaguing Intel's management.  Moreover, Paragraphs 38-41 of the Joint Declaration detail the prudent steps that Plaintiffs' Counsel undertook to determine whether the proposed settlement terms were fair, adequate, and reasonable.  The experience and wisdom necessary to favorably resolve this complex litigation on behalf of Intel – seeking expert help as appropriate along the way – was instrumental in achieving the wide-ranging governance and compliance reforms set forth in the proposed Settlement.

At the same time, Plaintiffs' Counsel efficiently managed this complex case, completing the extensive work done over the course of more than two years of investigating and prosecuting the claims alleged in this action with only a modest lodestar of $1,467,703.  Accordingly, this factor weighs in favor of approval the requested Fee and Expense Request.

### 3. The Complexity and Duration of Litigation and the Amount of Time Devoted by Plaintiffs' Counsel Supports the Fee and Expense Request

This litigation – the complexity of which is manifest – has involved an intensive effort by Plaintiffs' Counsel.  As described in Paragraphs 4-5 of the Joint Declaration, not only did counsel vociferously demand action by Intel's board of directors ("Board") in demand letters and in-person, but they prepared their case through, among other things:  (1) a painstaking review of the underlying record in the related litigation between Intel and its main rival, Advanced Micro Designs, Inc. ("AMD"); (2) a thorough examination of the issues and findings in the 517-page, 1,798-footnote opinion issued on May 13, 2009 by the European Commission ("EC") in its case against Intel; (3)  a review of the complaint and Intel's answer in the action filed by the New York State Attorney General; (4) an examination of "white papers" issued by Intel discussing its claims and defenses in the AMD litigation and in the EC proceeding; (5) a review of journal

articles, antitrust-related websites, and news articles; (6) an analysis of the action filed by the United States Federal Trade Commission and Intel's response thereto; (7) a review of prior "demand excused" litigation; (8) a thorough examination of the Delaware law of fiduciary responsibility, especially in the context of "demand refusal" and directorial duties to exercise oversight over corporate activities and legal strategies; and (9) consultation with corporate governance and antitrust experts. *See* Joint. Decl. ¶¶ 4-5; Declaration of Lynda J. Grant Filed on Behalf of the Grant Law Firm, PLLC in Support of Application for Award of Attorneys' Fees, at ¶ 2; Declaration of Loren Kieve Filed on Behalf of Kieve Law Offices in Support of Application for Award of Attorneys' Fees and Expenses, at ¶ 2; Declaration of Robert D. Goldberg Filed on Behalf of Biggs & Battaglia in Support of Application for Award of Attorneys' Fees and Expenses, at ¶ 2.

Moreover, in an effort to confirm that the proposed Settlement was fair, adequate, and reasonable prior to entering into the Stipulation, Plaintiffs' Counsel engaged in extensive confirmatory discovery. Specifically, over the course of several weeks, Plaintiffs' Counsel: (1) reviewed the deposition transcripts of twenty (20) witnesses in the AMD litigation, comprising approximately 11,400 pages of testimony and 700 deposition exhibits (totaling another 5,400 pages); (2) reviewed additional documents concerning Intel's refreshed antitrust compliance program; (3) reviewed certain Board meeting minutes; (4) reviewed Intel's applicable directors' and officers' primary insurance policy; and (5) prepared for, and took, the deposition of an Intel Senior Competition Compliance attorney, interrogating her on, among other things, Intel's recent antitrust compliance efforts. *See* Joint Decl., ¶ 39.

In order to accomplish all of those tasks efficiently and effectively, Plaintiffs' Counsel and its professional staff dedicated 2,976.15 hours of billable time to this case without a guarantee of payment for those services. *Id.* ¶¶ 54, 63. Accordingly, these factors weigh heavily

in favor of approving the requested fee.

> **4.    *Plaintiffs' Counsel Faced Substantial Risks of Non-Payment in Prosecuting the Derivative Claims***

As discussed in detail in the Settlement Brief, derivative actions generally face substantial procedural and legal hurdles beyond those typically found in securities class action litigation.  *See, e.g., Maher v. Zapata Corp.* 714 F.2d 436, 455 (5th Cir. 1983) (stating that derivative "litigation 'is notoriously difficult and unpredictable'") (citing *Schimmel v. Goldman,* 57 F.R.D. 481, 487 (S.D.N.Y. 1973)); *Granada Invs.,* 962 F.2d at 1205 (finding that derivative litigation is "notoriously difficult and unpredictable" and entails substantial risk of non-payment) (citation omitted); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful"); *Shlensky*, 574 F.2d at 147-48 (noting that high level of risks of establishing liability and proving damages should be considered in approving settlement of derivative case).   That impediment to success is especially prominent where, as here, the derivative action is premised on a claim that a corporate board failed to properly monitor the operations and employees of a company.  *See, e.g., In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996) (finding that failure to monitor claim "is possibly the most difficult theory in corporate law upon which a plaintiff might hope to win a judgment"); *In re Pfizer, Inc. Derivative Sec. Litig.*, 307 F. App'x 590, 594 (2d Cir. 2009) (summarily affirming dismissal of derivative action; holding that standard for failure of oversight claim is more demanding than scienter under Rule 10b-5 that requires "both a showing of knowledge and that the knowledge created an affirmative duty to act, which the directors consciously ignored").  As

14

a result, a large percentage of derivative actions are dismissed.[7] In light of those significant hurdles, Plaintiffs' Counsel confronted very substantial risks when they decided to invest their time and resources in this "demand refused" derivative litigation.

Those risks were compounded here by the substantial difficulty Lead Plaintiffs would have faced in proving the liability of Intel's directors. As set forth in the Settlement Brief, to do so, Lead Plaintiffs first would have had to prove an underlying antitrust violation on behalf of the Company, *see, e.g., Miller v. American Tel. & Tel. Co.*, 507 F.2d 759, 765 (3d Cir. 1974) (requiring plaintiff to "shoulder the burden" of proving the underlying statutory violation "upon which the defendants' breach of fiduciary duty is predicated"), and then would have had to demonstrate that the Board, in bad faith, directed Intel to engage in the underlying antitrust violations. *See, e.g., Canadian Commercial Workers Indus. Pension Plan v. Alden,* No. 1184-N, 2006 Del. Ch. LEXIS 42 (Del. Ch. Feb. 22, 2006); *Gagliardi v. TriFoods Int'l,* 683 A.2d 1049, 1051 (Del. Ch. 1996). To say that substantive burden of proof would have been daunting is a clear understatement.

Moreover, all that is to say nothing of the risks Lead Plaintiffs would have faced in proving damages, which would have been a particularly thorny prospect here due to Intel's appeal of the EC ruling and the uncertainty related to demonstrating that the individual Board members were personally liable for Lead Plaintiffs' claims.

Accordingly, the risks of non-payment weigh firmly in favor of approving the Fee and Expense Request.

---

[7]    Indeed one of the very few demand-made derivative actions that had appeared to survive a dismissal motion was recently overruled. *Cf. In re ITT Corp. Derivative Litig.,* 653 F. Supp. 2d 453 (S.D.N.Y. 2009) (upholding demand made claim) with *Piven v. ITT Corp.,* 2010 Ind. LEXIS 431 (Ind. June 28, 2010) (holding on certification of question from the Southern District of New York that test employed by District Judge to uphold demand-made claim under Indiana state law was erroneous, and overruling District Court's conclusion).

**5.     *The Contingent Nature of the Representation Supports Approval of the Fee and Expense Request***

Plaintiffs' Counsel undertook the prosecution of this highly complex matter on a wholly contingent basis.  Without any assurance of remuneration, counsel collectively invested more than 2,976.15 hours of professional time over a multi-year period.  Plaintiffs' Counsel have received no compensation whatsoever to date for any of the work they have performed or in recognition of the wide-ranging and substantial benefits Intel has received as the result of their efforts.

The contingent nature of this litigation assumes even greater significance in consideration of the material risks to success that Lead Plaintiffs faced in prosecuting these derivative claims – risks that had to be assessed as of the time the engagement was undertaken.  *Cf. In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 583 (3d Cir. 1984) (noting that litigation risks must be assessed at the time that litigation commences).  As the Court in *Fine Paper* noted, "the time value of compensation long delayed, when compared with normal billing and collection practice of law firms for fees and expenses" is a significant factor when considering an attorney's uncompensated efforts.  *Id.*  Plaintiffs' Counsel respectfully submits that both the risk of taking on this case on a contingent basis and the delay in payment provide additional support the fee award requested here.  *See In re Worldcom, Inc., Sec. Litig.,* Master File 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *73 (S.D.N.Y. Nov. 12, 2004) (stating that "[plaintiffs' counsel] undertook this service on a fully contingent basis.  Its risks and effort deserve to be awarded appropriately.").

### III.     <u>CONCLUSION</u>

For the reasons set forth above, Lead Plaintiffs respectfully request that this Court approve the requested award of attorneys' fees and reimbursement of expenses in the amount of $1.8 million.

Dated: July 15, 2010

**BIGGS & BATTAGLIA**


/s/Robert D. Goldberg
Robert D. Goldberg (ID #631)
921 North Orange Street
Wilmington, Delaware 19899
(302) 655-9677
goldberg@battlaw.com

**Attorneys for Delaware Plaintiffs**
**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz
Roy L. Jacobs
60 East 42nd St., Suite 4600
New York, NY  10165
(212) 685-0969

**BERMAN DEVALERIO**
Jeffrey C. Block
Bryan A. Wood
Scott A. Mays
One Liberty Square
Boston, MA 02109
(617) 542-8300

**Co-Lead Counsel for Delaware Plaintiffs**

17